**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVIS & ASSOCIATES, INC., : | |
| : | |
| : | |
| v.  : | Civil No. 6CV 00972 (GK) |
| : | No Current Order |
| : | |
| THE DISTRICT OF COLUMBIA, et al., : | |
| : | |
| _____ : | |

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR MOTION TO DISMISS

I. Factual and Procedural Background

Defendants District of Columbia, Anthony A. Williams and Natwar M. Ghandi by and through their undersigned counsel, (collectively known as "the District") hereby offers its supporting memorandum.

On or about May 24, 2006, Plaintiff Davis and Associates, ("Davis") an alleged minority contractor, filed a two count civil rights action against the District of Columbia and two of the named individuals herein in their official capacities regarding two contracts which it entered into with the District of Columbia for certain revenue collection contracts. (Natwar Ghandi was sued in his individual and official capacity. As indicated in the Motion, he is before the Court in his official capacity only).

The first contract, dated March 10, 2000, JB-14-00-03, Exhibit A to the complaint, was between Davis and the District of Columbia Health and Hospitals Public Benefit Corporation ("PBC") to which the District is the successor. Davis was to complete certain Medicaid cost reports and be paid on a contingent basis at a rate of ten per cent about a certain base line figure. Complaint ¶10,11. Davis allegedly identified an amount in excess of $200 Million for collection.

Complaint ¶ 14. The period of performance began on or about February 11, 2000 through December 31, 2000.

The second contract allegedly performed in 1998, was a subcontract through Health Management Systems, Inc.'s ("HMS") primary contract dated January 26, 1998, between HMS and the District of Columbia Public Schools ("DCPS"). The primary HMS contract, like the first contract mentioned in the pleadings, was also a contingency contract that provided for identification of amounts to be collected on behalf of DCPS from third parties such as other health insurance companies. Davis allegedly identified an amount in excess of $68 Million to be collected. Complaint ¶ 15-17. The primary contract, attached as Exhibit B to the complaint and which does not identify Davis as the subcontractor and has no signature for the DCPS representative, indicated that the contractor was to be compensated in accord with a declining formula that reduced the percentage paid as the amount collected increased for a period of performance from January 26, 1998 through July 31, 1998. Neither contract contained a certification of prior available appropriated funds as required by 27 D.C.M.R. §3240, attached herewith as **Exhibit 1**. Davis ' complaint then followed with allegations that Davis had made demand for payment "over the years," that the Chief Financial Officers were responsible for collection and payment and appropriate deposit, that they had a "monetary obligation" to pay and finally alleged that no payment had been received. Complaint ¶ 18-26.

Count I of the complaint alleged a violation of Title 42 U.S.C.§ 1981 against all defendants except HMS claiming a violation of the right to equal treatment under the law by stating that Davis was a minority firm and upon information and belief that the District had paid a "white owned firm" for work that the contractor had performed exclusively. No allegation was made that any such alleged conduct was willful, deliberate or intentional. Count II of the

complaint alleged a violation of Title 42 U.S.C. §1983 against all defendants except HMS claiming that Davis' property was taken without due process and in violation of the privileges and immunities guaranteed to it by the Fifth and Fourteenth Amendments to the Constitution of the United States. Complaint ¶ 36(a), (b). Davis' *ad damnum* sought $268 Million in compensatory damages, plus reasonable attorneys' fees from the "defendant" and for such other relief as the Court might deem just and proper.

The complaint contained no reference to the proceedings as set forth in *Davis & Associates v. District of Columbia, ("Davis")* 892 A. 2d 1144 ( D.C. 2006), of which this Court may take judicial notice. As the District of Columbia Court of Appeals in *Davis, supra,* noted Davis filed its complaint in Superior Court based on a contract to identify Medicaid and Medicare revenues for the PBC and alleged that it had identified over $200 Million for such collection. Davis also alleged in the Superior Court as it did here that there was a "monetary obligation" to pay and that the revenues had not been appropriately collected and deposited. Id. at 1147. [1] The Court of Appeals affirmed the dismissal of the complaint based on the District's well founded motion to dismiss for lack of jurisdiction. The Court of Appeals also found that Davis should have brought suit first at the District's Contract Appeals Board. Davis had failed to exhaust appropriate administrative remedies. Noting that the CAB was the statutorily exclusive tribunal for contract disputes, the Court of Appeals noted additionally that since "there was at least an arguable basis for jurisdiction, Davis should have submitted its claim to the CAB prior to filing in the Superior Court. " Id. at 1149, 1152, n. 11. Davis conducted discovery with the District filing its discovery responses on January 17, 2003 regarding contract JB-14-00-03-GM. See **Exhibits 2, 3, and 4.** District of Columbia Answers to Interrogatories, Responses to

---

[1] The Court of Appeals did not reference any alleged Davis subcontract with Health Management Services.

3

Requests for Production of Documents and Requests for Admission.   No discovery request sought information about minority and non-minority contractors specifically. The Superior Court granted the motion to dismiss on January 24, 2003.

As the argument below indicates: (1)  Count I, Title 42 U.S.C. § 1981, must be dismissed due to the lack of certification and availability of appropriated funds prior to the execution of the contract; (2) Count II,  Title 42 U.S.C. §1983, must be dismissed for failure to use available adequate  state procedures; (3) both Counts must be dismissed for failure to bring the action within the applicable three year period of limitations required by D.C. Official Code §12-301 for Count II, the Title 42 U.S.C. §1983 claim and within four year period apparently required for post formation contract issues under Count I, the Title 42 U.S.C. §1981 claim; and (4) to dismiss the claim against the named individuals in their official capacity since a suit against them in their official capacities is in essence a suit against the District.

## II. Argument

### A. The Motion to Dismiss Standard

As noted by the Court in *Sembach v. District of Columbia,*  2003 U.S. Dist Lexis 19267 (D.D.C. 2003):

> In evaluating a motion to dismiss for failure to state a claim on which relief can be granted, a court must accept the allegations in the complaint as true. *Croixland Props, Ltd. P'ship v. Corcoran*, 335 U.S. App. D.C. 377, 174 F.3d 213, 215 (D.C. Cir. 1999). All reasonable inferences must be drawn in favor of Mr. Sembach and the court should only dismiss the complaint "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)).
>
> Under 12(b)(6), a court "does not test whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim." *Price v. Crestar Sec. Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999). A 12(b) (6) motion to dismiss challenges the legal sufficiency of the complaint. *Johnson-El v. District of Columbia,* 579 A. 2d 163, 166 ( D.C. 1990)

In addition, in considering the motion to dismiss, the court may take into consideration the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice. *EEOC v. St. Francis Xavier Parochial School,* 117 F. 3d 621, 624-625 (D.C. Cir. 1997).

    B.    <u>Count I, 42 U.S.C. §1981, Must Be Dismissed.  A Valid Contractual Relationship Is Required. No Such Contractual Relationship Can Exist Where the Contract is Void Ab Initio</u>.

On February 22, 2006, the U.S. Supreme Court ruled that to bring an action under Title 42 U.S.C. §1981 the plaintiff must have standing through a direct contractual relationship. *Domino's Pizza, Inc. v. John McDonald,* 126 S.Ct. 1246, 2006 U.S. Lexis 1821, (2006) John McDonald, a black man, was the sole shareholder and president of JWM Investments, Inc. ("JWM"). Although his corporation entered into several contracts with Domino's, the contracts faced a series of obstacles imposed by the Domino's representative, Debbie Pear, a white woman, who eventually asserted that she did not like dealing with "you people" and threatened to "bury" Mr. McDonald should he sue Domino's.  JWM declared bankruptcy in part because of the failed contracts and, as the Supreme Court noted, "for whatever reason" the bankruptcy trustee did not bring an adverse claim against Domino's under §1981 for intentional racial discrimination in making and enforcing contracts.  Through the bankruptcy proceeding, the breach of contract claims were settled on behalf of JWM for $45,000; accordingly, no further claims could be brought on behalf of JWM. Mc Donald then filed his individual claim against Domino's under §1981 in his personal capacity. Initially the District Court dismissed the complaint and the Ninth Circuit reversed.  In reversing the Ninth Circuit, which had acknowledged it was in a distinct minority among the Circuit Courts, the Supreme Court held that Mr. McDonald had no rights and was exposed to no liability under the corporation's

5

contracts; accordingly he did not have the standing necessary to bring the action. Importantly, the Supreme Court traced the history of §1981 and its 1991 amendments noting that a valid contractual relationship was absolutely essential to bringing a §1981 action.

> We held in *Patterson* that the prior version of § 1981 did "not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." 491 U.S., at 171, 109 S. Ct. 2363, 105 L. Ed. 2d 132. In 1991, Congress amended the statute, see 105 Stat. 1071, adding § 1981(b), which defines "make and enforce" to bring postformation conduct, including discriminatory termination, within the scope of § 1981. See *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 383, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004). But while Congress revised *Patterson's* exclusion of postformation conduct, it let stand Patterson's focus upon contract obligations. In fact, it positively reinforced that element by including in the new § 1981(b) reference to a "contractual relationship."

126 S.Ct. at 1250. A Title 42 U.S.C. § 1981 cause of action therefore requires a contractual relationship.

On June 22, 2006, the District of Columbia Court of Appeals held that a contract that failed to have prior allocated appropriations was void *ab initio* due to the Anti-Deficiency Act, 31 U.S.C. §1341, et seq. *Williams v. District of Columbia,* 2006 D.C. App. Lexis 353 (D.C. 2006) ("*Williams"*). Donna Lee Williams was the Insurance Commissioner of Delaware seeking to enforce a loan guaranty agreement on behalf of an insurance company in liquidation as its receiver. The loan guaranty agreement was part of a Tri-Party agreement and would have required the District to repay monies that the insurance company had lent to the Trust for Public Land to purchase certain land for a low to moderate income housing development. The District had refused to pay upon demand. Ms. Williams contended that she had been defrauded by District officials who expressly warranted the availability of funds under the Tri-Party agreement when, in fact, there were none. Holding fundamentally that one who contracted with the

government was on constructive notice of the limits of the government agent's authority and that any reliance to the contrary was not reasonable, the Court of Appeals further observed:

> In light of the principles now codified at 31 U.S.C. § 1341 , (footnote omitted) the Supreme Court of the United States and other federal courts have explicitly and repeatedly held that all contracts for future payments of money, in advance of or in excess of existing appropriations, are void ab initio. *Hercules Inc. v. United States*, 516 U.S. 417, 427, 116 S. Ct. 981, 134 L. Ed. 2d 47 (1996); *Goodyear Tire & Rubber Co. v. United States*, 276 U.S. 287, 48 S. Ct. 306, 72 L. Ed. 575, 66 Ct. Cl. 764 (1928); *Leiter v. United States*, 271 U.S. 204, 46 S. Ct. 477, 70 L. Ed. 906, 62 Ct. Cl. 767 (1926); see, e.g., *E.I. du Pont de Nemours & Co. v. United States*, 365 F.3d 1367, 1374 (Fed. Cir. 2004); *RCS Enters. v. United States*, 57 Fed. Cl. 590, 594 (2003).

2006 D.C. App. Lexis 353, 7-8.  District of Columbia procurement regulations, 27 D.C.M.R. §3240, provide for certification of funding for contracts.  The contracts in this case were, unquestionably, not certified for funding and involved contingency payments in advance of or in excess of existing appropriations.   See Complaint ¶ 11, 15 and Exhibits A and B. In addition, under *Williams* reliance on a general appropriation available for programmatic purposes is inapposite since that would undermine the purposes of the Anti-Deficiency Act. 2006 D.C. App. Lexis 353, 9-10.

Accordingly, the §1981 count must be dismissed; the requirement of a valid contractual relationship had not been met since the contracts were void *ab initio*.²

    C.    <u>Count II, 42 U.S.C. §1983, Must Be Dismissed. There are Adequate Post Deprivation Remedies to Cure Any Deprivation of Property.</u>

Count II of the complaint seeks a remedy for an alleged violation of due process and for privileges and immunities secured by the Fifth and Fourteenth Amendments to the United States Constitution. More specifically, the complaint alleged that Davis's property was taken without

---

²     The §1981 count must also fail due to the lack of any allegation of intentional conduct. Liability under Title 42 U.S.C. § 1981 requires intentional conduct. *Clifton Terrace Associates, Ltd. v. United Technologies Corp.,* 929 F. 2d 714 (D.C. Cir. 1991).

7

due process of law when it was not compensated; David also alleged in the same count that it was deprived of its rights, privileges and immunities by the refusal to pay Davis for its services. The District notes at the outset that the Fourteenth Amendment does not apply to the District of Columbia but that the Fifth Amendment does under *Bolling v Sharpe*, 347 U.S. 497, 498-99 ( 1954). Inclusion of the Fourteenth Amendment in such claims merits independent dismissal, *Sembach v. Mayor of the District of Columbia,* 2003 U.S. Dist. Lexis 19267, 5-6, and only Fifth Amendment claims may be considered. Under *Parratt v. Taylor*, 451 U.S. 527, 538-539 (1981) (*"Parratt")* an adequate post-deprivation state law remedy will meet due process requirements if the opportunity to be heard is granted "at a meaningful time and in a meaningful manner." Id. at 540. This Circuit follows *Parratt* finding, for example, adequate post deprivation remedies existed to counter act certain unauthorized eviction practices of the Metropolitan Police Department. *Morgan v. Barry,* 2000 U.S. App. Lexis. 36862 (D.C. Cir. 2000). In following *Parratt* this Circuit has twice adopted the balancing test found in *Matthews v. Eldridge,* 424 U.S. 319, 335 (1976) used by the Supreme Court in *Parratt*. Id. at 544-545; *Tri-County Industries, Inc. v. District of Columbia,* 104 F. 3d 455, 460-462 (D.C. Cir. 1997) *cert. dismissed* 513 U.S. 287 (2001); *3883 Connecticut LLC v. District of Columbia,* 336 F. 3d.1068, 1074-1075 (D.C. Cir. 2003). That test as set forth in *3833 Connecticut LLC, supra,* requires a three part analysis:

> first, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Id. at 1074.

Applying that test to the case now before the Court clearly indicates that the Contact Appeals Board ("CAB") is an adequate and available post deprivation remedy. The first part of the test requires an analysis of the private actions affected by such procedures. The District's CAB is part of a comprehensive set of procurement statutes and regulations designed to balance the competing interests of the government and its contractors. Thus, among the stated purposes of Procurement Practices Act is to insure the "fair and equitable treatment of all persons who deal with the procurement system of the District government." D.C. Official Code §2-301.10 (b) (7) (2001 ed). The CAB is first, of course, the exclusive tribunal for hearing claims by contractors against the District of Columbia. D.C. Official Code § 2-309.03 (a) (2001 ed). Consequently, the interests of contractors are not adversely affected by the existence of the CAB. The second part of the test requires an analysis of the risk of an erroneous deprivation under such procedures and whether substitute procedures should be utilized. Under this part of the test, there is little risk of erroneous deprivation since the CAB had full rules of procedure including full discovery and procedures available for expedited proceedings on the record should the parties so agree. 27 D.C.M.R. § 112, § 208, 209, 49 D.C. Reg. 2091, 2099 (Mar. 8, 2002). Substitute procedures are therefore unnecessary. The third part of the test involves the burden on the government should substitute procedures become necessary. In this case, using the federal district court to make factual determinations ordinarily entrusted to a tribunal with substantial expertise represents an additional burden to the government since every contract dispute between the District and its contractors could be litigated in federal district court. There simply would be no need for a CAB and every federal district court judge would have to gain expertise in the

9

unique doctrines of government contract law.  The analysis required under *Parratt* thus leads to the conclusion that there is an adequate post deprivation remedy. [3]

### D. Both Counts I & II Are Stale and Must Be Dismissed.

The period of limitations for actions under 42 U.S.C. § 1983 are generally borrowed from state tort law limitations of actions periods, *Wilson v. Garcia*, 471 U.S. 261, 279 (1985).  For the actions brought under 42 U.S.C., § 1981, however, the period of limitations is borrowed from the general period of limitations for state tort actions if the cause of action is deemed to concern pre-1991 Amendments to 42 U.S.C. §1981 and if deemed to concern post 1991Amendment causes of actions, such as post formation contract conduct, the period of limitations is contained in 28 U.S.C. §1658, the catch all four year statute of limitations.[4] *Williams v. Federal National Mortgage Association,* (D.D.C. 2006)  2006 U.S. Dist. Lexis 42911, 33-34, n. 8. [5]

As applied to this case, whether a four year or three year period is used matters not. Both causes of action accrued more than four years ago at the latest upon the conclusion of the performance period since both contracts provided for invoicing prior to the termination of

---

[3] The failure of Davis to raise its current Constitutional claims in the Superior Court may ultimately prove fatal to its claim here under doctrines of either *res judicata* or collateral estoppel since Davis could have proceeded with those claims there.  As *Davis v. Davis,* 663 A.2d 499, 501 (D.C. 1995) held

> "The doctrines of collateral estoppel and res judicata both 'serve [] to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' "

[4]  At least four Circuit Courts of Appeal are listed as permitting a Fed. R. Civ. P 12(b) (6) motion to raise the defense of limitations of actions.  See 2 Moore's Federal Practice ¶12.34 (4) (b), n. 55 (3rd Ed., 2005).

[5] But cf. Magistrate Judge Kay's opinion in *McKnight v. Metro. Police Dept.* (D.D.C. 2005), 2005 U.S. Dist. Lexis 3561, 6-7 which holds that a four year statute of limitations is imposed upon Title 42 U.S.C. §1983.  The underlying case was eventually tried to a hung jury and is scheduled for re-trial in January.

performance.[6] For the first contract, Exhibit A, JB-14-00-03-GM the period of performance terminated December 31, 2000. The second contract is an alleged sub-contract; the primary contract, Exhibit B, terminates performance on July 31, 1998, more than eight years ago. District of Columbia law does not toll limitations period for filing in other jurisdictions, *Curtis v. Aluminum Association,* 607 A. 2d 509 ( D.C. 1992) and generally does not recognize the doctrine of equitable tolling, *Johnson v. Marcheta Investors Ltd. P'shp.,* 711 A. 2d 109, 112 (D.C. 1998). Only limited relief is afforded plaintiffs under a modified discovery rule but the condition precedent is that the relationship between the offending conduct and the injury must be obscure. *Gassman v. Eli Lilly & Co.,* 407 F. Supp. 2d 203, 208 (D.D.C. 2005). Even then a three part test must be analyzed to determine when the discovery occurs and requires a plaintiff to know or by the exercise of reasonable diligence be charged with knowledge of: (1) the injury; (2) its cause in fact and (3) some evidence of its wrongdoing. Here, Davis knew of the injury and had knowledge of wrong doing "over the years" as Davis made demand for payment. Complaint ¶18. Davis thus can be charged with knowledge of the accrual of his cause of action at a time well before four years ago. At a minimum Davis had enough knowledge to file a lawsuit in 2002 in the Superior Court and generate discovery prior to its dismissal. That Davis chose the wrong forum consistently (and never once proceeded to the Contract Appeals Board) and that Davis received no tolling by filing in the Superior Court is a consequence imposed upon Davis by the law. Davis' claims under both Count I and II are time barred.

---

[6] District law recognizes as a general rule "where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Mullin v. Washington Free Weekly,* 785 A.2d 296, 298 (D.C. 2001) quoting *Colbert v. Georgetown University,* 641 A.2d 469, 472 (D.C. 1994) (en banc).

E. The Claims Against Named Individuals In Their Official Capacity Must Be Dismissed Since The Claim Against Them in That Capacity is a Claim Against the District.

The complaint names Anthony A. Williams, Natwar M. Ghandi and Valerie Holt[7] as party defendants all in their official capacities. Complaint, Caption, ¶ 6,7 and 8. Dr. Ghandi is named in his individual capacity as well but does not appear in that capacity since he was never personally served with the complaint. Complaint, Caption, ¶7. In *Atchison v. District of Columbia,* 73 F. 2d 418 ( D.C. 1996) , this Circuit has followed the Supreme Court's lead in *Kentucky v. Graham*, 473 U.S. 159, 165-166 ( 1985) in declaring that lawsuits against individual governmental officers in their official capacities are the equivalent to a suit against the municipality itself. Id. at 424. While this Circuit may follow a "course of the proceedings" test to determine whether such suits are against a named governmental official in his or her individual or official capacity, it particularly does not need to do so when the plaintiff has been clear from the outset about the choice being made. See *Daskalea v. District of Columbia,* 227 F. 3d. 433, 448 " … we remind litigants that 'it is obviously preferable for the plaintiff to be specific in the first instance to avoid any ambiguity.' *Hafer,* 502 U.S. at 24 …"   Since the plaintiff has been clear in the first instance, the Court should dismiss the lawsuits against the named governmental officials in their official capacity; the District is already a named party and keeping them as defendants in their official capacity is simply redundant.

IV. Conclusion

For the foregoing reasons, the District respectfully submits that the complaint be dismissed with prejudice. There is an independent basis for the dismissal of both Counts I and II;

---

[7] Because Ms. Holt was not served in this case, she is not before the Court. This argument, however, would apply equally to her.

in addition both counts are time barred and the government officials named in their official capacity should be dismissed. The remaining government official named in his individual capacity is not yet before the Court.

Dated:  August 10, 2006         Respectfully submitted,

>ROBERT J. SPAGNOLETTI
>Attorney General for the District of Columbia
>
>GEORGE C. VALENTINE
>Deputy Attorney General, Civil Litigation Division
>
>       */S/ Kimberly M. Johnson*
>KIMBERLY M. JOHNSON   D.C. Bar No. 435163
>Chief, General Litigation Section 1
>
>
>       */s/ Thomas J. Foltz*
>THOMAS J. FOLTZ
>Assistant Attorney General
>D.C. Bar No. 462858
>441 Fourth Street, N.W.
>Washington, D.C. 20001
>(202)  724-6652
>(202) 727-0431 (fax)
>E mail: Thomas.foltz@dc.gov

## CERTIFICATE OF SERVICE

This case has been designated as part of the U.S. District Court for the District of Columbia's electronic ECF file and serve system.  This filing has been filed with such Court and served on all parties herein electronically through such ECF electronic file and serve system on August 10, 2006.

>_____*/s/ Thomas J. Foltz*_____
>Thomas J. Foltz, Esq.

Davis & Associate 06 792 DC MTD MEMO E Sign 081006.1

14