UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVIS & ASSOCIATES, INC. )<br>    )<br>    Plaintiff )<br>    )<br>v. )<br>    )<br>THE DISTRICT OF COLUMBIA, et al. )<br>    )<br>    Defendants ) | Civil 1:06-cv-00972-GK |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Davis & Associates, by and through counsel, oppose the Motion to Dismiss filed by defendants District of Columbia, Natwar Gandhi and Anthony Williams. The arguments advanced in Sections II B through D of defendants' Memorandum of Points and Authorities lack the necessary legal underpinnings to afford the relief sought under Rule 12(b)(6).

## Factual Background

On May 24, 2006, plaintiff, Davis & Associates, Inc., filed a complaint against the District of Columbia, Natwar Gandhi, Anthony Williams, Valerie Holt and Health Management Systems, Inc.[1] Plaintiff asserted claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Both claims are directed at the District of Columbia government and the individual defendants. Health Management Systems, Inc. is a real party in interest with respect to the contract involving the District of Columbia Public Schools.

Davis & Associates, Inc. is a corporation that is licensed to do business in the District of Columbia. Complaint ¶4. The shareholders of the corporation are African American.

---

[1] Health Management Systems, Inc. has not been served to date. Efforts are being made to serve this defendant before the Initial Scheduling Conference.

On March 10, 2000, Davis & Associates, Inc. entered into a contingency contract with the District of Columbia Health and Hospitals Public Benefit Corporation (PBC) to assist the PBC in recovering revenue and maximizing its reach for funds from the federal Medicare and Medicaid programs. The contract was signed during the period in the District's history when the provisions of the Financial Responsibility and Management Assistance Act of 1995 (Public Law 104-8, 109 Stat. 105(a) April 17, 1995) were operative. Similarly, on or about January 26, 1998, Health Management Systems, Inc. (hereinafter referred to as "HMS") and the District of Columbia Public Schools entered into a contingency contract which provided that HMS would undertake the reimbursement and recovery programs to recover the expenditures from liable third parties for and on behalf of the D.C. Public Schools. Specifically, HMS would identify health insurance resources available to D.C. Public Schools Medicaid Assistance recipients, file claims on behalf of D.C. Public Schools seeking reimbursement, and receive monies on claims from third parties. Complaint ¶ 15. HMS subsequently entered into a subcontract with Davis & Associates, Inc. for the performance of the work described in the 1998 contract. Complaint ¶ 16.

Contracts

The type of contracts that Davis & Associates, Inc. entered into with the District is commonly called Revenue Maximization Contracts. Generally, the term means an agreement between a governmental agency and a person or entity under which the person or entity will seek to maximize federal funds for use of the agency. See example § 27-104-81 Miss. Code of 1972.

The contracts involved in this case provide in pertinent part:

A.  Contract Amount and Contract Type:

This is a Contingency Contract. The Contractor shall be paid at the rate of 10% of any additional revenues realized and collected, above the base lines given below:

- Cost Report for Hospital:   $3.1 Million
- Cost Claims for Clinics:     $4.1 Million

The above base line applies to the FY 1999 Cost Report filing only. A new base line will be negotiated for each subsequent option year awarded.

If sub-contractors are to be used, they must be approved, in advance, by the Contracting Officer of the PBC.

The above language was modified and different language was substituted.

See Page 2 of the Contract:

ARTICLE II – CONTRACT AMOUNT AND PERIOD OF PERFORMANCE:

A.  Contract Amount and Contract Type

This is a Contingency Contract. The Contractor shall be paid at the rate of 10% of any additional revenues realized and collected for years prior to Fiscal Year 1000, and in accordance to a base line that will be negotiated for each subsequent Fiscal Year covered.

B.  Period of Performance:
The period of performance shall be continuous, until all revenues are realized and collected for years prior to Fiscal Year 1999
(Page 2 of the Contract Modification)

Argument

**1. The claim brought under 42 U.S.C. §1981 is viable.**

Defendants fashion their attack against plaintiff's 42 U.S.C. §1981 claim in several ways. First, defendants argue that the claim brought under §1981 should be dismissed because of a lack of certifications and availability of appropriated funds prior to the execution of the contracts. See page 4 of defendants' Memorandum of Points and Authorities. This argument necessarily assumes that District of Columbia municipal

regulation 27-3240 which seeks to implement the Anti-Deficiency Act, 31 U.S.C. §665, applies to contingency contract. The regulation does not. In section 3240.7, the type of contracts covered by the regulation is referenced in the regulation itself.

> Budget authority shall be encumbered as follows:
> (a) In an amount sufficient to cover the price or target price of a ***fixed-price contract***, or the price of that portion of the contract to be performed in the current fiscal year; or
> (b) In an amount sufficient to cover the estimated cost and any fee of ***a cost-reimbursement contract***, or that portion of the estimated cost and fee applicable to the current fiscal year. (Emphasis added)

Nothing in the above section or any other section of D.C. Mun. Reg. 27-3240 refers to a contingency contract.

Defendants overlook a critical aspect to the relationship between the District and plaintiff. Both contracts to which plaintiff and the District are parties are contingency contracts. That is, payment of funds under the contracts is not tied to an annual budget or an agreed upon price, but to the recognition and receipt of funds from the efforts of the contractor.

Secondly, defendants' argue that a prerequisite to plaintiff's ability to pursue an action under 42 U.S.C. § 1981, is the presence of a direct contractual relationship between the District of Columbia government and the plaintiff. Defendants rely on *Domino's Pizza, Inc. v. McDonald,* 126 S. Ct. 1246; 163 L. Ed. 2d 1069; 2006 U.S. LEXIS 1821 (2006) to support this point. Further, defendants argue that notwithstanding the existence of the written contracts referenced in the complaint, said contracts were void *ab initio* because they violated the Anti-Deficiency Act, 31 U.S.C. § 1341, *et seq.*, citing *Williams v. District of Columbia,* 2006 D.C.App. Lexis 353 (D.C. 2006) as supporting authority.

Plaintiff does not dispute the pronouncement of the law as stated in *Domino's Pizza*, but does dispute the applicability of the *Williams* case to the facts of this case. Defendants seek to stretch the holding in *Williams* beyond that which the District of Columbia Court of Appeals intended. Defendants' argument is flawed.

In *Domino's Pizza*, Justice Scalia observed that:

> Any claim brought under *§ 1981*, therefore, must initially identify an impaired "contractual relationship," *§ 1981(b)*, under which the plaintiff has rights. Such a contractual relationship need not already exist, because *§ 1981* protects the would-be contractor along with those who already have made contracts. We made this clear in *Runyon v. McCrary, 427 U.S. 160, 96 S. Ct. 2586, 49 L. Ed. 2d 415 (1976)*, which subjected defendants to liability under *§ 1981* when, for racially-motivated reasons, they prevented individuals who "*sought to enter* into contractual relationships" from doing so, *id., at 172, 96 S. Ct. 2586, 49 L. Ed. 2d 41* (emphasis added). We have never retreated from what should be obvious from reading the text of the statute: *Section 1981* offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship.

Plaintiff unquestionably has rights under both written contracts. Plaintiff is a party to the PBC contract and a subcontractor under the Public Schools contract. Plaintiff's rights do not change because of the holding in *Williams v. District of Columbia.*

The factual predicate in *Williams* is dissimilar to the facts in the instant case. First and foremost, the contract in *Williams* was not a "contingency contract" such that the amount of compensation the contractor is to receive is dependent on the amount of revenue that the government receives as a result of the contractor's efforts. Secondly, the contract in *Williams* contained terms that do not exist in the Davis contracts. The contract in *Williams* provided that the contractor would determine solely the amount of

payment at some unspecified future date. See *Williams* at 9. In the instant case, Davis & Associates, Inc. can make no such determination. Davis & Associates is at the mercy of the Chief Financial Officer. The Chief Financial Officer is the sole person to certify the receipt of funds as a result of the contractor's efforts and is the person responsible for calculating the percentage of the received funds that will be transmitted to the contractor for services rendered. Thirdly, the funding of the Davis contracts is not dependent on any congressional appropriation. The funding for the Davis contracts comes from the efforts of the contractor, not from an allocation of existing appropriated, government resources or prospective appropriated resources.

The Anti-Deficiency Act was never intended to apply to a contingency contract. Neither the Act nor (as noted above) the municipal regulations attached to defendants' motion apply to a contract where there is no specific "price or a target price of a fixed-price contract or cost reimbursement contract. See D.C. Mun. Regs. 27-3240.7. Defendants have cited no case authority to support this point.

For defendants to assert the argument that the Anti-Deficiency Act voids the contingency contracts is troubling.[2] Before government officials signed the contingency contracts, the same legal office (then, the Office of the Corporation Counsel) that now represents defendants in this action analyzed and approved the contracts for execution. The General Counsel for the Control Board under the Financial Responsibility and Management Assistance Act of 1995 reviewed and approved the contracts. At that time, the contracts were deemed valid. It is incredible for the government now to take contrary positions with respect to the same matter. The callous disregard by the government for

---

[2] In the action brought by plaintiff in the District of Columbia Superior Court which defendants reference on page 3 of their Memorandum of Points and Authorities, no argument was ever advanced that the Davis contracts were void *ab initio*.

the integrity of an agreement between the government and its citizenry is deplorable. A contractor can never trust the District to be fair and to abide by the terms of the agreement. This is primarily why plaintiff finds itself in the predicament of having to sue the District in the instant matter. The Chief Financial Officer has never certified how much money the government received as a result of the sources identified by the plaintiff. Apparently, the District believes that the government can trample on the rights of contractors, engage contractors to perform services for the government, and later refuse to pay them. Such an attitude is unfair and sinister.

Secondly, the District has not asserted against majority contractors, which have entered into contingency revenue maximization contracts, the argument that the Anti-Deficiency Act voids their contracts with the District of Columbia government. Instead, the Chief Financial Officer has merely certified the amount of money collected and calculated the payment due the contractor. The majority contractors have been paid.

All in all, the argument that the District now advances appears to be disingenuous. The Anti-Deficiency Act (**31 USCS § 1341**) has no applicability to contingency contracts and especially the ones which are the subject of the plaintiff's complaint.

### 2. The Contract Appeals Board is not the appropriate post deprivation remedy to satisfy the due process clause of the Fifth Amendment to the United States Constitution.

Defendants argue that the process for which the plaintiff is due resides in the Contract Appeals Board. The case of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) is the case upon which defendants rely to conclude that the remedies provided through the Contract Appeals Board are adequate post-deprivation remedies for the deprivation of property interest that plaintiff asserts.

Defendants have ignored the authority of the Financial Responsibility and Management Control Board, (See Public Law 104-8, 109 Stat. 105(a) April 17, 1995). Under Pub. Law 104.8, the powers and authority given to the Control Board far exceed those bestowed on the Contract Appeals Board (CAB). The CAB had no authority to overrule the Control Board at that time and could not retroactively counter any terms and conditions of a contract approved by the Control Board. Similarly, the CAB has no authority to direct the actions of the Chief Financial Officer.

Both then and now. only the CFO can encumber district funds. Only the CFO can book a liability or acknowledge a debt. The CAB cannot enter a judgment in plaintiff's favor. All matters involving "finance" and devolve strictly within the only the powers bestowed on the CFO. Stated differently, if the CAB ruled that the District owed Davis any money, the CAB would be in violation of the law.

The CAB cannot make any kind of determination with respect to money owed to Davis or white contractor being paid versus Davis because only the CFO has the information and by law only the CFO can determine who is owed what and how much they are to be paid or not paid the CAB actually has no authority to demand or require the CFO to turnover any financial documents whatsoever.

Since the CAB does not have the authority to grant the relief that plaintiff seeks, it is clear that the post-deprivation upon which defendants rely, is inadequate. The CAB does not offer plaintiff an effective remedy for the infringement of plaintiff's property interests.

**3. The statute of limitations has not run.**

    The argument that the statute of limitations has run on both claims advanced by plaintiff is specious.  The time for the statute of limitations to commence is not the final day of the contract period.  On that date, although plaintiff was required to submit an invoice for expected income, neither plaintiff nor the District would be able to determine how much compensation the plaintiff would be entitled to receive.  The Chief Financial Officer must first determine the amount of income that results from the efforts of the contractor.  Here, no such determination has been made.  Plaintiff however has been informed that a majority contractor has been compensated under a similar contingency contract for work that Davis & Associates, Inc. performed.  The date the majority contractor was paid is unknown to plaintiff.  Plaintiff discovered that the majority contractor had been paid in April 2006.

    Certainly, since the plaintiff's discovery of the act of discrimination, neither limitations period advanced by defendants has expired.  Therefore, the defense of the statute of limitations should be stricken.

    Respectfully submitted,
    HOUSTON & HOWARD

    */s/ Johnny M. Howard*
    Johnny M. Howard, #264218
    1001 Connecticut Avenue, NW
    Suite 402
    Washington, DC  20036
    (202) 628-7058
    Email:  houhow@erols.com

## **CERTIFICATE OF SERVICE**

This case was filed under the United States District Court for the District of Columbia's ECF electronic file and serve system. This opposition has been filed with such Court and served on all parties herein electronically through such ECF electronic file and serve system on October 2, 2006.

                                                       */s/ Johnny M. Howard*
                                                         Johnny M. Howard