**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVIS & ASSOCIATES, INC., | : |
| | : |
| v. | : Civil No. 6CV 00972 (GK) |
| | : No Current Order |
| THE DISTRICT OF COLUMBIA, et al., | : |

**DEFENDANTS' REPLY BRIEF TO THE OPPOSITION TO THE MOTION TO DISMISS**

I. <u>Factual and Procedural Background</u>

Defendants District of Columbia, Anthony A. Williams and Natwar M. Ghandi in their official capacities ("the District") ("Defendants") submit herewith their reply brief in response to the Opposition filed October 3, 2006, by Plaintiff to the Motion to Dismiss.  On or about May 24, 2006, plaintiff filed this two count, 42 U.S.C. §1981 and § 1983, civil rights complaint in which plaintiff alleges that it was not paid on the basis of racial discrimination for two District of Columbia contracts, one originating in 1998 and the other in 2000.  Both contracts sought something called "revenue maximization" from the identification of additional federal funds under Medicaid and Medicare programs.  Neither contract had established prior appropriations.  Plaintiff, instead, was to be paid on a contingent fee arrangement based on what plaintiff could identify or recover.  In one contract with the former D. C. General Hospital in 2000, plaintiff was to be paid a percentage of what it could identify beyond certain baseline ranges from the federal programs.  In the other with DCPS in 1998, plaintiff was to be compensated based on what it could recover from responsible third parties for funds expended by the District for Medicaid and Medicare expenditures.

The District filed a motion to dismiss on August 10, 2006, arguing that there was no valid contractual relationship.  The District then argued that if a contract existed, there was an adequate state law remedy through the D.C. Contract Appeals Board.  Finally, the District contended that the claims were stale and barred by the applicable three year statute of limitations.

The Plaintiff's October 3, 2006, Opposition, argued principally that: (1) the claim brought under 42 U.S.C.§1981 is viable, particularly noting, *inter alia*, that there is no invalidity of the contract under the Anti-Deficiency Act, 31 U.S.C. §1341, et seq. and that the recent U.S. Supreme Court decision in *Domino's Pizza, Inc. v. John McDonald,* 126 S.Ct. 1246, 2006 U.S. Lexis 1821, (2006) (*"Domino's Pizza"*)  supports its claim for relief under 42 U.S.C. §1981;  (2) that the D.C. Contract Appeals Board has no power over the Office of the Chief Financial Officer and therefore is not an available remedy under state law; and (3)  there is no bar arising from any limitations of action since plaintiff only recently discovered payment to a majority or white contractor.

The District asserts  first that the text of the relevant portions of the Anti-Deficiency Act prohibit making any contract in advance of an appropriation and requires the identification of funds prior to the authorization of a contract. In addition, and because of that fundamental restriction, the decision in *Williams v. District of Columbia*, 901 A. 2d 91 ( D.C. 2006) *("Williams")* invalidating contracts without prior appropriations as void *ab initio*  makes contracts without prior appropriations, such as contingent fee contracts, also void *ab initio.* Moreover,  *Domino's Pizza*  far from supporting Plaintiff's claim for relief in fact establishes that a valid contractual relationship is required for protection under 42 U.S.C. § 1981.   The District then notes that the Contract Appeals Board has jurisdiction over contracts made by the Office of the Chief Financial Officer, *Abadie v. District of Columbia Contract Appeals Board,*  843 A. 2d

2

738 ( D.C. 2004) and accordingly, the Contract Appeals Board is at least equal to if not superior to the Office of the Chief Financial Officer. Finally, the District notes that the plaintiff had inquiry notice requiring it to undertake discovery pursuant to *Brin v. S.E.W. Investors*, 902 A. 2d 784, 794 ( D.C. 2006) as soon as it had notice that its claim was not going to be paid. That notice occurred "over the years", Complaint ¶18, and well before its filing in September, 2002, in the Superior Court as set forth in *Davis & Associates v. District of Columbia, ("Davis")* 892 A. 2d 1144 ( D.C. 2006) in which plaintiff served, but did not pursue, discovery.

## II. Argument

A. The Anti-Deficiency Act, 31 U.S.C. § 1341, *Williams v. District of Columbia*, 901 A.2d. 91 (D.C. 2006) and *Domino's Pizza, Inc. v. McDonald*, 126 S.Ct. 1246,2006 Lexis U./S. 1821 (2006) Require Dismissal of Plaintiff's 42 U.S.C. §1981 Claim,

1. *Williams and the Ant-Deficiency Act.*

The relevant portion of the Anti-Deficiency Act, 31 U.S.C. § 1341, is set forth immediately below:

> § 1341. Limitations on expending and obligating amounts
>
> (a) (1) An officer or employee of the United States Government or of the District of Columbia government may not--
> (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation;
> (B) involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law;

Under this provision, no contract may be entered into without a prior appropriation. As recently interpreted by the District of Columbia Court of Appeals in Williams *v. District of Columbia*, 901 A. 2d 91 (D.C. 2006), these provisions would create a flat prohibition under District law against a contingent fee contract where, as Plaintiff indicates in its Opposition, "payment of

3

funds is not tied to an annual budget or an agreed upon price, but to the recognition and receipt of funds from the efforts of the contractor." Id. at 4.  Thus, as *Williams* held:

> In light of the principles now codified at 31 U.S.C. § 1341] , n6 the Supreme Court of the United States and other federal courts have explicitly and repeatedly held that all contracts for future payments of money, in advance of or in excess of existing appropriations, are void ab initio. *Hercules Inc. v. United States*, 516 U.S. 417, 427, 116 S. Ct. 981, 134 L. Ed. 2d 47 (1996); *Goodyear Tire & Rubber Co. v. United States,* 276 U.S. 287, 48 S. Ct. 306, 72 L. Ed. 575, 66 Ct. Cl. 764 (1928); *Leiter v. United States*, 271 U.S. 204, 46 S. Ct. 477, 70 L. Ed. 906, 62 Ct. Cl. 767 (1926); see, e.g., *E.I. du Pont de Nemours & Co. v. United States,* 365 F.3d 1367, 1374 (Fed. Cir. 2004); *RCS Enters. v. United States*, 57 Fed. Cl. 590, 594 (2003).

Accordingly, and based on Plaintiff's admission that no prior appropriation is identified, there can be no valid contract under District law.  The *Williams holding* trumps any concerns that Plaintiff may have about regulations in effect prior to *Williams* but not yet updated. Moreover, the federal Anti-Deficiency Act requiring no contracts in advance of appropriations is amplified by other provisions of the D.C. Code, all evincing an intent to void contracts *ab initio* where no appropriation is identified prior to authorization.  *See*  D.C. Official Code §47-105, 47-355.01, et seq.  (2001 ed.). Additionally, *Williams* addresses Plaintiff's specific concerns that the prior apparent approval of the contracts should prevail over subsequent legal invalidity. Thus, Plaintiff's Opposition speaks to the "callous disregard by the government" of the "integrity" of an agreement. Id.  at 6.  In *Williams* plaintiff claimed that government assurances of available funding was actionable fraud.  *Williams* answered this contention, similar to the "callous disregard" contention of Plaintiff here, by holding there could be no reasonable reliance if no actual authority or appropriation existed.

> A government agent cannot validate a contract merely by averring that she is authorized to enter it, if no such authority exists; the rule applies with equal force even if "the agent himself may have been unaware of the limitations upon his authority.*"* *Merrill*, *supra*, 332 U.S. at 384. To permit otherwise would eviscerate

4

> the very purpose of the Act. *Cessna Aircraft Co. v. Dalton*, 126 F.3d 1442, 1448-49 (Fed. Cir. 1997) (Anti-Deficiency Act intended to halt practice by which "[government] officials were obligating funds before they were appropriated by Congress, and then making deficiency requests for appropriations that Congress had little choice in deciding because government agencies had basically committed the United States to make good on its promises"); *Lopez v. Johns Manville*, 649 F. Supp. 149, 158 (D. Wash. 1986), aff'd by *Lopez v. A.C. &S., Inc.*, 858 F.2d 712 (Fed. Cir. 1988) ("purpose of the statute is to prohibit anyone from obligating the Government in excess of the dollars appropriated by Congress"). Therefore, as a matter of law, it was not possible for CUIC to prove the reasonable reliance necessary] to prevail on a claim of fraud. *Shama Rest. Corp., supra,* 613 A.2d at 923. n11

Id. at 96.

Finally, the alleged fact, Plaintiff's Opposition at 7, that a majority contractor has been paid does not compel the District to pay plaintiff in this case.[1] Inconsistent actions or interpretations of law which may later prove to be incorrect do not give rise to a cause of action for payment. Plaintiff's attempt to allude to promissory estoppel will provide no relief. *Williams*, with its admonition regarding the actual legal limits of a government agent's power, restates the proposition that is the result of the analysis for promissory estoppel against the government—namely, that a government agent's power is specific and legal and cannot be used to act in derogation of appropriations statutes or any other law. That analysis starts with the test for promissory estoppel. The test for estoppel against the government starts with the following four elements:

> First, was there a promise? Second, should the promisor have expected the promisee to rely on the promise? And did the promisee so rely to his

---

[1] The District notes again that 42 U.S.C. §1981 requires intentional discrimination. As it noted in its Memorandum in Support of Its Motion to Dismiss "The §1981 count must also fail due to the lack of any allegation of intentional conduct. Liability under Title 42 U.S.C. § 1981 requires intentional conduct. *Clifton Terrace Associates, Ltd. v. United Technologies Corp.*, 929 F. 2d 714 (D.C. Cir. 1991)." Id. at 7, n. 2.

> detriment? Finally would injustice result from a failure to enforce the promise?

*Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C. 1979) (citing *Granfield v. Catholic Univ. of America,* 530 A.2d 1035, 1040 (D.C. Cir.), cert. denied, 429 U.S. 821 (1976)). See *Landow v. Georgetown-Inland West Corp.,* 454 A.2d 310, 314 (D.C. 1982); *Bender v. Design Store Corp.*, 404 A.2d 194, 195-96 (D.C. 1979); *Solway Decorating Co. v. Merando, Inc.*, 240 A.2d 361, 362 (D.C. 1968).

It has long been recognized, however, that the government may not be estopped on the same terms as any other litigant. See *Office of Personnel Management v. Richmond*, 496 U.S. 414, 419 (1990); *Heckler v. Community Health Services*, 467 U.S. at 60; *Federal Crop Insur. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *Boulez v. Commissioner of Internal Revenue*, 810 F.2d 209, 218, n.68 (D.C. Cir. 1987); *United States v. Asmar*, 827 F.2d 907, 911-912 (3rd Cir. 1987). While the Supreme Court has refrained from imposing a flat rule that no estoppel will lie against the government, the party seeking to impose such estoppel has an especially heavy burden. *Office of Personnel Management v. Richmond*, 496 U.S. at 423; *Heckler v. Community Health Services*, 467 U.S. at 60-61. In addition to the four-part test for private litigants set forth above, the party seeking to estop the government must at least show affirmative misconduct by the government which would imperil the "interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler v. Community Health Services*, 467 U.S. at 61. This is so because "[w]hatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Insur. Corp. v. Merrill*, 332 U.S. at 384; see *Office of Personnel Management v. Richmond*, 496 U.S. at 420; *Heckler v. Community Health Services*, 467 U.S. at 63. Local jurisprudence with respect to

estoppel against the District of Columbia is consistent with and amplifies these Supreme Court precedents. See *Georgetown Entertainment Corp. v. District of Columbia*, 496 A.2d 587, 591-592 (D.C. 1985); *District of Columbia v. McGregor Properties, Inc.*, 479 A.2d 1270, 1273 (D.C. 1984); *Coffin v. District of Columbia*, 320 A.2d 301, 305 (D.C. 1974). In particular, *District of Columbia v. Combs-Greene,* 806 A.2d 216, 222 (D.C. 2002) sets forth an additional consideration: the constructive notice of the limits of the government agent's power.

At the end of the day, the appropriations policies and protection of the public fisc are superior to the unfortunately ill founded expectations of contractors regarding payment. A choice of hardships results and the treasury is protected. [2]

### 2. *Domino's Pizza and Contractual Validity*

Plaintiff sets forth the following quote from *Domino's Pizza* as justification that its contracts are entitled to protection under 42 U.S.C. § 1981 arguing that its contracts were claim worthy.

> Any claim brought under § 1981, therefore, must initially identify an impaired "contractual relationship," § 1981(b), under which the plaintiff has rights. n3 Such a contractual relationship need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts. We made this clear in *Runyon v. McCrary*, 427 U.S. 160, 96 S. Ct. 2586, 49 L. Ed. 2d 415 (1976), which subjected defendants to liability under § 1981 when, for racially-motivated reasons, they prevented individuals who "sought to enter into contractual relationships" from doing so, id., at 172, 96 S. Ct. 2586, 49 L. Ed. 2d 41 (emphasis added). We have never retreated from what should be obvious from reading the text of the statute: Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship.

---

[2] There remains an open question whether a contract declared void ab initio under the Anti-Deficiency Act, for example, could qualify for the "good faith" relief for contractual invalidity under *Eagle Maintenance Services v. District of Columbia Contract Appeals Board,* 859 A. 2d 569 (D.C. 2006) where, while a contractor received some costs, it was still required under the facts and circumstances of that case, to refund money to the District.

126 S. Ct. 1246, 1249-1250 (U.S. 2006). However, far from providing support for protection of its contracts under 42 U.S.C. §1981, this holding requires that there be an existing or prospective valid contractual relationship. District courts considering these matters after *Domino's Pizza* have concluded, *inter alia*, that §1981 does not protect speculative business opportunities, *Williams v. Fannie Mae,* 2006 U.S. Dist. Lexis 42911 ( D.D.C., June 26, 2006), does not protect browsing retail customers *Horne v. J.C. Penney Corp.,* 2006 U.S. Dist. Lexis 23470 (W.D. Mich. Apr. 26, 2006) and does not protect a university professor who has at best an employment at will contract, *Hussein v. Regents of Univ. of Colorado,* 2006 U.S. Dist Lexis 60724 ( D. Colo. Aug. 24, 2006). Taken together these holdings evince the requirement for a valid contract or valid prospective contract for protection under §1981. Given the invalidity of the contract due to the violation of the Anti-Deficiency Act, there can be no protection under § 1981.

In addition, a separate reason for invalidity for the 1998 sub contract with the District of Columbia Public Schools exists. The primary contract is invalid since it bears no signature for the District of Columbia; its invalidity will create an additional barrier to establishing a valid sub-contractual relationship. As the District of Columbia Board of Contract Appeals held in *Second Genesis* CAB No. D -1100, 2000 DCBCA Lexis 2 (2000) District of Columbia contracts are required to be in writing and the requirement of a writing is satisfied only through the signature of the District of Columbia official. Thus, the Board initially noted:

> D.C. Code §1-1181.5 provides: (d) (1) No District employee subject to this chapter shall authorize payment for the value of goods and services received without a valid written contract. This subsection shall not apply to a payment required by court order or a final decision of the Contract Appeals Board. (2) After April 12, 1997, no District employee shall enter into an oral agreement with a vendor to provide goods

or services to the District government without a valid written contract. Any violation of this paragraph shall be cause for termination of employment of the District employee. (3) Any vendor who, after April 12, 1997, enters into an oral agreement with a District employee to provide goods or services to the District government without a valid written contract shall not be paid. If the oral agreement was entered into by a District employee at the direction of a supervisor, the supervisor shall be terminated. The Mayor shall submit a report to the Council at least 4 times a year on the number of persons cited or terminated under this provision .The statutory policy could not be clearer. After April 12, 1997, no District employee has authority to enter into a contract other than in writing. To add emphasis, the Council separately provided that no employee shall make payment on a contract not in writing, and, seemingly redundantly, but certainly emphasizing the point, provided that no vendor shall be paid without a written contract. Further, violation of this provision may be cause for termination of the employee making an oral contract, and, if made at the direction of a supervisor, the supervisor "shall be terminated." We cannot take this injunction of the Council lightly. See Pitts Motor Hotel, CAB No. D-1008, Aug 13, 1999, 46 D.C. Reg. 8653.

Id. at 12-13.  The Board then held:

> Reading the allegations of the Complaint most favorably to the Appellant, there is a written memorandum of a contract which is signed by the Appellant only. The Solicitation was issued February 7, 1997. Proposals were received March 17, 1997. Second Genesis submitted a fully responsive proposal to the Solicitation. Negotiations continued through August 5, 1997. Second Genesis was selected for award by the District and the District presented contract documents based on the negotiated terms to Second Genesis. Second Genesis signed the proposed contract on August 12, 1998. The block entitled "Acceptance by the District" with space for a signature and date by the "Contracting Officer" was left blank. The proposed contract was never executed by the District. In the absence of a signature on behalf of the District, this document is not a written contract between the District and Second Genesis. (footnote omitted)  The law effective August 12, 1998, forbids the District Government from entering into any contract not in writing.

Id. at 16-17.

Were the lack of signature on the primary contract not enough to defeat the claim for the subcontract, the lack of privity with the District would be.  Thus, as the District of Columbia Contract Appeals Board held in *Teresa M. Suter,* CAB No. D-881, 1991 DCBCA Lexis 223 (1991) a subcontractor generally may not recover against the government.

9

> As the District correctly points out, a subcontractor lacks standing to bring a claim arising under a government contract unless there is privity of contract between the subcontractor and the government. Usually, a subcontractor must seek redress of his grievances from or through the prime contractor because there is no privity of contract between the subcontractor and the government. However, the subcontractor may establish privity if the subcontractor can show that the contractor is an agent of the government, *United States v. Johnson Control, Inc.*, 713 F. 2d 1541 (Fed. Cir., 1983). Such an agency relationship which supports a finding of privity is shown where (1) the prime contractor was acting as a purchasing agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, and (3) the contract states that the government will be directly liable to the vendors for the purchase price, *United States v. Johnson*, 713 F. 2d at 1551. None of these factors is present in the case before the Board.

Id. at 6-7.  Under the facts of this case as revealed by the complaint and the attached contracts, no privity exists for the DCPS contract and none of the factors are present to establish a qualifying agency relationship.  No purchasing was involved, the unsigned prime contract does not establish any agency and there is no liability to vendors for any purchase price (since nothing was being sold or bought).

### B. The Contract Appeals Board Has Jurisdiction Over OCFO Contracts

Plaintiff argues without citation to authority that the D.C. Contract Appeals Board is inferior to the Office of the Chief Financial Officer ("OCFO") and would have no power to decide the dispute between the plaintiff and the OCFO.[3] Plaintiff's position is contrary to established precedent from the District of Columbia Court of Appeals.  Thus, *Abadie v. District of Columbia Court of Appeals,* 843 A. 2d 738 (D.C. 2004) established that the Contract Appeals Board had jurisdiction over contracts between contractors and the Office of the Chief Financial

---

[3] Plaintiff's argument is curious at best since the contracts involved here were between the plaintiff and the former D.C. General Hospital and the District of Columbia Public School System.  Any exemption for the Hospital under D.C. Official Code §2-303.20 (k) was repealed and plaintiff did not raise this as a claim in its appeal in *Davis & Assoc. v Williams,* 892 A. 2d 1144 (D.C. 2006).

10

Officer. Business Software Associates, ("BSA") an intervenor in the appeal, had been awarded a contract by the Office of the Chief Financial Officer on February 11, 2000, which was later terminated for default on August 21, 2000. BSA sued seeking to convert the termination from default to convenience. At the Contract Appeals Board, the OCFO moved to dismiss claiming that the Board had no jurisdiction. The Board held that there was no clear exemption for the OCFO and that the OCFO was subject to the Procurement Practices Act and the Board's jurisdiction. The Chief Procurement Officer filed a petition for review at the Court of Appeals seeking summary reversal of the Board's determination. Eventually, the matter was referred to a merits panel of the Court of Appeals which ruled that despite the substantial autonomy accorded the Office of the Chief Financial Officer under the Control Board mandated by Congress, the lack of a specific exemption from the Procurement Practices Act made the OCFO subject to the CAB's jurisdiction. Id. at 743-744. In addition, the Court of Appeals held that to attempt to avail itself of another exemption for the procurement of expert and consultant services, the OCFO would have to make a determination in writing that such services could not be procured through a PPA procurement. Id. at 744-746. The Court finally noted that Council oversight hearings in 1996 lead to the conclusion that to address the many problems then extant in the procurement system, only a limited set of exemptions was passed. Id. at 746. Taken collectively, therefore, the entire decision of the Court of Appeals supports inclusion in the Procurement Practices Act of the Office of the Chief Financial Officer. Davis's claim that the Contract Appeals Board is inferior to the Office of the Chief Financial Officer is unfounded since the CAB has jurisdiction over OCFO contracts and may enter judgments on such matters.

### C. <u>Plaintiff Had Inquiry Notice As A Matter of Law</u>.

Plaintiff finally contends, again without the recitation of any authority, that the statute of limitations has not run and did not start to run until Davis discovered in April, 2006, that a non-minority contractor had been paid when plaintiff had not been paid at all. Plaintiff's claim of reliance on a discovery rule to begin the running of the statute of limitations is without merit. It is without merit since under the facts and circumstances of this case it had inquiry notice well before the filing of any lawsuit. As plaintiff sets forth in its complaint, it had notice "over the years" that it had not been paid. Complaint ¶18. The District's initial memorandum in support of the motion to dismiss set forth as attachments plaintiff's discovery demands in the Superior Court, which sought information about its entitlement to payment. Plaintiff chose not to pursue that discovery or resort to the Contract Appeals Board and instead focused its efforts on appealing the Superior Court decision, which it lost, *Davis & Assoc. v Williams,* 892 A. 2d 1144 (D.C. 2006). As the District of Columbia Court of Appeals held recently in *Brin v. S.E.W. Investors*, 902 A. 2d 784 ( D.C. 2006) ("*Brin"*) plaintiff's reliance on the discovery rule is not well founded since that rule requires the plaintiff to be diligent in pursuit of information, especially information well within the plaintiff's ability to discover.

> A final aspect of the operation of the discovery rule that should be noted is its qualification that the plaintiff must know "or by the exercise of reasonable diligence should know." Thus, the plaintiff is charged with what might be called "inquiry knowledge;" that is, knowledge that he does not actually have but which he would have discovered had he exercised reasonable diligence in acting on the information available to him. See id. at 370-72. The discovery rule does not give a plaintiff *carte blanche* to defer legal action indefinitely. See *Morton, supra* note 11, 725 A.2d at 468; *Hendel*, supra note 11, 705 A.2d at 661. In other words, two distinct questions may be involved. The first is what facts are sufficient to put a plaintiff on "inquiry notice;" that is, what facts are sufficient to trigger the obligation to make a reasonable investigation into the possible existence of a cause of action. The second is what must be discoverable by such an investigation; that is, what "knowledge" must a plaintiff have, whether actual or discoverable upon reasonable inquiry, about the existence of a cause of action

before the statute of limitations begins to run.

Id. at 794-795. While *Brin* prefers that these determinations generally be left to the trier of fact, there are categories of cases in which it can be established as a matter of law that the plaintiff is charged with "inquiry knowledge." *Brin* reversed a trial court determination that charged plaintiff with inquiry notice at a fairly early date. The Court of Appeals in reversing held that the plaintiff could not be charged with the knowledge that her injury was linked to bad air quality at the Environmental Protection Agency's Waterside Mall offices absent definitive expert information linking her maladies to the air quality; shortly after she had that information she filed her lawsuit. Id. at 789-791. The case now before the Court, however, is not a complicated medical malpractice or products liability case with the need for substantial reliance on expert testimony to establish causation between a defendant's acts and any injury to the plaintiff. All that was necessary as a preliminary matter was for plaintiff to ask for a list contractors that had been paid and ascertain their minority or non-minority contractor status available through public certification.[4] All of that could have been in discovery in the Superior Court case. In this case, accordingly, after learning of non-payment "over the years" plaintiff could have, but did not, make a relatively straight forward inquiry; plaintiff could therefore be appropriately charged with notice inquiry and a resulting fatal failure to make further inquiry.

<u>Conclusion</u>

For the foregoing reasons and those set forth in its initial memorandum in support of its motion to dismiss, the District respectfully urges the Court to grant the motion to dismiss. The

---

[4] The District has, for example, an Office of Local Business Development which functions to stimulate and foster greater opportunities for such businesses. D.C. Official Code § 2-1205.01; 2-1205.03 (3). Chapters 6, 7 and 8 of 27 D.C.M.R. deal extensively with procurement policies concerning minority contractors.

contracts are invalid and cannot be protected under 42 U.S.C. § 1981; further, were valid contracts be found to exist, an adequate state remedy exists at the Contract Appeals Board, and finally, both counts are stale since Plaintiff can be charged as a matter of law with inquiry knowledge at a time well before it filed suit in the District of Columbia Superior Court, now more than four years ago.

Dated: October 20, 2006                    Respectfully submitted,

                                      ROBERT J. SPAGNOLETTI
                                      Attorney General for the District of Columbia

                                      GEORGE C. VALENTINE
                                      Deputy Attorney General, Civil Litigation Division

                                      */S/ Kimberly M. Johnson*
                                      KIMBERLY M. JOHNSON   D.C. Bar No. 435163
                                      Chief, General Litigation Section 1

                                      */s/ Thomas J. Foltz*
                                      THOMAS J. FOLTZ
                                      Assistant Attorney General
                                      D.C. Bar No. 462858
                                      441 Fourth Street, N.W.
                                      Washington, D.C. 20001
                                      (202) 724-6652
                                      (202) 727-0431 (fax)
                                      E mail: Thomas.foltz@dc.gov

CERTIFICATE OF SERVICE

     This case has been designated as part of the U.S. District Court for the District of Columbia's electronic ECF file and serve system. This filing has been filed with such Court and served on all parties herein electronically through such ECF electronic file and serve system on October 20, 2006.

_____*/s/ Thomas J. Foltz*_____
Thomas J. Foltz, Esq.

Davis & Associate 06 972 DC Reply to Opp to DC MTD E Sign 102006