the implementation thereof, shall be borne by the party incurring such expense except as otherwise provided herein or pursuant thereto.

    10. <u>Non-Disclosure of Confidential Client Information and/or Data</u>. During the course of performance pursuant to this Agreement, each of the parties will have access to confidential and proprietary information and data of the other party as well as of clients for whom they are providing services pursuant to client contracts covered by this Agreement. Except as may be required to provide services pursuant to this Agreement and the respective client contracts covered by this Agreement or as otherwise agreed in writing by the parties, neither party will at any time use or disclose to any person any such confidential information and data. Each of the parties shall exercise all due care and take all reasonable precautions to prevent the unauthorized disclosure of such confidential information and data. The provisions of this Section 10 shall apply during the term of this Agreement and for a period of three (3) years thereafter. In addition, and more specifically, each party agrees as follows:

    (a) Any individually identifiable information and/or data related to any eligible recipient or provider will be treated as confidential and, as such, will not be disclosed by HMS and D&A and/or by their respective agents, assigns, directors, employees, officers, partners and/or subcontractors.

    (b) The use of any confidential information and/or data that is obtained by HMS and D&A in the performance of their respective duties under this Agreement will be limited to those purposes that are directly associated with those duties.

    (c) HMS and D&A will promptly advise each other of any requests that are received for any of the confidential information and/or data that is described herein.

    (d) HMS and D&A will each be responsible for ensuring that any agreements between each party and any of its agents, assigns, directors, employees, officers, partners and/or subcontractors contain a confidentiality provision that strictly conforms to the provisions set forth herein.

    (e) Each party's agents, assigns, directors, employees, officers, partners and/or subcontractors will, upon request, immediately execute any confidentiality forms, disclosure forms, false claim forms and/or other administrative

forms that are required by the appropriate public agencies within the client state, county or other governmental entities.

(f) Unless otherwise required by law, HMS and D&A will not provide to or disclose to any third party any confidential information and/or data without having obtained prior written permission from the appropriate state, local or other governmental agencies within or having jurisdiction over client entities under contracts covered by this Agreement.

(g) HMS and D&A will each maintain at least $3 million of professional liability insurance in force throughout the term of this Agreement and each party will specifically name the other as an "additional insured" on the applicable insurance policy/policies concerning this insurance. In this regard, HMS and D&A each agree that they will supply written proof to the other that it has fully complied with this requirement within thirty (30) days after its execution of this Agreement.

11. Rights of Parties to Proprietary Methodology. Each party hereby recognizes that the services to be rendered by the other party hereunder are proprietary to that party and constitute valuable, special and unique assets of that party. Each party hereby agrees that documentation of the systems, methods and procedures utilized by each party will not be used for the benefit of, or otherwise disclosed to, any third party (other than official audit agencies) without the prior written consent of the other party. Any documentation provided by one party to the other will be returned promptly upon the earlier of the (i) written request of a party or (ii) the expiration or termination of this Agreement. This requirement will survive the expiration or termination of this Agreement and continue for at least three (3) years thereafter and for so long as the documentation retains its character as a trade secret of the affected party.

12. No Conflicts of Interest. During the term of this Agreement, neither D&A nor HMS shall directly or indirectly represent any other person or entity that engages in the provision of Revenue Recovery Services for Schools or District of Columbia Providers, except as specifically authorized by the other party in writing.

13. Dispute Resolution.

(a) Informal Dispute Resolution. Any dispute between the parties related to this Agreement or with respect to services rendered by the parties pursuant to client contracts covered by

this Agreement which is not resolved in the normal course of business shall be resolved as follows:

(i) Within five (5) working days after sending written notice by either party, the HMS and D&A Project Managers shall meet and attempt to resolve the dispute.

(ii) If the dispute is not resolved to the satisfaction of both parties within ten (10) working days of said meeting, the dispute shall immediately be submitted to HMS's Senior Vice President or equivalent and D&A's equivalent designee for an attempted resolution.

(iii) If the dispute is not resolved pursuant to the foregoing procedures within thirty (30) days of the initial meeting between the HMS and D&A Project Managers, the Chief Executive Officers of HMS and D&A shall meet to attempt to resolve the issue.

(iv) If the dispute is not resolved within ninety (90) days of the initial written notice, then either party may commence arbitration as specified in Section 13(b).

(b) Arbitration.

(i) Any disputes arising out of or in connection with this Agreement or the respective obligations of HMS and D&A hereunder (other than any disputes regarding confidential and proprietary information or the ownership of copyrights or trade secrets therein or trademarks used in connection therewith (collectively, the "Proprietary Rights") or any claims for injunctive or preliminary relief) shall be resolved by binding arbitration in accordance with the terms and conditions of this Section 13(b). Any such arbitration shall occur in the State of New York in accordance with the rules of the American Arbitration Association then in effect. Notwithstanding anything to the contrary which may now or hereafter be contained in the rules of the American Arbitration Association, each party will appoint one person to hear and determine the dispute within twenty (20) days after receipt by one party of a written request for arbitration made by the other. The two persons so chosen shall, within twenty (20) business days of their appointment, appoint a third impartial arbitrator. Each arbitrator shall be a member of the Bar of the State of New York. The majority decision of the arbitrators will be final and conclusive upon both parties hereto. If either party fails to designate its arbitrator as described above, the arbitrator designated by the other party will act as the sole arbitrator and will be deemed to be the

single, mutually approved arbitrator to resolve the controversy. In the event that the parties are unable to agree upon a rate of compensation for the arbitrators, they will be compensated for their services at a rate to be determined by the American Arbitration Association.  Each party shall bear its own costs and expenses of arbitration including, without limitation, filing fees, attorneys' fees and costs of transcripts, and each party hereby agrees to pay one-half of the compensation to be paid to the arbitrators in any such arbitration.  The arbitrators shall not have power or competence to allocate any such costs, expenses, fees or share of arbitrators' compensation between the parties, except that the arbitrators shall have the right to award reasonable attorneys' fees to the prevailing party in accordance with the equities.  IN THE EVENT OF ANY LEGAL ACTION RELATING TO THE ARBITRATION, INCLUDING ANY ACTION TO STAY THE ARBITRATION, TO VACATE, MODIFY OR CORRECT ANY AWARD OR OTHERWISE, OR ANY OTHER LEGAL ACTION RELATING TO THIS AGREEMENT, ANY SUCH ACTION SHALL BE BROUGHT IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION LOCATED IN THE BOROUGH OF MANHATTAN, CITY AND STATE OF NEW YORK and the prevailing party in the action as determined by the court will be entitled to recover from the other its court costs and reasonable attorneys' fees.

(ii) If any disputes arise regarding the Proprietary Rights or any claims arise for injunctive or preliminary relief, such disputes or claims shall be severed from any other disputes between the parties and shall proceed to resolution in a court of law.  Notwithstanding arbitration of any disputes between the parties, the parties agree that any legal proceedings regarding the Proprietary Rights or such claims shall not be stayed or abated pending the outcome of the arbitration. If the arbitration renders an award which affects or purports to affect in any manner the Proprietary Rights or such claims, that portion of the award affecting or purporting to affect the Proprietary Rights or such claims shall be null and void and shall not be binding.

14. <u>Miscellaneous</u>.

(a) <u>Publicity and Communications</u>.  Except as required by law or pursuant to any rule or regulation adopted by the Securities and Exchange Commission, no news release, public announcement, advertisement, or any other form of publicity concerning this Agreement or the relationship between the parties may be issued without the prior review and written approval by each of the parties, which approval shall not be unreasonably withheld.

(b) <u>Assignment</u>.  This Agreement shall be binding on the parties and their respective successors and assigns.  Neither party may assign this Agreement or any of its rights or obligations hereunder without the prior written consent of the other party, and any such attempted assignment shall be void in the absence of such written consent.

(c) <u>Notices</u>.  Any notices under this Agreement shall be in writing and shall be hand delivered, telecopied or otherwise sent to the party receiving the notice at the address specified below:

If to HMS:      Health Management Systems, Inc.
                401 Park Avenue South
                New York, New York 10016
                Attn: Paul J. Kerz
                Telecopier: (212) 857-5973

If to D&A:      Davis & Associates, Inc.
                919 18th Street N.W., Suite 400
                Washington, D.C. 20006
                Attn: Michael L. Davis
                Telecopier: (202) 429-0155

(d) <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered and to be performed entirely within that state.

(e) <u>Standard of Conduct</u>.  The parties covenant that they shall be in full compliance with all applicable laws, regulations and standards of ethical conduct, and each shall hold the other harmless of any damages (including reasonable attorneys' fees) caused by such party's violation of this provision.

(f) <u>Waiver</u>.  A failure by either party to exercise any right provided for herein or by applicable law shall not be deemed to be a waiver of any right hereunder or thereunder.  The remedies provided herein shall be cumulative and shall not be exclusive of any rights or remedies provided under law.

(g) <u>Complete Agreement</u>.  This Agreement supersedes the Prior Agreements and sets forth the entire understanding of the parties as to the subject matter thereof and hereof.

(h) <u>Modifications</u>.  No modifications, amendments, supplements to or waivers of this Agreement or any of its

provisions shall be binding upon the parties hereto unless made in writing and duly signed by both parties.

(i) <u>Subcontracting</u>. Neither HMS nor D&A shall enter into any subcontract(s) with any other party for performance of any of its duties hereunder without prior written consent of the other.

(j) <u>Relationship Management</u>. Each of the parties shall designate one of its employees to serve as its Project Manager, who shall interact with his or her counterpart at the other party relating to all operational matters under this Agreement. With respect to any client contract, the prime contractor for such contract will have overall governance responsibility with respect to such client.

(k) <u>Severability</u>. In the event that any one or more of the provisions of this Agreement are determined to be invalid or otherwise unenforceable, the enforeceability of the remaining provisions shall be unimpaired.

(l) <u>Headings</u>. The headings used in this Agreement and the organization of this Agreement are for convenience only and shall not affect in any way the interpretation of this Agreement.

(m) <u>Counterparts</u>. This Agreement may be executed in counterparts, any of which may be deemed to be an original, and all of which shall together constitute one and the same instrument.

IN WITNESS THEREOF, the parties have executed this Agreement effective as of the day and year first written above.

HEALTH MANAGEMENT SYSTEMS, INC.

By: _____
    Paul J. Kerz

DAVIS & ASSOCIATES, INC.

By: _____
    Michael L. Davis

Schedule A
(Services to Schools and District of Columbia Providers)

Responsibilities of the Parties

1. OPERATIONAL RESPONSIBILITIES

   a. Strategy and business/marketing and sales plans - Joint
   b. Functional requirements - D&A
   c. Technical requirements - Joint
   d. Sell engagement - D&A
      (1)  Determine scope of engagement - D&A
      (2)  Determine prime contractor - Joint
   e. Implement Service
      (1)  Collect data - D&A
      (2)  Process data - D&A (local); HMS (central)
      (3)  Analyze data - Joint
      (4)  Maintain data - HMS
      (5)  Distribute data - HMS (if prime contractor); D&A (if prime contractor)
      (6)  Prepare claims - Joint
      (7)  Submit claims - D&A
      (8)  Collect claims - Joint
      (9)  Prepare reports - HMS
      (10) Collect fees - HMS (if prime contractor); D&A (if prime contractor)

2. PARTNERS/CONSULTANTS

   a. Scope and cost of deliverable - Joint
   b. Selection - D&A
   c. Approval - Joint
   d. Supervision - D&A

3. FINANCIAL ARRANGEMENTS

   a. Scope of anticipated engagement - D&A
   b. Formulation of the budget (scope/revenue/direct and
      indirect expenses/Operating Margin/financing)
      - Joint
   c. Financing of engagement - HMS
   d. Calculation and distribution of Operating Margin
      (net of advances)
      (1)  Calculation - HMS
      (2)  Distribution - HMS (if prime contractor); D&A (if prime contractor)

Schedule B (Organizational/Operational Protocol)

1. Marketing and Sales. The selling party (either of HMS or D&A) shall be responsible for working with the client to define the requirements for the engagement. A written "Statement of Requirements" shall be completed by the selling party, in consultation with both the client and the Executive Project Manager and his project team, prior to project commencement and shall be maintained on a current basis throughout the course of the engagement.

2. Project Direction. The prime contractor (either of HMS or D&A) shall be responsible for overall direction of the engagement and shall designate an Executive Project Manager, who shall be responsible for overall project management, the ultimate success of the engagement, and maintaining a current Statement of Requirements, a current project profit and loss statement, the project schedule, and overall project reporting.

3. Budget and Administration. HMS shall be responsible for preparation and maintenance of a *pro forma* profit and loss statement for the engagement, in accordance with an engagement budget to be formulated by the Executive Project Manager in conjunction with representatives of D&A and HMS, ensuring that the budget reflects the project requirements. The budget will include costs for: (a) marketing and sales (HMS and D&A), (b) local client management (D&A), (c) central operations (HMS), and (d) project management (HMS and D&A). The budget will be subject to quarterly reforecasting of revenue and cost, to reflect the latest prevailing circumstances. Because HMS and D&A are to share in the engagement profit, each of HMS and D&A shall be responsible for those of its costs which are in excess of the (latest) approved budget.

4. Project Management. HMS and D&A shall share responsibility for management of the engagement, subject to direction by the Executive Project Manager.

5. Local Client Management. D&A shall be responsible for local operations, which shall include among other functions: (a) liaison with the client on a recurring basis, ensuring strong local relationships and managing client expectations with regard to engagement objectives, requirements, and performance, (b) data acquisition and

Schedule B (Organizational/Operational Protocol)

validation, (c) local claiming (to the extent possible), and (d) collection of monies due from the client.

6. Central Operations. HMS shall be responsible for processing of the client billing related data, supporting local operations with data required for on-site work, central claiming, internal and external reporting of project status and results, and invoice generation.

The organization implied by the above operating protocol is depicted below:



Project Executive Manager (Prime Contractor)
— Finance & Administration (HMS)
Project Manager (HMS/D&A)
Marketing & Sales (HMS/D&A)
Client Management/ Local Operations (D&A)
Central Operations (HMS)

## Schedule C (Compensation)

| Project Type | HMS Prime Contractor | HMS % | D&A % | D&A Prime Contractor | D&A % | HMS % |
|---|---|---|---|---|---|---|
| Transaction Based Claims | DC General Hospital (Retroactive Claims Reprocessing -- RCR) | 90 | 10 | | | |
| | Education (including DC Public Schools) | 30 | 70 | Education<br>- Ft. Wayne<br>- Indiana<br>  - Prior to D&A Contract Date<br>  - After D&A Contract Date<br>- Other | <br>85<br><br>100<br>70<br>75 | <br>15<br><br>0<br>30<br>25 |
| | Transportation (including DC Public Schools) | 20 | 80 | Transportation<br>- Indiana<br>  - Prior to D&A Contract Date<br>  - After D&A Contract Date<br>- Other | <br><br>100<br>80<br>80 | <br><br>0<br>20<br>20 |
| | DC Neighborhood Health Centers<br>- Prior to 8/1/98<br>- Post 8/1/98 | <br>50<br>25 | <br>50<br>75 | | | |
| Administrative Cost Based Claims | DC General Hospital<br>- Disproportionate Share<br>- Medicare Bad Debt<br>- Other Administrative | <br>10<br>70<br>10 | <br>90<br>30<br>90 | | | |
| | Education<br>- DC<br>- Other than DC | <br>30<br>15 | <br>70<br>85 | Education<br>- Ft. Wayne<br>- Indiana<br>  - Prior to D&A Contract Date<br>  - After D&A Contract Date<br>- Other | <br>75<br><br>100<br>85<br>85 | <br>25<br><br>0<br>15<br>15 |
| | Transportation<br>- DC<br>- Other than DC | <br>20<br>15 | <br>80<br>85 | Transportation | 85 | 15 |
| | DC Neighborhood Health Centers<br>- Prior to 8/1/98<br>- Post 8/1/98 | <br>50<br>25 | <br>50<br>75 | | | |
| Rate Redetermination | DC General Hospital | 20 | 80 | | | |