UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVIS & ASSOCIATES, INC. )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>THE DISTRICT OF COLUMBIA, et al. )<br>)<br>    Defendants ) | Civil 1:06-cv-00972-GK<br>Close of Discovery- 6/1/07 |

**OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DISPOSITIVE MOTION AND TO QUASH ANY NOTICE OF DEPOSITION FOR DR. NATWAR GANDHI**

Plaintiff Davis & Associates, Inc. oppose the Defendants' Motion to Stay Discovery Pending Resolution of Dispositive Motion and to Quash any Notice of Deposition for Dr. Natwar Gandhi. The grounds advanced by defendants do not warrant the relief that they seek. The opposition is divided in two parts. The first part deals with the defendants' motion to stay and the second concerns the request to quash the notice of deposition for Dr. Gandhi's deposition on May 30, 2007. It should be noted that the impediment that surfaced to preclude the taking of Michael Davis' deposition no longer exists. Michael Davis can be made available for deposition.

    **I.    DEFENDANTS' MOTION TO STAY**

For the third or fourth time in this litigation, the District defendants have advocated that the Court exercise its discretion to stay the discovery in this case. On each occasion that the request has been made or discussed, the Court has given the same answer: limited discovery should be available to the plaintiff. Plaintiff has done nothing beyond the limited discovery allowed in the Court's initial order. The cases cited by defendants in support of a stay of discovery reveal that the decision to stay discovery is committed to the sound discretion of the

Court. The Court has exercised its discretion by allowing limited discovery. There is no reason to overrule the Court's prior decision.

The discovery that has transpired in this case has been directed principally to the issues presented in the complaint and defendants' Motion to Dismiss. A cursory review of the District's motion to dismiss does not give the reader the impression that the motion should be granted either in whole or in part. Based on the standard applicable to the Court's consideration of the motion to dismiss, all reasonable inferences must be drawn in favor of the plaintiff and accepted as true.

First, it is undisputed that the underlying revenue maximization contracts are contingency contracts. Defendants have cited no authority to support that the government can appropriate funds for a contingency fee contract before signing, especially without any knowledge of the gross amount from which the contingency fee is to be calculated. See generally, B-214172, FEB 20, 1985, 64 COMP.GEN. 282 (A matter involving the Small Business Administration) The District has alluded however to an observation made by the District's Inspector General in a report of investigation by the Office of the Inspector General (hereinafter referred to as "OIG") "that the Maximus contract cured any Anti-Deficiency Act problem by securing appropriated funds prior to execution and eventual payment." When pressed by interrogatory, specifically Interrogatory 3 [When and in what amounts were the "prior allocated appropriations" made for the contracts(s) between the District of Columbia and Maximus, Inc. or between the District of Columbia and any other contractor which provided revenue maximization services to the District of Columbia and/or its agencies?], the District responded in part that the "Final Report of Investigation DC hiring Maximus" was protected by some unspecified privilege. See Vaughn Index, page 13 of 13, Bates# 1600-1631. Additionally, the District responded that the "District

of Columbia Office of the Chief Financial Officer is currently reviewing documents from its procurement branch * * *."

It is disingenuous for the District to rely on the OIG Investigative report for the proposition that a particular majority contractor cured any problem with the Anti-Deficiency Act by securing appropriated funds prior to execution of a revenue maximization contingency contract, and not reveal the remaining content of the report.  Whatever the privilege the District asserts as being valid to support its withholding of the report, the privilege has been waived by the revelation of a part of the report.[1]  See generally, *Adams v. Franklin,* 2007 D.C. App. LEXIS 245  (When a party authorizes disclosure of otherwise privileged materials, the privilege must be treated as waived**.**  Once a party has waived the attorney-client privilege**,** the other party should receive access to the remaining relevant withheld materials.)  Plaintiff's position regarding the Anti-Deficiency Act, is that compliance with the Act occurs when the Chief Financial Officer certifies that the federal Medicaid funds have been received, and that payment of the contingency fee is paid based on a calculation of the fee percentage times the gross amount of funds received.

The District's second argument that plaintiff's action is time-barred should not find favor with the Court.  The statute of limitations could not commence to run on plaintiff's claim until plaintiff knew or should have known that the District afforded preferential treatment to majority contractors rather than treat all contractors equally.  The earliest that plaintiff could have known of the existence of an actionable claim is when the Chief Financial Officer received funds from the federal government as a result of a revenue maximization contractor's efforts and if and

---

[1] The attorney-client privilege is not absolute. In certain circumstances, where application of the attorney-client privilege would not serve the purpose for which it is intended, courts have deemed the privilege waived**.** An important consideration in assessing the issue of waiver is fairness. The privilege which attaches to a confidential communication between attorney and client is waived when the substance of that communication is related to a nonprivileged party. When a party authorizes disclosure of otherwise privileged materials, the privilege must be treated as waived**.** Once a party has waived the attorney-client privilege**,** the other party should receive access to the remaining relevant withheld materials.  Adams v. Franklin, 2002 D.C. App. LEXIS 245.

3

when such information was published and/or recorded in the District's financial records and reports, and when the District paid the majority contractor and the basis of said payment. Plaintiff to this date does not know when the aforementioned events transpired.

With the assertion of privilege and other objections by the District to the disclosure of any information concerning the activity and involvement of the Chief Financial Officer, it is still a secret as to the precise dates that the acts of discrimination occurred. Plaintiff's claims were brought well within any limitations period.

With the arguments advanced by the District in its Motion to Dismiss being as tenuous as they are, the Court should not impede the progress of this case by staying discovery. As is explained in part II below, proceeding with the deposition of Dr. Gandhi will definitely will "inform the parties of the possible path of proceedings ahead." (Defendants' Memo in support of Motion at p. 3)

## II.    DR. NATWAR GANDHI'S DEPOSITION

When moving for a protective order pursuant to FRCP 26(c) to limit discovery, the movant must establish good cause "by demonstrating the specific evidence of the harm that would result." *Jennings v. Family Mgmt.,* 201 F.R.D. 272, 275 (D.D.C. 2001). Further, a party seeking a protective order prohibiting deposition testimony must establish a specific need for protection, as opposed to simply making conclusory or speculative statements. *Alexander*, 186 F.R.D. at 3 (citations omitted).

Good cause exists under Rule 26(c) when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense. The showing required under Rule 26(c) must be sufficient to overcome plaintiff's legitimate and important interests in trial preparation. See *Farnsworth v. Procter & Gamble Co.*, 758 F.2d

1545, 1547 (11th Cir. 1985) ("Trial preparation and defense . . . are important interests, and great care must be taken to avoid their unnecessary infringement.")  *Alexander v. FBI*, 186 F.R.D. 1 1998; See also, *Alliance for Global Justice v. District of Columbia*, 2005 U.S. Dist. LEXIS 15190 (D.D.C. 2005)

A party is entitled to depose a witness on all relevant issues as to which the witness has knowledge, whether or not it requires more than four hours to do so.  Moreover, the fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery. *See, e.g., Amherst Leasing Corp. v. Emhart Corp.,* 65 F.R.D. 121, 122-23 (D.Conn.1974).  *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984).

Defendants offer three (3) principal reasons for seeking a protective order against plaintiff's ability to take the deposition of Dr. Gandhi:

(1) Dr. Gandhi is a high-level government official.

(2) Plaintiff can show no plausible claim for relief and accordingly cannot show exceptional or extraordinary circumstances that would justify a departure from the general rule that prohibits the deposition of high-ranking officials such as Dr. Gandhi in the first instance.

(3) Defendants provided significant amounts of documentary discovery, which should enable plaintiff to narrow its focus for an individual or individuals other than Dr. Gandhi.

Plaintiff admits that Dr. Natwar Gandhi is a high-ranking government official and under existing case law, is entitled to special protections from deposition.  That having been said however, does not mean that the analysis is complete.  If Plaintiff can show that: (1) Dr. Gandhi has some personal knowledge of the events at issue and (2) the information cannot be obtained elsewhere, Dr. Gandhi must submit to a deposition and plaintiff's legitimate and important interests in trial preparation must be honored.  See *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998)

Dr. Gandhi indeed has personal knowledge of nearly all of the underlying events, which form the subject of this case.  The revenue maximization contracts were some of the largest contracts that the District's Office of the Chief Financial Officer handled.  As can be seen from the various responses to discovery filed by the District, information for responding to nearly all of the interrogatories and requests for production of documents necessarily has roots in the Office of the Chief Financial Officer.  The following is a partial list of relevant matters of which the Chief Financial Officer, Dr. Gandhi, is the only individual who can provide firsthand information:

> *Dr Gandhi authorized and/or directed his General Counsel to meet with Davis & Associates Inc., its consultants, sub contractors, experts and attorneys from Covington & Burling to verify the validity and soundness of the District of Columbia General Hospital "Black Book", and the legal means by which he could draw down the Federal Share of Medicaid funds owed DC General Hospital without using the normal and customary channel (the DC Medical Assistance Administration (DC Medicaid)*
>
> *Dr Gandhi authorized and/or directed that the District of Columbia Office of the Corporation Counsel provide him with an opinion of the legal soundness and validity of the District of Columbia General Hospital "Black Book"*
>
> *Dr Gandhi authorized and/or directed the Medicaid draw down using the DC General Medicaid Provider Number*
>
> *Dr Gandhi authorized and/or directed his staff to establish a separate DC General Hospital account in the Department of Health for the deposit and/or credit of Medicaid funds reimbursed as a result of work performed by Davis & Associates Inc., and drawn down using the DC General Hospital Medicaid Provider Number (while the HHC/PBC District of Columbia General Hospital was still an operating as a legal entity)*
>
> *Dr Gandhi authorized and/or directed how the DC General Hospital Medicaid funds received as a result of work performed by Davis & Associates and the "Black Book were to be accounted for in annual District of Columbia audits*
>
> *Dr Gandhi authorized and/or approved what position the District of Columbia Government would take with respect to the presentation of the financial status of the HHC/PBC District of Columbia General Hospital with respect to various actions before the Court*
>
> *Dr Gandhi authorized and/or approved what would be told to Members of Congress with respect to the financial status of the DC General Hospital*
>
> *Dr Gandhi authorized and/or approved what would be presented to the public and media with respect to the financial status of the DC General Hospital*

*Dr Gandhi authorized and/or approved the payments to Maximus, Inc for revenue recovered by Davis & Associates Inc (the DC General Black Book) instead of payments to Davis*

*Dr Gandhi made numerous statements that no Medicaid funds were recovered as a result of work performed by Davis & Associates Inc*

*Dr Gandhi later informed Members of Congress that the District of Columbia did in fact receive DC General Hospital Medicaid funds as a result of work performed by Davis & Associates Inc (the DC General Hospital Black Book), and yet, paid Maximus, Inc and not Davis & Associates Inc*

*Dr Gandhi approved the financial commitment on behalf of the Government of the District of Columbia and certified that Maximus, Inc had the appropriate support documentation to justify the Medicaid Payments for DC General Hospital*

*Dr Gandhi and the former Mayor Williams briefed the Council of the District of Columbia with respect to the "windfall Medicaid payment" which were in fact DC General Hospital Medicaid payments*

*Dr Gandhi directed his former General Counsel (Mr. Kaiser) to inform Members of Congress that Davis & Associates would be paid for Medicaid and Medicare revenue the District had drawn down for the DC General Hospital as a result of work performed by Davis & Associates Inc on the Black Book*

*Dr Gandhi informed Senator Landrieu that he would no longer dispute the legitimacy of the Davis & Associates contract with the HHC/PBC District of Columbia General Hospital, nor that Davis & Associates Inc had in fact performed the work on the District of Columbia General Hospital "Black Book" (and not Maximus, Inc), and that the District had received the Medicaid funds, and that Davis & Associates would be paid*

*Dr Gandhi informed the former Attorney General for the District of Columbia of how much the District of Columbia General Hospital had received as a result of work performed by Health Management Systems Inc and their sub contractor Davis & Associates on a separate contract, and then presented the DC Attorney General with approval for payment for only a portion of the funds, which were only to be paid to Health Management Systems Inc, and not Davis & Associates Inc.*

*Dr Gandhi at one time made the statement that Davis & Associates were charlatans and thieves and could never have prepared the work that generated the large sum of money the District received for the HHC/PBC District of Columbia General Hospital*

*Dr Gandhi ordered the Director for the DC Department of Health and Human Services and his Interim DC General Hospital Chief Financial Officer to cease and desist attempting to pay Davis & Associates any monies which were in accounts designated for payment for work performed, and Medicaid funds drawn down and paid to the District of Columbia General Hospital for its FY99 Revised Cost Report*

*Dr Gandhi reportedly made the statement that if he had to pay Davis & Associates Inc., it would have to be all or nothing*

*Dr Gandhi on several occasions made the statement that he would never pay Davis & Associates anything until ordered by the Court*

*Dr Gandhi authorized and/or directed his Chief Financial Officer for the District of Columbia Public Schools to accept the eight million dollar ($8,000,000.00) FY98 Special Education Medicaid Reimbursement Cost Claim from Maximus, Inc. with knowledge that Davis & Associates Inc. had already prepared and submitted a sixty million dollar ($60,000,000.00) FY98 District of Columbia Special Education Medicaid Reimbursement Cost Claim to the DC Public Schools Superintendent and the DC Medical Assistance Administration (DC Medicaid).*

*Dr Gandhi authorized and/or directed his Chief Financial Officer for the District of Columbia Public Schools to attend a meeting with Davis & Associates Inc, representatives of the Office of the Mayor, DC Medical Assistance Administration, Bert Smith & Co (Certified Public Accountants for the DC MAA), and others to discuss the duplicate Maximus, Inc. FY98 DCPS Cost Claim which could not be documented and/or supported to allow for a Federal Medicaid Payment.*

*Dr Gandhi authorized and/or directed that Federal Medicaid funds would be drawn down using the DC Special Education Medicaid Provider Number.*

*Dr Gandhi authorized and/or directed that FY98 DCPS Federal Medicaid funds drawn down (using the Maximus claim) for the Special Education Medicaid Reimbursement not be deposited and/or credited to Special Education at the time the funds were drawn down*

*Dr Gandhi authorized and/or directed that Maximus be given the Davis & Associates FY98 District of Columbia Public Schools Special Education Medicaid Reimbursement Cost Claim financial reimbursement cost claim data*

*Dr Gandhi authorized and/or directed that the revised sixty million dollar DCPS Maximus cost claim be accepted and submitted to District Medicaid for processing and payment*

*Dr Gandhi authorized and/or directed that Maximus be paid for the FY98 District of Columbia Public Schools Special Education Medicaid Cost Claim (and earlier audit risk hold back funds), with knowledge that Davis & Associates Inc. had actually done the work and had the necessary documentation to support all Federal Medicaid payments in question*

*Dr. Gandhi authorized and/or directed that outside Counsel be hired in an attempt to secure the documentation and support (in the possession of Davis & Associates Inc.) for the FY98 District of Columbia Public Schools Special Education Medicaid payment*

*Dr Gandhi authorized and/or directed that the FY98 DCPS Special Education to Medicaid payment not be recorded on financial documents for the DCPS Special Education Branch for FY98.*

*Dr Gandhi authorized and/or directed that the Office of the Corporation Counsel to secure from Davis & Associates Inc., medical, health and health related records necessary to support the FY98 DCPS Medicaid payment*

8

> *Dr Gandhi authorized and/or directed his staff not to certify and/or acknowledge (to Davis & Associates Inc) receipt of Federal Medicaid funds received as a result of the FY98 DCPS Medicaid Cost Claim prepared and submitted by Davis & Associates Inc.*
>
> *Dr Gandhi authorized and/or directed that the Office of the DC Corporation Counsel, DC Office of the Inspector General and a representative of the DC Public Schools to meet with Davis & Associate Inc. in one of several attempts to secure from Davis & Associates Inc., Medicaid claim records needed to support the Maximus claims submitted on behalf of the District of Columbia Public Schools Special Education Branch*
>
> *Dr Gandhi authorized and/or directed the repayment of approximately eighty million dollars ($80,000,000.00) to Federal Medicaid (CMS), on behalf of the District of Columbia Public Schools Special Education Branch*
>
> *Dr Gandhi and Mayor Williams authorized and/or directed that their Chiefs of Staff (approximately five of them at different periods of time) meet with Davis & Associates Inc. to discuss money owed to Davis & Associates Inc. for work performed on behalf of the HHC/PBC District of Columbia General Hospital (and Clinics) and the District of Columbia Public Schools Special Education Branch*
>
> *Dr Gandhi (twice) denied the request of a former Deputy Mayor/City Administrator to pay Davis & Associates Inc. money owed for revenue recovered on behalf of the District of Columbia General Hospital*
>
> *Dr Gandhi denied the request of the Chairman of the Finance and Revenue Committee of the District of Columbia Council to pay Davis & Associates Inc. money owed for work performed on behalf of the District of Columbia General Hospital, which he had verified, was received by the Government of the District of Columbia*

Based on the responses to discovery provided by defendants thus far in these proceedings and based on the information, which the plaintiff has been able to garner from various sources, Dr. Gandhi is the sole source of information identified in this motion and the sole source of information requested in the discovery requests that the District refuses to give complete responses. Unlike many cases in which motions for protective are filed, this case is unusual and involves extraordinary circumstances.

The circumstances occurred in large measure during a control year in which the Chief Financial Officer was engaged in making certain that the financial health of the city was of such stability that the Control Board would cease to manage the affairs of the city. The Chief Financial Officer therefore took great pains to oversee and manipulate that the receivables and

disbursements of the city. At that time, D. C. General Hospital was viewed as a source of drain on the public treasury. According to official public statements made, every effort was made to make certain that the hospital was solvent and could operate without deficit spending. Dr. Gandhi was at the forefront of making decisions about the flow of money to and from the hospital. No person over or under Dr. Gandhi within the District of Columbia government had the authority to affect the financial health of D. C. General Hospital. Accordingly, plaintiff knows of no one who would have had any authority to affect the plaintiff's situation other than Dr. Gandhi.

Secondly, the fact that defendants have provided "significant amounts of documentary discovery" is a red herring. Plaintiff has reviewed the documents produced by the defendants on three (3) occasions. Defendants have produced no documents that go to the heart of the issues in this case. The documents do not reveal how and why the District paid majority revenue maximization contractors and why the District has refused to compensate plaintiff, a minority revenue maximization contractor for legitimate work that it performed. The absolute refusal of the District to disclose such information is the primary reason why plaintiff has moved to compel discovery from the District Defendants. These defendants have refused to reveal the true nature of transactions that occurred. Similarly, the District has not offered the name of any other witness who possesses the knowledge required to respond adequately to the discovery.

Plaintiff can assure the Court without serious contradiction that judicial economy will be fostered by allowing the deposition of Dr. Gandhi to take place under the circumstances of this case. Plaintiff has met the criteria for an exception to the rule giving special protection to a high-ranking government official. Thus, before the limited discovery period allowed by the Court

ends, plaintiff requests that it be allowed to take the deposition of Dr. Gandhi and that the motion for protective order filed by the District be denied.

        Respectfully submitted,
        HOUSTON & HOWARD


        */s/ Johnny M. Howard*
        Johnny M. Howard, #264218
        1001 Connecticut Avenue, NW
        Suite 402
        Washington, DC  20036
        (202) 628-7058
        Email:  houhow@erols.com

## CERTIFICATE OF SERVICE

This case was filed under the United States District Court for the District of Columbia's ECF electronic file and serve system.  This opposition to motion has been filed with such Court and served on all parties herein electronically through such ECF electronic file and serve system on May 29, 2007.


        */s/ Johnny M. Howard*
        Johnny M. Howard

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVIS & ASSOCIATES, INC.         ) | |
|                ) | |
|     Plaintiff         ) | |
|                ) | |
|     v.         ) | Civil 1:06-cv-00972-GK |
|                ) | Close of Discovery- 6/1/07 |
| THE DISTRICT OF COLUMBIA, et al.   ) | |
|                ) | |
|     Defendants         ) | |

**ORDER**

Upon consideration of Defendants' Motion to Stay Discovery Pending Resolution of Dispositive Motion and to Quash any Notice of Deposition for Dr. Natwar Gandhi, the memorandum of points and authorities in support thereof and the opposition thereto, and it appearing that defendant has failed to show good cause for a protective order against the taking of Dr. Natwar Gandhi's deposition, it is, by the Court, this _____ day of _____ 2007,

ORDERED that Defendants' Motion to Stay Discovery Pending Resolution of Dispositive Motion and to Quash any Notice of Deposition for Dr. Natwar Gandhi, be and the same is hereby denied, and it is

FURTHER ORDERED That plaintiff may take the deposition of Dr. Natwar Gandhi on or before _____.

                                                  _____
                                                  U. S. DISTRICT COURT JUDGE