UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVIS & ASSOCIATES, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil 1:06-cv-00972-GK |
| | ) | |
| THE DISTRICT OF COLUMBIA, et al. | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Pursuant to Fed. R. Civ. P. 37, Plaintiff Davis & Associates, Inc., by and through undersigned counsel, moves the Court to compel the District of Columbia and Dr. Natwar Gandhi to respond fully and completely to the discovery that has been propounded upon them and for the imposition of sanctions for having to file the instant motion. This motion is necessitated because of the strong resistance that defendants have mounted to the production of basic discoverable information, concerning the financial transactions and business dealings that occurred between the District government and various revenue maximization contractors, including the plaintiff. The page limitation established for the length of motions has hampered plaintiff's ability to describe in painful detail the extent of plaintiff's efforts to obtain the requested information and all of the reasons why plaintiff is entitled to the information. Nevertheless, plaintiff has winnowed its focus on specific subparts of the requested discovery that are extremely critical to this case.

Nearly all of the critical information that is responsive to the discovery requests resides in the District's Office of the Chief Financial Officer. The District defendants have erected an impenetrable brick wall and will not produce any information from that office. Although the Chief Financial Officer is a high-ranking government official, neither he nor his office is above

the law such that reasonable discovery requests cannot be honored.  The Chief Financial Officer cannot operate in a sphere of secrecy while administering public funds.  The Chief Financial Officer is subject to the rules of Court just as any other litigant.  Plaintiff should be allowed access to the requested information to prove the existence of any unlawful discriminatory animus in the District's interaction and relationship with Davis & Associates, Inc. or to defeat the points raised in the District's Motion to Dismiss.  Plaintiff has no other recourse but to seek the assistance of the Court.  The attached memorandum of points and authorities and the accompanying exhibits explain further the grounds for the relief advanced in the motion.

Counsel for the District of Columbia and Dr. Natwar Gandhi withheld his consent to the relief requested in this motion.

Dated: May 30, 2007                                    Respectfully submitted,
                                                       HOUSTON & HOWARD


                                                       ___/s/ Johnny M. Howard___
                                                       Johnny M. Howard, #264218
                                                       1001 Connecticut Avenue, NW
                                                       Suite 402
                                                       Washington, DC  20036
                                                       (202) 628-7058
                                                       Email:  houhow@erols.com


## CERTIFICATE OF SERVICE

This case was filed under the United States District Court for the District of Columbia's ECF electronic file and serve system.  This motion has been filed with such Court and served on all parties herein electronically through such ECF electronic file and serve system on May 30, 2007.

_/s/ Johnny M. Howard_
Johnny M. Howard

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVIS & ASSOCIATES, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil 1:06-cv-00972-GK |
| | ) | |
| THE DISTRICT OF COLUMBIA, et al. | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**Preliminary Statement**

Throughout the discovery period, plaintiff has sought full and complete responses to the fourteen (14) interrogatories and fifteen (15) requests for production of documents that were propounded on defendants District of Columbia and Dr. Natwar Gandhi on December 21, 2006. Plaintiff has received no unqualified answers to any interrogatory or any request for production of documents. Plaintiff has received a number of documents that involve matters which can at best be characterized as being on the outer edge of relevance to these proceedings, a lengthy Vaughn Index of "privileged" documents most of which are not listed without a specified privilege, and a recurring excuse that the Office of the Chief Financial Officer is reviewing documents that may or may not be responsive to the request. While litigants often exercise the first step in determining the responsiveness of a document, counsel for the litigant cannot rely solely on the litigant to make the final determination of a document's discoverability. Counsel must review the documents to insure that the rules of discovery are being adhered to. Based on the responses given by defendants which indicate that the "Office of the Chief Financial Officer is currently reviewing documents from its procurement branch which may or may not produce

information responsive to this request", it does not appear that defense counsel is playing a role

in determining what is or is not discoverable.  Plaintiff continues to seek full and complete

responses to the entire discovery propounded upon these defendants.  However, for purposes of

this motion, plaintiff has focused on eight (8) areas of inquiry covered in those discovery

requests.  Additionally, plaintiff seeks the production of four (4) documents listed in the Vaughn

Index: (a) the "Maximus Contract" at Bates #1420-1440; (b) the "Negotiated Services Contract"

at Bates #1476-1521; (c) the "Undated Complaint Memorandum, withdraw request for

investigation" at Bates #1578-1596; and (d) the "Final Report of Investigation DC hiring

Maximus" at Bates #1600-1631. Defendants have attached no specific privilege to the four (4)

referenced indexed documents.  The eight (8) areas of inquiry are as follows:

1. What were the reasons for compensating the majority revenue maximization contractors and not plaintiff, a minority contractor, who performed the work which allowed the District to receive federal Medicaid funds?  And what documentation was used to support the payment to the majority contractor?

2. Why did not the Chief Financial Officer certify the amount of funds the District received as a result of work performed by Davis & Associates, Inc. when he apparently certified funds so that Maximus, Inc. could be paid for work that Maximus did not perform?  And what documentation was used?

3. Does the Anti-Deficiency Act apply to a contingency fee contract?  If so, how has the District applied the act to revenue maximization contractors other than Davis & Associates, Inc.?

4. When notified of the existence of (and in receipt of ) the HHC/PBC District of Columbia General Hospital FY99 Retroactive Cost Claim (aka the District of Columbia General Hospital "Black Book"), name all persons and parties who participated in the decision not to record an accounts receivable on the financial records of the HHC/PBC District of Columbia General Hospital and a corresponding contingent liability in the District of Columbia Government financial records.

5. When were the funds associated with the District of Columbia General Hospital "Black Book", the revised DC General Hospital FY99 Cost Report and the FY98 District of Columbia Public Schools Special Education Medicaid Reimbursement program identified by Davis & Associates, Inc. drawn down from the Federal/State Medicaid account?

  Where and when were the drawdowns recorded?  How were they reported to the Control Board, Council of the District of Columbia, Congress of the United States, and other Federal Agencies

6.  What were the amounts of the draw downs that relate to DCPS Special Education Medicaid Reimbursements and/or payments for FY98 and the retroactive Medicaid cost claim reimbursements and/or payments for the HHC/PBC District of Columbia General Hospital (aka the DC General Hospital "Black Book") submitted in FY99?  What support documentation was used for the Federal claim and payment?

7.  Who recorded the draw down transactions in the District's financial records?  On which dates? In what specific accounts for the DC Public Schools?  In what specific accounts for DC General Hospital?

8.  Who authorized payments of contingency fees to the majority contractors?  When?  In what amounts?  And based on what documentation and support

Full and complete responses to the above areas would satisfy plaintiff at this preliminary stage of the proceedings.

## **Background**

On May 24, 2007, plaintiff brought suit against the District of Columbia under 42 U.S.C. §§ 1981 and 1983 for depriving Davis & Associates, Inc. of its property interests without due process of law, by receiving payment from the federal government for uncollected Medicare and Medicaid payments in an amount exceeding $268,000,000.00 and refusing to compensate plaintiff for the work performed in helping the District to obtain such funds.  In the performance of the 1998 contract with the District of Columbia, the Plaintiff identified for collection an amount in excess of $68,000,000.00 due to D.C. Public Schools from uncollected Medicaid programs.  In performance of the 2000 District of Columbia General Hospital contract, the District received from the Federal/State Medicaid/Medicare program (government) all or part of $200,000,000.00 that was identified by the Plaintiff.

After the complaint was filed, the District moved to dismiss the action arguing among other things the following points:

(1)    Count I of the complaint, 42 U.S.C. §1981 should be dismissed because the underlying contracts were void *ab initio* for failure to certify available appropriated funds as required by 27 D.C.M.R. §3240;

(2)    Count II, 42 U.S.C. §1983 should be dismissed for failure to use available state remedies and proceed before the Contract Appeals Board; and

(3)    Counts I and II are time-barred by the applicable statute of limitations.

In a later filing, the District argued that there was no valid prime contract between the District and Health Management Systems. The District argued that no District official had signed contract C80059. The District produced the signed contract in response to discovery requests. (Presumably, the argument for dismissal based on the absence of a signed contract with the District of Columbia Public Schools is now deemed stricken.)

Before receiving the District's response to the discovery requests, defense counsel repeatedly mentioned in telephone conversations that he did not know who to contact concerning the Davis contracts and that he could not locate any relevant documents. Undersigned counsel sent a letter dated January 25, 2007 informing defense counsel of the identity of potential witnesses within and without the District government and the possible location of discoverable documents. (A copy of the letter is attached as Exhibit 1.) A second letter seeking the District's compliance was sent to defense counsel on March 13, 2007 to enhance the likelihood that substantive responses would be forthcoming to the discovery. (A copy of the letter is attached as Exhibit 2.) On March 23, 2007, the District responded to the discovery.

## <u>Argument</u>

FRCP 37 provides in pertinent part

(a) *Motion for Order Compelling Disclosure or Discovery*. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery as follows:

(B) * * * If* * * a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that

inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling answer, or a designation, or an order compelling inspection in accordance with the request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action. * * *.

(3) *Evasive or Incomplete Disclosure, Answer, or Response.*  For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.

After reviewing the responses, plaintiff was again disappointed.  The quality of answers that Defendants rendered to the interrogatories can be characterized as evasive, incomplete or non-responsive.  No interrogatory was answered substantively with simply a narrative response.  The interrogatories were answered with either an objection or a statement prefaced with the following language:

> "The District of Columbia Office of the Chief Financial Officer is currently reviewing documents from its procurement branch which may or may not produce additional information responsive to this request."

Not a single document or interrogatory answer has come from the Office of the Chief Financial Officer.  The refusal of defendants to produce any information from the Office of the Chief Financial Officer is a significant hindrance to plaintiff's ability to prosecute this case as efficiently and expeditiously as possible.  The District's stalling tactics are willful, deliberate, and demonstrate a callous disregard for the Court's order and the Rules of Civil Procedure.  The net effect of all responses made by the District defendants has been not to disclose any information from the Office of the Chief Financial Officer.  As a result, plaintiff has been prevented from gathering sufficient information to supplement its opposition to the motion to dismiss as well as to develop relevant facts to prosecute this case.

### The Anti-Deficiency Act[1]

Interrogatory numbered 3 asked: "When and in what amounts were the "prior allocated appropriations" made for the contract(s) between the District of Columbia and Maximus, Inc. or between the District of Columbia and any other contractor which provided revenue maximization services to the District of Columbia and/or its agencies? The District answered:

> ""**Response:** The District of Columbia Office of the Chief Financial Officer is currently reviewing documents from its procurement branch which may or may not produce information responsive to this request.  It is unknown whether the payments listed in the documents below were or were not made from "prior allocated appropriations."  Non-Privileged documents potentially responsive to this request are listed below.
>
> Bates #   1053-1081- Schedule of Payments Made FY 2003 (10/01/02- 09/30/03) YTD (10/01/02- 03/31/03).  9/08/03.
>
> 1418-1419- Fax of Check From the District of Columbia to Health Systems Inc. 05/12/99.
>
> 1597-1599- Investigate Synopsis
>
> Privileged Documents responsive to this request are located in the privileged log at Bates numbers.
>
> Bates # 984-985
> 1600-1631"

In addition to rendering the quoted formal response, defendants provided an Investigative Synopsis from the Inspector General's office and included the following electronic communication:

> "From our perspective, there are neutral, non-pretextual reasons that the Davis contract was not paid and the Maximus contract was as indicated by the

---

[1] While nearly all of the interrogatories propounded on these defendants, if answered completely, could reveal pertinent information concerning why the Anti-Deficiency Act has no application to the underlying contracts in this case, plaintiff highlights only interrogatory numbered 3 in the text of this memorandum.  Additional reasons to buttress the reasons why the information is needed are included in Exhibits 4 and 5 attached to the instant motion.

6

attached report of investigation by the OIG which found that the Maximus
contract cured any Anti-Deficiency Act problem by securing appropriated funds
prior to execution and eventual payment."

From plaintiff's vantage point, plaintiff expected the District to provide at the
very least that a copy of the information that the Inspector General relied on to conclude
that the "Maximus contract cured any Anti-Deficiency Act problem by securing
appropriated funds prior to execution and eventual payment." No information of this sort
was forthcoming. (Usually the reports from the Inspector General are available on a
website maintained by the Inspector General's Office. The subject report could not be
located on the website.)

None of the non-privileged documents addressed how any contractor "cured any Anti-
Deficiency Act problem by securing appropriated funds prior to execution and eventual
payment" under a contract.

Secondly, Plaintiff could not discern from the description of the documents in the
Vaughn Index at Bates stamped 984-985 (Fax memo from Sophia Atkinson Jarrell
regarding Fax - Public provider expenditures) and 1600-1631 ("Final report of
Investigation DC hiring Maximus") what privilege was being asserted to prevent plaintiff
from receiving the document. Defendants produced a synopsis of the Investigative report
and asserted no privilege associated with its submission. It is disingenuous to now assert
a privilege to the full Investigative report. Even if there was a valid privilege to be
asserted, the District has waived the right to assert a privilege.

Plaintiff tried to extract a response to the interrogatory by reviewing the contract
between Maximus and the District. Defendants produced the Maximus contract in

response to [RRPD #2, Bates stamped 1441-1461, 2079-2098 and 2099-2119][2].  The

material aspects of the Maximus contract are indistinguishable from the contract between

Davis & Associates, Inc. and the District of Columbia or the contract between Health

Management Systems, Inc. and the District of Columbia.  Each of the contracts contains

contingency provisions, which allow for compensation only after the District has received

federal funds from the contractor's efforts.  A comparison chart of the Maximus contract

against the Davis contract provisions is provided below:

|  | **Maximus Contract** | **Davis Contract** |
|---|---|---|
| Term | (1.1) Three years | (Art. II B.)  12 months from date of award with option of two add'l periods of 12 months |
| Type | Contingency – Revenue Recovery.  10% fee on retroactive and prospective claims.  Contractor shall only be paid contingency fee based on new federal funds it brings to the District. | Contingency – Revenue Recovery.  10% of revenues realized and collected above base line for FY 1999 Cost Report |
| Contracting Officer | Chief Financial Officer | Roscoe Wade, PBC[3] |

Although the Contracting Officer under the Davis Contract is listed as Roscoe

Wade, the Chief Financial Officer had jurisdiction over the PBC, pursuant to the

Financial Responsibility and Management Act.  The Davis contract was executed during

a control year.  Additionally, based on the District of Columbia's interpretation of various

statutes, the then Office of the Corporation Counsel, now the Office of the Attorney

General, concluded that the OCFO in law had a broad range of financial management

responsibilities over the PBC, including the direction of its financial management

---

[2] Defendants do not explain the nature of the privilege that allows them to produce one of the Maximus contracts and not the one under Bates #1420-1440.  It is plaintiff's position that if one Maximus contract is discoverable, then so is the one under Bates #1420-1440.
[3]

personnel, supervising its financial transactions, maintaining custody of its funds, certifying its contracts for availability of funds, and approving before payment its bills and payrolls.  See a copy of the Memorandum from Deputy Wayne Witkowski dated 1998[4] attached as Exhibit 3.

Based on the District's interpretation of the statutory authority governing the responsibilities of the CFO in the Witkowski memorandum, the CFO was the only person authorized by statute who could approve the signing of the contract between Davis & Associates, Inc. and the PBC just as was the case for the contract between the District and Maximus, Inc.  Thus, *ab initio* the CFO determined that the Davis contract, which he approved, did not violate the Anti-Deficiency Act.  To conclude otherwise would mean that the CFO or someone in his office subjected themselves to possible criminal violations or removal from office by approving the contract in the first instance.  See 31

---

[4] Specifically, at page 5 of the memorandum, the responsibilities of the CFO include among other things:

    *                          *                             *

Supervising and assuming responsibility for financial transactions to ensure adequate control of revenues and resources, and to ensure that appropriations are not exceeded;

    *                          *                             *

Supervising and assuming responsibility * * * for receiving all amounts paid to the District government from any source;

    *                          *                             *

Maintaining custody of all public funds belonging to or under the control of any agency of the District government;

Certifying all contracts (whether directly or through delegation) prior to execution as to the availability of funds;

    *                          *                             *

Certifying and approving before payment all bills, invoices, and payrolls of the District government

    *                          *                             *

U.S.C. §1349(a).  Notwithstanding the above, the defendants have asserted that "Count I, Title 42 U.S.C. §1981, must be dismissed due to the lack of certification and availability of appropriated funds prior to the execution of the contract."  [page 4 of the Memorandum of Points and Authorities in support of the Defendants' Motion to Dismiss] While it seems incredulous for the District to make such an argument, plaintiff is compelled to defend against it.

As defense counsel stated in response to interrogatory 3, the documents produced under Bates 1053-1081 do not reveal whether the schedule of payments were or were not made from "prior allocated appropriations."  Likewise, none of the other documents produced reveal this information.  Since the phrase "prior allocated appropriations" was a phrase that was introduced by the District, plaintiff assumed that the District knew and comprehended its meaning and could produce at least the documents that caused the Inspector General's office to conclude that "[f]unds were obligated and the contract was returned to the FCB (Financial Control Board) * * *.  The FCB then approved and awarded the contract to MAXIMUS on February 4, 1999.  The OCFO awarded the contract to MAXIMUS on March 1, 1999 * * *."[Excerpt from Investigative Synopsis, P. 2 (Bates 1597-99)]

Plaintiff believes that much of the information needed to respond adequately and accurately to this interrogatory resides in the Office of the Chief Financial Officer.  The Chief Financial Officer is the person who, by statute, must certify the availability of appropriated funds for the revenue maximization contracts.  That responsibility cannot be delegated to anyone outside of the Office of the Chief Financial Officer.  Therefore, defendant Gandhi should be compelled to produce all of the information and documents

called for in this interrogatory. Additionally, at the very least, the District should have

been able to produce the documentation that the Inspector General relied on to conclude

that the Anti-Deficiency Act had not been violated when investigating a Maximus

contract.

## Statute of limitations

The third argument advanced in the District's Motion to Dismiss involved the

statute of limitations.  The District argues, among other things, that the action against the

defendants is time-barred by the applicable three-year statute of limitations and four-year

limitations for the post formation contract issues.  To ascertain the date on which the

statute of limitations began to run on the asserted unlawful discrimination claims, one

must necessarily know the date that an act of discrimination occurred and when the

defendants published the date.  In other words, to understand the full measure of the

District's argument, the District of Columbia must reveal when it received funds from the

federal government as a result of a revenue maximization contractor's efforts and when

such information was published and/or recorded in the District's financial records and

reports., and when the District paid the majority contractor and the basis of said payment.

At least the following five interrogatories were propounded to
elicit this information:

2.      Identify all persons who were involved in any way with the
contractual relationship between the District of Columbia and Maximus, Inc. from
the commencement of the relationship through any review and evaluation of
Maximus' work product up to and including any payment of compensation for
services rendered.  Include in your response the date and nature of such
involvement.  "Persons" as used in this interrogatory shall include, but not be
limited to, employees in the Executive and/or Legislative Branches of government
such as the Mayor, Chief Financial Officer, agency heads, Contract Officer(s),
Contract Officer Technical Representative(s), etc.

4.      Identify the D.C. Government official(s) who authorized, approved
and/or recorded the Medicaid draw down/ payment/credit for the DCPS Special
Education Medicaid Reimbursement program for FY98 and all accounts to which

11

funds were deposited both under the control of the District of Columbia government or any other person, agency or United States government agency.

       5.     State the amount of Federal Medicaid matching funds that were drawn down, credited, offset, allowed, disallowed, or pended, using the District of Columbia Public Schools Special Education Medicaid Provider Number(s) for FY98, regardless of when the transaction actually occurred.

       6.     Identify the personnel in the District of Columbia's Office of the Chief Financial Officer who recorded the FY 2000 D. C. General Hospital Medicaid draw down/ payment/credit in the FY 2000 District financial records and all accounts .to which funds were deposited both under the control of the District of Columbia government or any other person, agency or United States government agency.

       7.     State the amount of Federal Medicaid matching funds that were drawn down, credited, offset, allowed, disallowed, or pended, using the District of Columbia General Hospital/Health Care Safety Net Administration or the District of Columbia Public Benefit Corporation Medicaid Provider Number(s) for FY 1999 through 2006, regardless of when the transaction actually occurred and all accounts to which funds were deposited both under the control of the District of Columbia government or any other person, agency or United States government agency.

Of the responses offered to these interrogatories, none of them contains the date that Maximus received funds for FY1998 through FY2000.  Again, the Office of the Chief Financial Officer should possess the information called for in these interrogatories.  The Office of the Chief Financial Officer must be compelled to produce the information called for in these interrogatories.

Contrary to the analysis offered by defendants, the running of the statute does not commence when plaintiff realized that Davis & Associates, Inc. had not been paid.  The period commenced to run at the earliest when the plaintiff became aware that Maximus or some other majority contractor was paid under a contingency fee contract (for work performed by Davis & Associates Inc.).  Even to this day, plaintiff has not received confirmation that the District paid Maximus or some other majority contractor under a contingency fee contract for the periods in question.

**Conclusion**

Attached to this motion as Exhibits 4 and 5 are interrogatories and requests for production of documents that were propounded on the District defendants along with the District's responses. Also included in the Exhibits are additional reasons from plaintiff why the requested discovery is relevant and needed.

It is beyond comprehension how the District can continue to deny the order of the Court to provide discovery. If plaintiff can determine when and how much the majority contractors were paid, the basis for their payment and how their payments were recorded, plaintiff can complete its defense against the arguments advanced by defendants that the action is time-barred or that the case should otherwise be dismissed.

In sum, if the District is required to produce the responses to discovery as required by the rules of the Court, plaintiff can supplement its opposition to the Motion to Dismiss and possibly move for partial summary judgment.

Respectfully submitted,
HOUSTON & HOWARD


_____/s/ Johnny M. Howard_____
Johnny M. Howard, #264218
1001 Connecticut Avenue, NW
Suite 402
Washington, DC  20036
(202) 628-7058
Email:  houhow@erols.com

13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVIS & ASSOCIATES, INC.          )
                                  )
              Plaintiff           )
                                  )
       v.                         )          Civil 1:06-cv-00972-GK
                                  )
THE DISTRICT OF COLUMBIA, et al.  )
                                  )
              Defendants          )

## **ORDER**

Upon consideration of Plaintiff's Motion to Compel Discovery, the memorandum of

points and authorities in support thereof and the opposition thereto, and it appearing that plaintiff

has shown good cause for the relief requested on the motion, it is, by the Court, this _____ day of

June 2007,

ORDERED that Plaintiff's Motion to Compel Discovery, be and the same is hereby

granted, and it is

FURTHER ORDERED That the District of Columbia Defendants' shall produce the

documents in response to requests numbered _____ and answer interrogatories numbered _____

___ on or before _____.

_____
U. S. DISTRICT COURT JUDGE