Exhibit No. 1

**BY HAND**

January 25, 2007

Thomas J. Foltz, Esq.
Assistant Attorney General
Office of the Attorney General
General Litigation Section I
441-4th Street, N.W., 6th Floor South
Washington, D.C. 20001

    Re:    **Davis & Associates, Inc. v. District of Columbia, et al.**
              **Civil No. 06-0972**

Dear Mr. Foltz:

      After having reviewed the Rule 26(a) disclosures that you provided on behalf of defendants, I was disheartened and disappointed with the shallowness of the disclosures. Based on information that I know to exist, there are more documents and more individuals who have valuable and discoverable information. I share the comments that follow so that the defendants' responses to the written discovery will be full and complete and not require the scrutiny required under FRCP 37.

      As you are keenly aware from your years of involvement with Michael Davis and Davis & Associates, Inc., the persons who have intimate knowledge of all or some of the issues in this case reach the highest echelons of government. The Chief Financial Officer Natwar Gandhi is at the center of all of the transactions involved in this case. Natwar Gandhi determined how much money the majority contractors were to receive and then authorized the payment of such funds to the majority contractors.

      Former Deputy Mayor/City Administrator Robert Bobb confirmed that the District of Columbia government received money from the District of Columbia Medicaid Program as a result of work performed by Davis & Associates, Inc. and money that was used to pay the majority contractors. Aside from Mr. Bobb being aware that the District received reimbursement money are such persons as the former Mayor, members of the Control Board, members of the City Council, personnel in the Office of the Chief Financial Officer, and personnel in the United States Department of Health and Human Services.

Thomas J. Foltz, Esq.
Assistant Attorney General
January 25, 2007
Page- 2 –

      Of particular interest is the role Former Mayor Williams, Mr. Omer (former Chief of Staff to Mayor Williams), Dr. Gandhi (Chief Financial Officer District of Columbia), Mr. Rickford (former Chief Financial Officer, DCPS), Mr. Erik Gault (former Director Operational Improvements Division, Office of the Deputy Mayor for Operations), D. C. Inspector General Maddox, Nancy Hapeman (General Counsel, Office of Procurement and Contracts), former DCPS School Board President Peggy Cafritz, former Council Member Kevin Chavous (former Chairman of the Education Committee of the D. C. Council), Maximus, Inc., other OCFO staff and a number of attorneys in the Office of the Attorney General (formerly known as the Office of the Corporation Counsel) played in the determination to draw down Federal DCPS Special Education Medicaid Reimbursement Program funds, the documentation and certification of the services provided for the recording of those funds, the disposition of those funds, the payment of Maximus, Inc., and any and all CAFRA journal entries.

      What is puzzling to plaintiff and which plaintiff awaits an answer through the defendants' further disclosures or discovery responses, is when did the money from D. C. Medicaid come to the District, in what amount, and who recorded the transaction in the District's financial records?  Under normal circumstances, the receipt of funds would be evident from a review of the various public financial statements published to the public and/or the United States Congress in the year the funds were received.  Plaintiff cannot determine through which account the Medicaid funds were received nor which year they were received.  Ordinarily, one would simply look for evidence of the money in the D. C. General Hospital/PBC account or look at the D. C. Public Schools account in the audited or unaudited financial statements.  Plaintiff cannot locate such evidence.

      Once plaintiff understands the precise date that the funds were booked, plaintiff will be able to resolve a number of concerns including the ability to discern how much money was received as a result of its efforts.

      Secondly, in order for the government to be eligible to draw down Medicaid reimbursement funds for the Medicaid provider the District of Columbia Medical Assistance Administration has to certify to Federal officials (Centers for Medicare and Medicaid) that sufficiently detailed documentation and records exist to support the requested claim.  No majority contractor, especially those contractors that were paid, has the original source documentation to support the claims for the same reimbursement periods.  Thus, the pertinent questions become: What information or records were used to support the claims for reimbursement on which D. C. Medical Assistance Administration drew down Federal Medicaid funds to reimburse the D. C. Medicaid provider?  When was the Medicaid provider account reimbursed?  When were the majority contractor(s) and/or sub-contractor(s) paid?  Why were the majority contractors paid and not Davis & Associates, Inc. given that the majority contractors lacked records and documentation sufficient to support any claim for Federal Medicaid reimbursement?  On what basis did the District of Columbia Government decide to pay Maximus, Inc. for Federal Medicare

Thomas J. Foltz, Esq.
Assistant Attorney General
January 25, 2007
Page- 3 –

and Medicaid funds recovered for the HHC/PBC D. C. General Hospital as a result of work performed by Davis & Associates, Inc. and documented in the "Black Book" submitted by Davis & Associates, Inc. to officials of the District Government?

    We understand that the following exist:

    (1)    Documents and/or summaries of meetings with the Secretary of the HHS, the Office of the HHS Inspector General, CMS Administrator, and other Senior officials of the Federal Centers for Medicare and Medicaid Services related to the District of Columbia Health & Hospital Corporation (aka the District of Columbia General Hospital) draw downs, payments, credits, offsets, allowances or other financial transactions related to the document known as the "Black Book", including but not limited to, any communications related to the payment of the "DC General Revenue Max Contractor;

    (2)    Documentation which will identify which organizations and individuals processed, reviewed and/or approved the setting up of HHC/PBC D C General Hospital accounts (other than accounts legally mandated by enabling legislation), and the identity of all organizations and individuals who participated in financial transactions involving those accounts, including the recording (or lack thereof) of the identification of the source of the funds and the appropriate disposition of same;

    (3)    Documents, letters, summaries and other forms of communications, of meetings related to public statements made by various District Officials (including the Control Board), with respect to the financial status of the HHC/PBC District of Columbia General Hospital to Federal auditors and the Congress of the United States;

    (4)    Documents related to litigation risk analysis that were prepared as a result of a meeting between the plaintiff, its Counsel Mr. Quinn, Thomas Foltz, Esq., D.C. Office of the Attorney General, Nancy Hapeman, General Counsel Office of Contracts and Procurement, and another Attorney for the District of Columbia, in which statements were made with respect to monies owed Davis & Associates Inc. as a result of work performed on behalf of the District of Columbia;

    (5)    Documents and/or communications between the District of Columbia and Members of Congress, specifically related to inquiries by Congress concerning Medicaid/Medicare monies owed to D. C. General Hospital and D. C. Public Schools Special Education Program, contract payments to Davis & Associates, Inc., Maximus, Inc. and other matters consistent with the subject matter;

    (6)    Documents and summaries of documents which would indicate decisions made by the District Government to pay Davis & Associates, Inc. for work performed on its behalf with respect to the HHC/PBC D. C. General Hospital and D. C. Public Schools;

Thomas J. Foltz, Esq.
Assistant Attorney General
January 25, 2007
Page- 4 –


(7)     Documents in the Office of the DC Attorney General, which confirm that District Officials knew that Federal Medicaid funds had been drawn down without proper documentation and support;

(8)     Documents concerning meetings and conversations between former Mayor Williams, Dr. Gandhi, Mr. Sam Kaiser, and other District Officials with Members of the United States House of Representatives and Members of the United States Senate relating to monies owed Davis & Associates Inc., payments to Maximus, Inc., and the location of Federal Medicaid/Medicare funds drawn down for the HHC/PBC D. C. General Hospital and D. C. Public Schools.

(9)     Documents prepared by Mr. Donald Rickford, (former Interim Chief Financial Officer, D.C. Department of Health), which reflect the amounts of money collected by the District of Columbia Government as a result of work performed by Davis & Associates, Inc.  Deputy Attorney General George Valentine, General Counsel Nancy Hapeman, and Mr. Sam Kaiser (formerly known as "General Counsel" OCFO) and other District Officials shared these documents.)

(10)    Briefing papers from former Mayor Williams and current Chief Financial Officer Gandhi directed to certain Members of the District of Columbia Council asserting the existence of a "windfall of Medicaid funds" and that the funds in question related to the HHC/PBC District of Columbia General Hospital;

(11)    Documents which show that the Attorney General for the District of Columbia (on three separate occasions) personally presented D. C. General Hospital/Health Management Systems, Inc. settlement options to former Mayor Williams for approval; and

(12)    Documents which show that the Mayor approved a settlement with HMS.

As you are aware, discrimination based on race can be rooted in very subtle behavior.  Thus, there is the need to explore every avenue that can possibly lead to discoverable information about the motives of persons who had any involvement with Davis & Associates, Inc.  My client and I are aware that with the new Mayor's current push to reform the public school system within the first 100 days of his administration, there is an urgent need to have access to persons presently employed by the government who have knowledge of matters involving the relationship between Davis & Associates, Inc. and the D. C. Public Schools.  Thus, plaintiff must gain access to these individuals for depositions and must quickly find out what happened to the Medicaid reimbursement funds that were drawn down using the District of Columbia Public Schools Special Education Medicaid Reimbursement Provider Number (and until only recently acknowledged by you in open court as having received some Federal Medicaid reimbursement for special education by the District government.)

Thomas J. Foltz, Esq.
Assistant Attorney General
January 25, 2007
Page- 5 –

     In sum, my client is interested in obtaining full and complete discovery responses without the need for engaging the Judge's attention to Motions to Compel Discovery or Motions for Sanctions. Your earliest cooperation and assistance in providing discovery responses will be greatly appreciated.

                                        Sincerely,

                                        /S/ *Johnny M. Howard*

                                        Johnny M. Howard

JMH/dm