# Government of the District of Columbia

### OFFICE OF THE CORPORATION COUNSEL
#### JUDICIARY SQUARE
#### 441 FOURTH ST., N.W.
#### WASHINGTON, D.C. 20001

★ ★ ★

IN REPLY REFER TO:

**CORRECTED**

**TO:**       Nicole Greenidge-Hoskins           **Prepared by:**LCD:WCW:pw
               Deputy General Counsel                   (AL-98-359)
               Public Benefit Corporation

**FROM:**    Wayne C. Witkowski       **Date:** September 30, 1998
               Deputy Corporation Counsel
               Legal Counsel Division

**SUBJECT:**   Scope of authority of the Inspector General and the Chief Financial Officer over the Public Benefit Corporation

    This replies to your August 17, 1998 memorandum to Corporation Counsel John M. Ferren requesting expedited advice concerning these questions: (1) Does the Office of the Inspector General for the District of Columbia ("OIG") have jurisdiction over the District of Columbia Health and Hospitals Public Benefit Corporation ("PBC") and, if so, what is the scope of the OIG's authority with regard to the PBC? and (2) Does the Office of the Chief Financial Officer of the District of Columbia ("OCFO") have jurisdiction over the PBC and if so, what is the scope of authority of the OCFO with regard to the PBC?

## CONCLUSIONS

    In preparing this response, I have focused on three statutes, namely: (1) the Health and Hospitals Public Benefit Corporation Act of 1996 ("PBC Act"), effective April 9, 1997, D.C. Law 11-212, D.C. Code § 32-261.1 et seq. (1998); (2) section 208 of the District of Columbia Procurement Practices Act of 1985 ("IG Act"), effective February 21, 1986, D.C. Law 6-85, as amended by section 303(a)-(d) of the District of Columbia Financial Responsibility and Management Assistance Act ("FRMA Act"), approved April 17, 1995, Pub. L. 104-8, 109 Stat. 148-151 and as further amended by section 11601(b)(3) of the National Capital Revitalization and Self-Government Improvement Act, approved August 5, 1997, Pub. L. 105-33, 111 Stat. 777, D.C. Code § 1-1182.8 (1998 Supp.); and (3) section 424 of the District of Columbia Home Rule Act ("OCFO Act"), approved December 24, 1973, Pub. L. 93-198, 87 Stat. 774, as added by section 302(a) of the FRMA Act and amended by section 142 of the District of Columbia Appropriations Act, 1997, approved September 9, 1996, Pub. L. 104-194, 110 Stat. 2375, D.C. Code §§ 47-317.1 through 47-317.5 (1997).

2

Based on these laws, I conclude that the OIG and the OCFO both have legal jurisdiction over the PBC. As more fully discussed below, the OIG's legal jurisdiction extends at least to conducting independent fiscal and management audits, acting as liaison representative for all external audits, and auditing the complete financial statement and report on the District government (including the PBC) for each fiscal year. In addition, the OIG may forward to the appropriate authorities any evidence of criminal wrongdoing discovered as a result of these audits. Also, as more fully described below, the OCFO in law has a broad range of financial management responsibilities over the PBC, including the direction of its financial management personnel, supervising its financial transactions, maintaining custody of its funds, certifying its contracts for availability of funds, and approving before payment its bills and payrolls.

## ANALYSIS

### PBC Act

This act established the PBC as a nonprofit entity with "a separate legal existence within the District government," D.C. Code § 32-262.2(a) -- i.e., as an independent agency of the District government. The PBC's primary purpose is "to provide comprehensive community-centered health care for the benefit of the residents of the District of Columbia," D.C. Code § 32-262.2(b). To this end, the PBC is governed by a 13-member Board of Directors, including the Chief Financial Officer of the District of Columbia ("CFO") as an ex officio voting member, D.C. Code § 32-262.3(a); and is granted powers that include acquiring and disposing of real and personal property, operating health facilities under its jurisdiction (i.e., the District of Columbia General Hospital and the District government's community health clinics), employing personnel, receiving grants of money (including from the District government), entering into agreements, and promulgating regulations governing personnel policies and procurement (subject to Council approval). D.C. Code §§ 32-262.5 and 32-262.7. After enactment of Bill 12-734, the "Public Benefit Corporation Bond Authority Emergency Act of 1998," which the Council passed at is July 30, 1998 legislative session, the PBC also will have authority to issue revenue bonds to fund its activities.

Except for (1) certain exemptions from the District of Columbia Freedom of Information Act, approved October 21, 1968, title II of Pub. L. 90-614, 82 Stat. 1204, D.C. Code § 1-1521 et seq. (1992), (2) an exemption from most provisions of the District of Columbia Government Comprehensive Merit Personnel Act of 1978, effective March 3, 1979, D.C. Law 2-139, D.C. Code § 1-601.1 et seq. (1992), and (3) an exemption of the PBC's "operations" from the District of Columbia Procurement Practices Act of 1985 ("PPA"), effective February 21, 1986, D.C. Law 6-85, D.C. Code § 1-1181.1 et seq. (1992), the PBC is expressly made "subject to all laws applicable to offices, agencies, departments, and instrumentalities of the District government." See D.C. Code § 32-262.2(c) (cross-referencing D.C. Code §§ 32-262.4(e), 32-262.8, and 32-262.12). See also section 320(k) of the PPA, as added by § 2(c) of D.C. Law 12-82, effective March 24, 1998, D.C. Code § 1-1183.20(k) (1998 Supp.) (providing that nothing in the PPA

3

shall affect the operations of the PBC). [1]  In addition, within 90 days after the end of each fiscal year, the PBC is required to submit to the Mayor a report describing, among other things, its revenues and expenses for the fiscal year, and its assets and liabilities at the end of the fiscal year.  D.C. Code § 32-262.18.

### IG Act and the OIG's Jurisdiction Over the PBC

Created within the Executive Branch of the District government, the OIG is authorized, among other things, to "[c]onduct independent fiscal and management audits of District government operations," "[a]ct as liaison representative for the Mayor for all external audits of the District government," "[f]orward to the Mayor and the appropriate authority any evidence of criminal wrongdoing that is discovered as a result of any investigation or audit conducted by the [OIG]," and "audit the complete financial statement and report on the activities of the District government for [a] fiscal year, for the use of the Mayor [during a non-control year and the CFO during a control year] under section 448(a)(4) of the Home Rule Act [D.C. Code § 47-310(a)(4)]."  See D.C. Code § 1-1182.8(a)(3)(A), (B), (D), (F), and (H).  (The OIG also is authorized to conduct an an annual operational audit of all procurement activities carried out under the PPA, but this authority does not apply to the PBC because the procurement activities of the PBC are not governed by the PPA.)  Additionally, the Inspector General has the power to issue subpoenas requiring the testimony of witnesses and the production of evidence germane to the Inspector General's lawful investigations, as well as the authority to apply for enforcement of these subpoenas in the Superior Court of the District of Columbia.  D.C. Code § 1-1182.8(c)(2)(A) and (B).

Under the IG Act, the term "District government" has the same meaning as under section 305(5) of the FRMA Act, D.C. Code § 47-393(5), i.e., "any department, agency or instrumentality of the government of the District of Columbia; any independent agency of the District of Columbia established under Part F of Title IV of the [Home Rule Act] or any other agency, board, or commission established by the Mayor or the Council; *** and any other

---

[1] Section 2(c) of D.C. Law 12-82, which added section 320(k) to the PPA, was enacted in response to advice the Council received from this Office and others that section 212 of the PBC Act, D.C. Code § 32-262.12, which took effect on April 9, 1997 and excluded the PBC from the procurement requirements of the PPA, had been inadvertently repealed by section 101(b) of the Procurement Reform Amendment Act of 1996, D.C. Law 11-259, D.C. Code § 1-1181.4, which took effect on April 12, 1997 and made the procurement requirements of the PPA applicable to, among other entities, "independent agencies" -- unless exempted under section 320 of the PPA, D.C. Code § 1-1183.20 (which as of April 12, 1997 did not mention the PBC). Although there is no committee report describing the purpose of section 2(c) of D.C. Law 12-82, which was added as a nongermane amendment during a legislative session, it is reasonable to infer from the circumstances described above that section 2(c) merely addressed the inadvertent repeal of section 212 of the PBC Act and, thus, was designed to restore the PBC's former exclusion from the procurement requirements of the PPA.

4

agency, public authority, or public benefit corporation which has the authority to receive monies directly or indirectly from the District of Columbia [government] (other than monies received from the sale of goods, the provision of services, or the loaning of funds to the District of Columbia [government] ***." Given that the PBC Act expressly establishes the PBC as part of the District government and that the PBC clearly comes within the above-quoted definition of "District government," there is little doubt that the Inspector General's earlier-quoted powers -- namely, to conduct independent fiscal and management audits of "District government" operations, to act as liaison representative for all external audits of the "District government," to audit the complete financial statement and report on the activities of the "District government" for each fiscal year, and to forward to the appropriate authorities any evidence of criminal wrongdoing discovered as a result of such audits -- encompass the PBC.

That the PBC legally is not exempt from external oversight of its operations is underscored by: (1) the requirement in the PBC Act that it report annually to the Mayor on its revenues and expenses as well as its assets and liabilities; and (2) the provision in the PBC Act that generally subjects the PBC to the District's laws, including the IG Act.[2] Consequently, I conclude that the OIG's legal jurisdiction extends to the PBC and that the scope of that jurisdiction at least includes the audits identified here, together with the responsibility to report

---

[2] There is no reasonable basis for arguing that, because the IG Act is technically part of the PPA, the Council's addition of section 320(k) to the PPA, which provides that nothing in the PPA "shall affect the operations of the [PBC] pursuant to the [PBC Act]," exempted the PBC from the jurisdiction of the IG. The discussion in footnote one above shows that, in adopting section 320(k), the Council's purpose was to exempt the PBC from the procurement requirements of the PPA; none of the surrounding circumstances reflects that the Council also intended to exempt the PBC fom the IG's jurisdiction. In addition, the above-quoted language from section 320(k), with its emphasis on "affect the operations of the [PBC]" (emphasis added), fails, expressly or by necessary implication, to support the proposition that the Council intended to exempt the PBC from the IG's jurisdiction. This so because the ongoing PBC "operations *** pursuant to the [PBC Act]" that would be affirmatively affected if the procurement requirements of the PPA were applied to them -- i.e., the provision of health care previously performed by D.C. General Hospital and the community clinics of the Commission of Public Health of the Department of Human Services -- would not be affected by the activities of the IG in conducting fiscal and management audits, which activities in and of themselves normally seek only to document, not affirmatively to influence, past or present agency practices. The conclusion that section 320(k) does not exempt the PBC from the IG's jurisdiction is reinforced by the traditional canon of statutory construction under which a putative amendment to a statute -- here, to the IG Act to exclude the PBC from the IG's jurisdiction -- will not be considered to have been made absent express language or a necessary inference to that effect. Traynor v. Turnage, 485 U.S. 553, 547-548 (1988); 2A Sutherland Statutory Construction § 46.02 (5th ed. 1992). In this regard, section 320(k) contains no express language amending the IG Act (which is part of the PPA), and the terms of section 320(k) do not require any inference that such an amendment was made.

5

any evidence of criminal wrongdoing discovered in the course of these audits.

### OCFO Act and the OCFO's
### Jurisdiction Over the PBC

During a control year -- as now -- the CFO has broad financial management responsibilities over the Executive Branch of the District government. These responsibilities include:

- Implementing appropriate procedures to ensure that budget, accounting, and personnel control systems are synchronized for budgeting and control purposes;

- Supervising and assuming responsibility for financial transactions to ensure adequate control of revenues and resources, and to ensure that appropriations are not exceeded;

- Maintaining systems of accounting and internal control;

- Supervising and assuming responsibility for the levying and collection of all taxes, special assessments, licensing fees, and other revenues of the District government, and for receiving all amounts paid to the District government from any source;

- Maintaining custody of all public funds belonging to or under the control of any agency of the District government;

- Certifying all contracts (whether directly or through delegation) prior to execution as to the availability of funds;

- Prescribing the forms of receipts, vouchers, bills, and claims to be used by all agencies of the District government;

- Certifying and approving before payment all bills, invoices, and payrolls of the District government; and

- In coordination with the Inspector General, performing audits of accounts and operations of the District government.

See D.C. Code §§ 47-317.3 and 47-317.4. For purposes of this list of responsibilities, the term "District government" has the same broad meaning as it has under the OIG Act -- i.e., it includes the PBC. See D.C. Code § 47-317.6(3).

6

In addition, unless otherwise exempted by Congressional statute, District accounting, budget, and financial management personnel of the Executive Branch of the District government -- including the personnel of independent agencies -- are required to be appointed by, serve at the pleasure of, and act under the direction and control of the CFO. See D.C. Code § 47-317.3a(a)(1).

For reasons similar to those discussed with respect to the OIG Act, I conclude that the OCFO has legal jurisdiction over the PBC, the scope of which extends at least to the various responsibilities enumerated above. This conclusion is reinforced by the CFO's general statutory authority to direct the financial management personnel of the Executive Branch independent agencies -- of which the PBC is one -- and the absence of any Congressional law exempting the PBC from this authority. The same conclusion is further reinforced by the provision in the PBC Act that generally subjects the PBC to the District's laws, which include the OCFO Act.

If you have any questions regarding this memorandum, please do not hesitate to call me at 727-3400.

WCW