UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVIS & ASSOCIATES, INC.        )
                                )
        Plaintiff               )
                                )
    v.                          )   Civil 1:06-cv-00972-GK
                                )
THE DISTRICT OF COLUMBIA, et al. )
                                )
        Defendants              )

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
<u>MOTION TO COMPEL DISCOVERY</u>**

In further support of its Motion to Compel Discovery, plaintiff replies to the defendants' "preliminary" opposition to said Motion. Curiously, defendants used the term "preliminary opposition" as if this is a term of art comprehended by the Federal Rules of Civil Procedure. No such term is included in the Rules of Civil Procedure and defendants cannot establish their own set of rules by which these proceedings are to be governed. The designation of the opposition as "preliminary" is however, indicative of how the defendants have viewed their obligations to the Court during the discovery period in this case. They have established their own set of rules, the chief component of which has been delay, delay and delay. Defendants have offered neither substantive nor qualitative comments about the responses that they have provided to the plaintiff's discovery.

Defendants' proposal that plaintiff contact a non-party, Maximus, Inc., to obtain the requested discovery is absurd and incredible. Maximus has no obligation to surrender documents or written responses to any inquiries made by the plaintiff. There is no relationship between Davis & Associates, Inc. and Maximus, Inc.

1

Secondly, the argument advanced by the District concerning the applicability of the Anti-Deficiency Act is circuitous. On the one hand, defendants argue that the Maximus revenue maximization contract, a contract with a majority-owned company, complied with the Anti-Deficiency Act prior to its signing. For that proposition, defendants rely on an excerpt from a report of the District's Inspector General which allegedly embraces that conclusion.[1] On the other hand, while boldly asserting this conclusion, the District has declared the entirety of the Inspector General's report as "privileged" and non-discoverable. The District cannot use the report as a sword and then keep it hidden under an unspecified privilege.

A revenue maximization contingency fee contract upon signing imposes no monetary obligation or financial commitment on the part of the District until money is actually received. In essence, a contingency contract, by its very nature, cannot be in violation of the Anti-Deficiency Act upon its signing and certainly not after money is recovered from the Medicaid program.

When the contract between the District and Davis & Associates, Inc. was signed, the DCFRMAA (Control Board) and the Chief Financial Officer for the District of Columbia approved the contracts for Davis & Associates, Inc. without obligating any funds or making any financial commitment on behalf of the government of the District of Columbia. Considerations concerning any financial obligation of the District arise after the contractor has performed work and money has been received from the Medicaid program as a result of the contractor's efforts.

---

[1]    The Inspector General's report, among other things, allegedly explains how a majority-owned revenue maximization contractor secured "prior allocated funds" for a contingency contract.

2

It cannot be overlooked that the Medicaid program is a reimbursement program. Monies for services have already been expended on behalf of the patient. All claims paid by the Federal/State Medicaid Program are to reimburse, in part, the Medicaid provider for costs incurred and payments made by that provider. For example, under facts pertinent to this case, D. C. General Hospital had provided the services to a Medicaid patient and had already paid for the costs of those services, i.e. salaries, labs, other attendant services, etc. Only after having expended those funds would the District be eligible to seek reimbursement from the Federal Medicaid Program for some of those expenditures.

All funds recovered on contracts with Davis & Associates, Inc. were Medicaid funds that had been appropriated by the United States Congress for the reimbursement and/or payment of state Medicaid/Medicare claims. There was no need to obtain additional allocation or appropriation for the collected funds.

Thirdly, the Defendants cannot hide behind the argument that the discovery rule does not apply to cases brought under 42 U. S. C. §1983, citing *Wallace v. Kato*, ___ U.S ___, 127 S. Ct. 1091, 166 L.Ed.2d 973, (2007). The facts in *Wallace* have no comparison to the facts in the instant case. The underlying cause of action in *Wallace* involved an intentional tort, false arrest or false imprisonment. The plaintiff's theory was that the statute of limitations does not begin to run until the plaintiff was able to comprehend the full measure of his damages. The United States Supreme Court concluded that knowledge of one's damages under a false arrest/false imprisonment type claim need not be known before the statute of limitations commences to run.

In the instant case, plaintiff has been unable to determine when the acts of discrimination occurred. Based on rumor and belief, plaintiff has come to know that majority contractors were paid under revenue maximization contracts and minority contractors were not paid for services under such contracts. For approximately seven (7) years, the District has concealed facts surrounding the approval and payment of funds under revenue maximization contracts, especially those involving Maximus, Inc., the HHC/PBC District of Columbia General Hospital, and the District of Columbia Public Schools Special Education Medicaid reimbursement Program. The Chief Financial Officer for the District of Columbia, who is the only authorized person in the District of Columbia government with the authority (pursuant to Public Law 104-8) to obligate the government; acknowledge a debt by the government; receive a payment or pay a claim on behalf of the government; or record a debt, payment, or claim for the government, has been silent. If the District had been forthcoming with full and complete discovery responses, plaintiff would not have been required to file the Motion to Compel Discovery and write the various letters to obtain discovery responses. Through its actions of defiance and stalling, the District is trying to run roughshod over the plaintiff's rights. The District should not be allowed to defend against the plaintiff's case by making conclusory arguments that apparently cannot be supported by a firm evidentiary foundation. If the District is not willing to produce the information legitimately called for under the rules of this Court, then why would anyone believe that a different result would have occurred if the plaintiff had made such a demand in any other District of Columbia government venue.

Finally, without any rational basis, the Defendants have concluded unilaterally that the person that the plaintiff needs to depose is Desmond Yorke.  No one knows how the Defendants reached this conclusion other than to surmise that Defendants desire to shield Dr. Gandhi from a deposition at all costs.  Defendants have never alluded to any specific information that Mr. Yorke has or had that would be responsive to the critical outstanding discovery requests.

Based on plaintiff's knowledge, Desmond Yorke, was either Controller, Acting Financial Officer, Interim Chief Financial Officer, or former Chief Financial Officer for the HHC/PBC District of Columbia General Hospital during the period of time that Davis & Associates, Inc. was under contract either as a sub-contractor to Health Management Systems, Inc. or as a prime contractor for the purpose of revenue recovery for the hospital.

Mr. Yorke and his staff worked with Davis & Associates, Inc.'s senior management and staff on a daily basis to increase the Federal Medicaid/Medicare revenue to the hospital so that the hospital would remain financially solvent and continue to provide vital health care services to those District citizens most in need.

Mr. Yorke and his senior staff were the first and last to review the HHC/PBC District of Columbia General Hospital "Black Book", which Davis & Associates, Inc. prepared, prior to its official submission to HHC/ PBC Executives, and the HHC/PBC District of Columbia Board of Directors.

Also, plaintiff respectfully submits that approximately, six (6) years ago, Mr. Yorke maintained an account at D. C. General Hospital payable to Davis & Associates, Inc., which contained approximately $700,000.00 from the recovery of seven million

5

dollars from Federal Medicaid (as a result of work performed by Davis & Associates, Inc.), which he was ordered by the District's Chief Financial Officer not to pay Davis & Associates, Inc.  These funds represented a small portion of the monies recovered for D. C. General Hospital which were not paid to Davis & Associates, Inc.

      Notwithstanding Mr.Yorke's knowledge of the aforementioned circumstances, defendants cannot supplant the need to take the deposition of Dr. Gandhi by offering Mr. Yorke for examination.  A deposition of Mr. Yorke will not yield the type of information vitally needed by plaintiff to challenge the asserted defenses and otherwise prove the allegations of the complaint.  All roads lead directly to Dr. Gandhi and not a substitute.  Dr. Gandhi must be required to submit to a deposition.  The areas delineated in plaintiff's Opposition to defendants' Motion to Stay Discovery Pending Resolution of Dispositive Motion and to Quash any Notice of Deposition for Dr. Natwar Gandhi at pages 6 through 9 must be explored. (Pages 6-9 of the plaintiff's Opposition to defendants' Motion to Stay Discovery Pending Resolution of Dispositive Motion and to Quash any Notice of Deposition for Dr. Natwar Gandhi are incorporated by reference herein.)

      Plaintiff is mindful that Dr. Gandhi is a high level official.  However, plaintiff cannot be channeled in a direction where its resources would be wasted by obtaining information already within its reservoir of knowledge.  Regardless of the extent of power that Congress vested in the Chief Financial Officer, Dr. Gandhi does not stand above the law or this Honorable Court.

      Plaintiff needs accurate and meaningful discovery responses so that it can buttress its arguments in opposition to defendants' Motion to Dismiss.  Defendants should not be allowed to ignore any of the Rules of Civil Procedure and thwart the legitimate efforts of

6

plaintiff to obtain information to which it is entitled under the Rules. Should defendants continue to defy this Honorable Court, plaintiff will urge the Court to impose extreme sanctions against the defendants under FRCP 37.

In sum, the motion to compel discovery must be granted.

Dated: June 13, 2007                                          Respectfully submitted,
                                                              HOUSTON & HOWARD


                                                              */s/ Johnny M. Howard*
                                                              Johnny M. Howard, #264218
                                                              1001 Connecticut Avenue, NW
                                                              Suite 402
                                                              Washington, DC  20036
                                                              (202) 628-7058
                                                              Email:  houhow@erols.com

## CERTIFICATE OF SERVICE

This case was filed under the United States District Court for the District of Columbia's ECF electronic file and serve system. This motion has been filed with such Court and served on all parties herein electronically through such ECF electronic file and serve system on June 13, 2007.


                                                              */s/ Johnny M. Howard*
                                                              Johnny M. Howard