UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVIS & ASSOCIATES, INC.            )<br>                                                          )<br>         Plaintiff                              )<br>                                                          )<br>         v.                                         )         Civil 1:06-cv-00972-GK<br>                                                          )<br>DISTRICT OF COLUMBIA, et al.      )<br>                                                          )<br>         Defendants                        )  | |

**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT
AND/OR FOR RECONSIDERATION**

Pursuant to FCRP 59(e), plaintiff Davis & Associates, Inc., by and through counsel moves the Court to alter or amend and/or reconsider the Memorandum Opinion and Order entered on August 16, 2007. The legal analysis adopted by the Court is flawed. The contracts that form the underpinnings for the unlawful discrimination claims asserted in the complaint were not void *ab initio*. The mechanisms for appropriations for the aforementioned contracts were embodied in the appropriations covered in Title 42., The Public Health And Welfare Chapter 7. Social Security Act Title XIX. Grants To States For Medical Assistance Programs 42 USC § 1396 and TITLE 4. Public Care Systems Chapter 2. Public Assistance, Subchapter XIX., Appropriations, D.C. Code § 4-219.01 (2007). Secondly, the contract between Health Management Systems ("HMS") and the District of Columbia Public Schools ("DCPS") was indeed signed by a District official as evidenced by the Defendants Praecipe Regarding Existence of Signed Contract. (Document 49)

                                                Respectfully submitted,
                                                HOUSTON & HOWARD

2

       */s/ Johnny M. Howard*
      Johnny M. Howard, #264218
      1001 Connecticut Avenue, NW
      Suite 402
      Washington, DC  20036
      (202) 628-7058
      Email:  houhow@erols.com

## **CERTIFICATE OF SERVICE**

  This case was filed under the United States District Court for the District of Columbia's ECF electronic file and serve system.  This Motion to Alter or Amend and/or to Reconsider has been filed with such Court and served on all parties herein electronically through such ECF electronic file and serve system on September 4, 2007.


       */s/ Johnny M. Howard*
       Johnny M. Howard

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVIS & ASSOCIATES, INC. ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil 1:06-cv-00972-GK |
| ) | |
| DISTRICT OF COLUMBIA, et al. ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR RECONSIDERATION</u>**

**<u>Preliminary Statement</u>**

The August 16, 2007 Memorandum Opinion of the Court mirrors the substance and tenor of arguments advanced by the District defendants in their Motion to Dismiss. Much of the reasoning relied on by the Court, however, does not comprehend a critical understanding of how the Medicaid reimbursement program works, nor how a revenue maximization contractor is to be compensated. The opinion of the Court must embrace a more penetrating analysis of the facts and law. The decision of the Court must also comprehend the impracticability of the District government being able to comply with federal law if the arguments advanced by the District are to be followed in every instance of a contingency fee contract between a private contractor and the District.

It is troubling to think that a minority contractor who engages in a business relationship with the District of Columbia government can anticipate that once the District has reaped the benefit of the contractor's services to the tune of millions of dollars, the District will advance the argument that the contract violates the Anti-Deficiency Act and not make the same argument when a majority contractor is similarly engaged. Not only is there evidence of unlawful

1

discrimination in the manner in which the compensation for services was handled, but the arguments advanced by the Office of the Attorney General seem to embrace the same philosophy. In this memorandum, a comparison will be made between the contractual relationship of Maximus and the District of Columbia and Davis & Associates, Inc. and the District of Columbia. After the contract between Maximus, inc and the District of Columbia for revenue maximization services was signed, not once was Maximus greeted with an argument that its contract was void because of the Anti-Deficiency Act. Maximus was paid without Fail and without resistance.

The arguments below should clarify for the Court and defense counsel how the law and facts demonstrate that the Court's Memorandum Opinion should be vacated and plaintiff's lawsuit reinstated. After all, a motion to dismiss for failure to state a claim upon which relief can granted is generally viewed with disfavor and rarely granted. *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985).

I.

Federal Medicaid law requires participating States to "ascertain the legal liability of third parties * * to pay for [an individual benefits recipient's] care and services available under the State's plan. 42 U.S.C. §1396(a)(25)(A) and (B). See generally *Ark. HHS v. Ahlborn*, 547 U.S. 268; 126 S. Ct. 1752; 164 L. Ed. 2d 459 (2006). The District of Columbia in accordance with the federal Statute has developed such a plan. See D.C. Code §4-205(a) (2007) The code authorizes the District to recover money that it has paid to health care providers for persons who may not have been Medicaid eligible for government assistance. The contracts between HMS, Maximus and Davis with the District fall in this category of recovery contracts.

The HHC/ PBC contract with Davis & Associates involves the recovery of federal Medicaid funds that are possibly due because a well-defined cost claim had not been submitted to increase the District's recovered share of funds it expended for Medicaid eligible persons.

Both revenue maximization contracts[1] involved in this case contain provisions for the recovery of money for periods of time that the District of Columbia has already spent money from allocated appropriations for the payment of services already rendered to the District's Medicaid eligible citizenry or persons who claimed to have been Medicaid eligible. In the HMS contract dated January 26, 1998, the recovery period is for the year 1997/1998. In the HHC/PBC D. C. General Hospital contract, the recovery period is for fiscal year 1999. The work of a revenue maximization contractor, among other things, is to identify for recovery sums of the money that were previously appropriated and spent during a prior period.[2]

Plaintiff Davis & Associates does dispute the interpretation given to case authority cited in section III(a) of the Court's opinion. The Court and Defendants seek to extend the breadth of the Anti-Deficiency Act well beyond its prescribed meaning by attributing more to the holding in *Williams v. D.C.,* 902 A.2d 91 (D.C. 2006)[3] than the Court of Appeals has written. Under

---

[1] See *LaShawn A. v. Kelly*, 887 F. Supp. 297, 300 (D.D.C. 1995) in which Chief Judge Hogan recognized the validity of a federal revenue maximization contractor's contract in ruling on a motion for contempt for the District's failure to comply with an order compelling District of Columbia defendants to implement reforms to alleviate violations of federal and District of Columbia law.

[2] Under the HMS Contract, "[t]he Contractor shall undertake the reimbursement and recovery program to recover the expenditures from liable third parties for and on behalf of the D. C. Public Schools. The goal is to identify health insurance resources available to the D.C. Public Schools Medicaid Assistance recipients, to file claims in behalf of D.C. Public Schools seeking reimbursement and to receive monies on claims from third parties and deposit with Controller, D.C. Public Schools."

Under the PBC contract,"[t]he Contractor is * * * authorized to provide revenue recovery and maximization services for retroactive periods to D.C. health and Hospitals Public Benefit Corporation involving the D.C. general Hospital and other entities as may have been added during the period covered by this contract. The retroactive period covered under this contract shall include recoveries for all categories of services and claims. Such services and claims referred to herein shall include but not be limited to any and all services and claims (consultation, reviews, development, revisions, disproportionate share and/or representations) that involve the Contractor in any form."

[3] Compare Matter of: Reconsideration of B-214172, July 10, 1984, February 20, 1985; 64 Comp.Gen. 282. The GAO ruled that appropriation obligation expenditures by the Small Business Administration (SBA) that exceeded statutory ceilings in the authorizing legislation on the amount of direct loans that SBA could make in two

3

*Williams*, there was no flat prohibition under District law against a contingent fee contract. (See page 3 of Defendant's Reply Brief.) The aforementioned language does not appear in the *Williams* opinion and does not appear in the text of the Anti-Deficiency Act. Moreover, plaintiff could find neither federal nor local case authority in which such language was used.

The Court and defendants have interpreted the underlying contracts of which plaintiff is involved as requiring the payment of compensation to the contractor either from an appropriation in the year the contract was signed or from appropriations from prospective years in which money is collected from the Medicaid program. This is an incorrect interpretation.

Contrary to the Court's countervailing ruling, contingency-fee contracts are recognized as a suitable vehicle for obtaining the services of revenue maximization contractors without the attendant outlay associated with other types of government contracts. In the area of Medicaid Financing, the United States Government Accountability Office (GAO) has recognized the use of contingency-fee consultants by states to maximize federal reimbursements. In a report from the Government Accountability Office to the Chairman of the Committee on Finance, United States Senate, June 2005, GAO-05-748, the GAO "acknowledge[d] that use of contingency-fee contracts is allowed under law and that states can employ consultants for a number of valid Medicaid purposes, * * *. Contingency-fee consultants are particularly attractive to budget-constrained states because the states do not need to pay them up front, agreeing to pay instead a percentage of any additional amounts saved or collected. Consultants may also cost states less than developing in-house expertise, as states can hire them for the short term or specific projects rather than commit full-time state personnel." (Page 9 of GAO Report 05-748).

---

of its direct loan programs would violate the Anti-Deficiency Act since such expenditures would exceed available appropriations as that term is used in the Act. However, since a loan guarantee is only a contingent liability that does not require an actual obligation or expenditure of funds, the Small Business Administration would not violate the Anti – Deficiency Act if it exceeded the statutory ceiling on the amount of loans it could guarantee in a particular program in the 1984 fiscal year.

If states are able to increase their revenue through the use of contingency fee contracts, it is wholly untenable to think that the Anti-Deficiency Act would serve as a bar to preclude singularly the District from engaging in contingency fee contracts for the revenue maximization purposes. Such an interpretation would have a stifling effect on the District's ability to be competitive in securing the best for its citizenry.

The Medicaid program is a federal/state r*eimbursement program* (emphasis added)*.* See generally *Rhode Island Hospital v Califano,* 447 F Supp 703 (DC RI 1978,), aff'd 585 F.2d 1153 (CA1 RI 1978). The provider of services can only qualify for the receipt of payments from the Medicaid Program after the provider has paid for services that have been rendered. The following example best illustrates what qualified a provider to receive payments from the Medicaid program:

> In fiscal year 1999, the District of Columbia General Hospital provided services to Medicaid eligible clients, valued at twenty million dollars ($20,000,000.00). The services were paid for by D.C. General Hospital through its fiscal year 1999 budget appropriations (i.e. funds allocated for D.C. General Hospital to operate/provide services). In fiscal year 2000, D.C. General Hospital submitted a retroactive Cost Claim report to the Federal/State Medicaid Program office for reimbursement of costs expended for eligible services provided (and already paid for) in fiscal year 1999.
>
> Upon approval of the Medicaid Cost Claim, the Federal/State Medicaid Program reimburses the District of Columbia General Hospital fifteen million ($15,000,000.00) dollars for the services provided Medicaid clients in fiscal year 1999. Assuming a revenue maximization contractor was responsible for producing the fifteen million dollar ($15,000,000.00) cost claim, and D.C. General Hospital received $15,000,000.00, then under a 10% contingency fee contract, the contractor would be entitled to receive $1.5 million dollars from the $15,000,000.00 collected. Under the contract, once the money is received by D. C. General Hospital, the Chief Financial Officer is required to certify the amount of money that is received from the Federal/State Medicaid office so that the contractor's compensation can be fixed.

In this example, the HHC/PBC District of Columbia General Hospital had at no time violated the Anti-Deficiency Act or threatened to exceed any appropriation. The officials at the

5

HHC/PBC District of Columbia General Hospital neither authorized nor obligated any appropriation to pay any contract amount in excess of the amount of money available. The District of Columbia Government is required by law to balance its budget at the end of each fiscal year. Therefore, the D.C. General Hospital budget was balanced at the end of FY 99. The projected fifteen million dollar ($15,000,000.00) "Medicaid Reimbursement" received by the HHC/PBC District of Columbia General Hospital in FY 2000 required D.C. General Hospital merely to restate its financial records to reflect a $15,000,000.00 surplus for FY 99, not a deficit.

The HHC/PBC enabling legislation, unlike other District of Columbia Government Departments and Agencies, states that any funds remaining in HHC/PBC accounts at the end of the fiscal year, remain with the HHC/PBC and do not transfer to the District of Columbia General Fund (Treasury).

If the above reasoning is followed over a period of ten years, the following would occur: The Retroactive Claim submitted and paid for each year is $150,000,000.00

| FY92 | FY93 | FY94 | FY95 | FY96 | FY97 | FY98 | FY99 | FY2000 | FY2001 | TOTAL |
|------|------|------|------|------|------|------|------|--------|--------|-------|
| 15 mil | 15 mil | 15 mil | 15 mil | 15 mil | 15 mil | 15 mil | 15 mil | 15 mil | 15 mil | 150 mil |

As illustrated in the table above, if the HHC/PBC District of Columbia General Hospital submitted a "Medicaid/Medicare Cost Claim in FY2002, Retroactive to FY92 in the amount of fifteen million dollars per year, and if this "Retroactive Cost Claim was approved, D.C. General Hospital would restate its financials (by fiscal year) to reflect a one hundred fifty million ($150,000,000.00) dollar **surplus**. (emphasis added)

The Court should be cautious to conclude that the District can avoid its obligations to pay its contractors under validly signed contracts because of the District's belated argument that the

6

contracts allegedly violate the Anti-Deficiency Act.  This is a shameful and unscrupulous way for a government to do business.  It is more shameful for the District to interpose such an argument against a minority contractor and not the majority contractors.  Judge Nebeker of the District of Columbia Court of Appeals in *Williams v. District of Columbia, 902 A.2d 91* (D.C. 2006) was correct: "[T[he behavior of the District of Columbia officials in 1985 in the matter was highly unprofessional and disgraceful.  Indeed, in my judgment, that conduct was official action 'which would adversely affect the confidence of the public in the integrity of the District government.'"

    Another rationale that helps to explain the plaintiff's position that the subject contracts did not violate the Anti-Deficiency Act is to carefully review of the contract between Maximus, Inc. and the District of Columbia.  The contract between Maximus, Inc. and the District of Columbia, attached as Exhibit "E", demonstrates that the Contract between Maximus, Inc. and the Office of the Chief Financial Officer, Maximus was tasked to render two types of services: consulting services with contemporaneous compensation and revenue maximization services.  Under the revenue maximization services section of the contract, Maximus is to be paid a contingency fee of 10% of the net revenue received from the Federal Government.  See ¶5.2, Exhibit "E".  In Section 5.7, Maximus, Inc. was to provide general consulting services on a fix unit price basis.  The payment for the general consulting services was capped at 30% of the contingent fee recovered.

    The District points out that the Maximus contract did not violate the Anti-Deficiency Act, but fails to specify the reason why.  Defendants are being deceptive by not explaining the specific amount of money that was appropriated and when such funds were appropriated for the Maximus contingency fee contract.

While the District has argued in these proceedings that Maximus cured a potential Anti-Deficiency Act violation by rewording its contract, the District has pointed to no specific language in the contract that make the Maximus contract different from the Davis contracts. To reiterate, the District has referenced no appropriation either when Maximus signed the contract or when Maximus received compensation. Indeed, if there was a contingency fee contract that was required to be paid from prospective funds, it would be nearly impossible to quantify in an appropriation how much money would be expected to be recovered. If the City Council of the District of Columbia for example, were required to have appropriated $150,000,000.00 in the event that a contractor could recover such funds from the Medicaid program in a given fiscal year, the budgetary process of the District would be a farce. Under no circumstance could or should the council determine how much a private contractor might be able to recover under a contingency fee contract designed to recover retroactively appropriated funds. If the Government could pinpoint the amount of the recovery with such precision, then in all likelihood, the Government would not need the assistance of revenue maximization contractors to identify and recover Medicaid funds.

Accordingly, the Court must not view the Anti-Deficiency Act as an escape route that the District of Columbia Government can invoke when it desires to avoid paying a private contractor for services rendered to the Government. For certain, in order to render services to the government, the contractor expended significant resources to enhance the public fisc. To now seek to void the responsibility for paying for services, after the District has reaped the benefit of millions and millions of dollars is criminal and certainly evidences bad faith on the part of high-level District officials. The relationship between Maximus and the District has been tarnished by the fine assessed against Maximus by the United States Department of Justice.

II.

Davis & Associates Inc. has in its possession approximately 500,000 medical, health and health related records and Medicaid claims which contain personally identifying information about DCPS Special Education students and their parents and/or guardians, treatments, providers and other Federally protected information and data.

Davis & Associates Inc. is a subcontractor to Health Management Systems Inc. Both corporations (until released by the District and Federal Governments) are bound by the regulations attached as Exhibit F. Additionally, as long as there is an investigation, neither contractor is relieved of responsibility under the DCPS contract. See Exhibit G.

III.

The Court ruled that the Contract Appeals Board has authority over the Office of the Chief Financial Officer and thus has jurisdiction to entertain the issues presented by this lawsuit. While the Contract Appeals Board does have some control over issues involving the Chief Financial Officer, its jurisdiction is not without limitations. The Contract Appeals Board has no jurisdiction over the issues presented in the instant case,.

An action under 42 U.S.C. §1981 cannot be brought in the Contract Appeals Board. Exclusive jurisdiction over a claim brought under 42 U.S.C. §1981 rests in the federal courts.

Regarding the claim brought under 42 U.S.C. §1983, the federal court is the only court that has jurisdiction. There is no adequate state law remedy of which plaintiff can pursue its claims. The Contract Appeals Board cannot entertain the claims presented herein.

The underlying contracts in this litigation involve the District of Columbia Public Schools and the former Health and Hospitals Benefit Corporation. The jurisdiction of the Contract Appeals Board over agencies of the District government was defined principally by the

coverage in D.C. Code §§ 2-301.04 and 2-303.20.  When the Health and Hospitals Public Benefit Corporation (PBC) existed, the Contract Appeals Board did not have jurisdiction over issues involving the PBC[4].  In the case cited and relied on by the Court, *Abadie v. District of Columbia Court of* Appeals, 843 A.2d 738 (D.C. 2004), the exclusion of the PBC was highlighted at page 744.

With respect to the District of Columbia Public Schools, D.C. Code §2-301.04(d)(3) effectuates an exclusion from the jurisdiction of the Contract Appeals Board.

Under Public Law 104(8), the Contract Appeals Board cannot compel the Chief Financial Officer to certify the receipt of funds from the Federal Medicaid program.  The Control Board approved the contracts between the District and HMS and the one with the PBC.

Respectfully submitted,<br>
HOUSTON & HOWARD<br>
<br>
<br>
    */s/ Johnny M. Howard*<br>
Johnny M. Howard, #264218<br>
1001 Connecticut Avenue, NW<br>
Suite 402<br>
Washington, DC  20036<br>
(202) 628-7058<br>
Email:  houhow@erols.com

### CERTIFICATE OF SERVICE

This case was filed under the United States District Court for the District of Columbia's ECF electronic file and serve system.  This motion to reconsider has been filed with such Court

---

[4] According to subsection (b) §2-309.03, jurisdiction of the Contract Appeals Board shall be consistent with the coverage of this chapter as defined in §§2-301.04 and 2-303.20, except that the Board shall have the authority to enter into fee-for-service agreements with agencies, departments, boards, commissions, and instrumentalities of the District or other public entities that are not subject to the CAB's jurisdiction.  Section 2-303.20(k), (repealed as of August 3, 2001, D.C. Law 14-18, §9(d), 48 DCR 4047 after the Health and Hospitals Benefit Corporation was dissolved), includes the Health and Hospitals Benefit Corporation as an agency exempt from the scope of the Act.

and served on all parties herein electronically through such ECF electronic file and serve system on August 28, 2007.

                                                            */s/ Johnny M. Howard*
                                                             Johnny M. Howard