**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVIS & ASSOCIATES, INC., : <br> : <br> : <br> v. : <br> : <br> : <br> THE DISTRICT OF COLUMBIA, et al., : <br> : <br> _____ : | Civil No. 6CV 00972 (GK) <br> Case Closed <br> August 29, 2007 |

<u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S RULE 59 (e) MOTION</u>

I. <u>Factual and Procedural Background</u>

Defendants District of Columbia, Adrian Fenty (substituted for former Mayor Anthony Williams), Natwar M. Ghandi and Valerie Holt file herewith their memorandum of points and authorities in opposition to Plaintiff's Fed. R. Civ. P. 59 (e) motion.

On August 16, 2007, this Court dismissed plaintiff's lawsuit finding that the two contracts in question violated the Anti-Deficiency Act and finding further that even were they not dismissable, plaintiff had an adequate state law remedy at the Contract Appeals Board.

Plaintiff ("Davis") filed its Rule 59(e) motion on September 4, 2007, and re-filed the same motion de-nominated only as a "motion for reconsideration" presumably under Fed. Rule 60(b) the next day without differentiating the section upon which it sought to rely.[1] Davis now argues that the Court must engage in a more penetrating analysis of the facts and the law and that contingent fee contracts should be enforceable in certain situations including its own situation since a comparable contractor—Maximus, Inc. – was not greeted with an argument that its

---

[1] Plaintiff's lack of reference to Fed. Rule 60(b) or designation as to which subsection of Fed. R. Civ. P 60(b) it seeks to rely is fatal to reasoned consideration by the Court of the motion for reconsideration since different standards apply to different subsections. See generally 11 Wright, Miller & Kane, Federal Practice & Procedure § 2857, 2858, 2859.

contract was non-enforceable. Plaintiff argues in part I of its motion that contingent fee contracts are appropriate vehicles for state Medicaid administrators, that Medicaid is a federal re-imbursement program, and that the Anti-Deficiency Act must not be an escape route for District contractual liability. In Part II, offering no authority except a reference to certain unspecified regulations Davis argues that the pendency of an investigation involving DCPS bars the DCPS from being relieved of its liability. Finally, in Part III of the motion, again without reference to a single authority, Davis argues that the Contract Appeals Board has no jurisdiction over §1981 lawsuits and that only the federal Courts have jurisdiction over the §1983 count.

All of these arguments have been offered by Davis before in defense of the Defendants' motion to dismiss. Accordingly, Defendants initially argue that Davis has failed to make the showing of extraordinary circumstances required under Rule 59 (e) to grant the motion. Secondly, in response to the arguments set forth in Part I, they contend that the federal Anti-Deficiency laws apply to the District's Medicaid program with particular force and that proposed expenditures in excess of annual appropriations have been deemed a violation of that Act by the Comptroller General. Further, they argue that Maximus may have been paid but with an explicit cure of any potential Anti-Deficiency Act violation. Third, in response to the arguments in part II, defendants note that nothing in *Williams v. District of Columbia*, or the Anti-Deficiency Act suggests that relief from contractual liability for a violation of the Act is to be abrogated by virtue of a pending investigation. Finally, in response to the arguments in part III, the Defendants re-iterate their initial argument in their motion to dismiss that the Plaintiff's matter is inherently a contractual matter and that the Court's finding that there is an adequate remedy should be sustained.

II. Argument

A. The 59 (e) Standard Precludes Relief

As this Court ruled in *United States of America v. Phillip Morris, Inc.,* 130 F. Supp. 2d 96, 100, in denying the government's motion for reconsideration on the Court's ruling of lack of a conspiracy:

> To prevail on a motion for reconsideration, it is the moving party's burden to show "new facts or clear errors of law which compel the court to change its prior position." *National Ctr. for Mfg. Sciences v. Department of Defense*, 339 U.S. App. D.C. 294, 199 F. 3d 507, 511 (D.C. Cir. 2000) (internal citation omitted). A motion for reconsideration will not be granted if a party is simply attempting to renew legal arguments that have already been rejected by the Court. See *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995); *Assassination Archives and Research Ctr. v. United States Dep't of Justice,* 828 F. Supp. 100, 101-102 (D.D.C. 1993). In general, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." 11 Wright et al., Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995).

Applying this standard to Plaintiff's arguments should result in a ruling denying the motion. Plaintiff's arguments have been raised through the opposition to the motion to dismiss and in plaintiff's submissions regarding discovery disputes which were before the Court. The arguments have been heard before and cannot serve, as a matter of law, as the basis for granting the motion for reconsideration.

B. Federal Anti-Deficiency Law Applies to the District's Medicaid Program. In Addition, the Maximus Contract Was Pre-Funded.

On August 1, 1995, the Comptroller General issued the *Matter of Garland Pinkston, Jr., Esq*. B-262069, 1995 U.S. Comp. Gen. Lexis 511, in which it held that District officials could not make expenditures in excess of appropriated amounts for its AFDC and Medicaid programs. The District had attempted to argue that the expenditures were mandatory and otherwise required by law, attempting to rely upon an exception to the Anti-Deficiency Act. Noting that

participation in the AFDC and Medicaid programs was voluntary by any state or the District of Columbia, the Comptroller General found also that there was no specific statutory authority for the District to make expenditures in excess of its obligated amount and no additional authority to find sufficient funds to pay such obligations. Id. at 5-7. The Comptroller General advised the District that it must comply with limits, even when obligations were imposed by Court order, and that the District's solution, like any other state faced with a similar problem, was to cancel the programs or provide the money through appropriation to pay for such expenditures. Id. at 10-11. As applied to this case, the Comptroller General's analysis makes clear that the District may not hope to have anything but adequate appropriations initially and that hoping for leniency because the expenditures were court ordered would not be sufficient absent explicit statutory authorization to expend such funds in derogation of an annual appropriation. Thus, Plaintiff's arguments that the Medicaid program is a re-imbursement program (and thus inferentially capable of funding Plaintiff's contract) appear ill founded. The core of the Medicaid program is the adequacy of the state appropriation. No appropriation was found or existed for the Davis contract.

Importantly, funding was found for the Maximus contract as the attached Exhibit 1 indicates. D.C. Office of Inspector General ("OIG") Investigation Report 99-0530 (U) issued January 4, 2000, fundamentally found that there was no untoward delay in awarding Maximus a contract for recovering Medicaid money and that any delay in recovering funds was due in large part to the need to coordinate among several agencies in the drafting and preparation of the contract. Central to the OIG analysis was a finding that the Financial Control Board had initially rejected the contract due to an Anti-Deficiency Act violations. The violation had to be cured by making sure that "funds still had to be obligated in advance of the award."

4

In short, the District operates under unique funding constraints for its contingent fee contracts that were observed with regard to Maximus.

C. <u>The Existence of an Investigation Does Not Vitiate the Ant-Deficiency Act.</u>

Citing no specific regulatory authority, Plaintiff argues that the existence of an investigation regarding the DCPS contract bars the District from being relieved from liability under such a contract under the Anti-Deficiency Act.  Importantly, while neither the core provisions of the Act 31 U.S.C. §1341(a) (1) (A), (B) nor *Williams v. District of Columbia*, 902 A. 2d 91, (D.C. 2006) recently applying the Act speak to the existence of an investigation delaying or blocking the application of the Act,   *Williams* affirms in broad language the central purpose of the Act—to avoid unauthorized actions of government officials—even against claims of fraud.  Consequently, any investigation that was on-going and might involve a core question of fraud by the government would not cure the invalidity of the contract.  The overriding purpose of preserving the public fisc is paramount as against the heart felt competing claim by a contractor that it was mislead.

> A government agent cannot validate a contract merely by averring that she is authorized to enter it, if no such authority exists; the rule applies with equal force even if "the agent himself may have been unaware of the limitations upon his authority." *Merrill, supra*, 332 U.S. at 384. To permit otherwise would eviscerate the very purpose of the Act. *Cessna Aircraft Co. v. Dalton,* 126 F. 3d 1442, 1448-49 (Fed. Cir. 1997) (Anti-Deficiency Act intended to halt practice by which "[government] officials were obligating funds before they were appropriated by Congress, and then making deficiency requests for appropriations that Congress had little choice in deciding because government agencies had basically committed the United States to make good on its promises"); *Lopez v. Johns Manville,* 649 F. Supp. 149, 158 (D. Wash. 1986), aff'd by *Lopez v. A.C.&S., Inc.*, 858 F.2d 712 (Fed. Cir. 1988) ("purpose of the statute is to prohibit anyone from obligating the Government in excess of the dollars appropriated by Congress"). Therefore, as a matter of law, it was not possible for CUIC to prove the reasonable reliance necessary to prevail on a claim of fraud. *Shama Rest. Corp., supra*, 613 A.2d at 923.

5

Id. at. 95.   Thus, as a matter of law, the existence of an investigation will not bar the application of the Act.

### III. Conclusion

For the foregoing reasons the Defendants respectfully submit that the motion for reconsideration be denied and that Court's ruling of August 16, 2007, be sustained.

Dated: October 1, 2007          Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


       /S/ Kimberly M. Johnson
KIMBERLY M. JOHNSON   D.C. Bar No. 435163
Chief, General Litigation Section 1


       /s/ Thomas J. Foltz
THOMAS J. FOLTZ
Assistant Attorney General
D.C. Bar No. 462858
441 Fourth Street, N.W.
Washington, D.C. 20001
(202)  724-6652
(202) 727-0431 (fax)
E mail: Thomas.foltz@dc.gov


### CERTIFICATE OF SERVICE

This case has been designated as part of the U.S. District Court for the District of Columbia's electronic ECF file and serve system.  This filing has been filed with such Court and

served on all parties herein electronically through such ECF electronic file and serve system on October 1, 2007.

_____*/s/ Thomas J. Foltz*_____
Thomas J. Foltz, Esq.

Davis & Associate 06 972 DC Opposition to Davis 59(e) E sign 100107.1