FINAL

REPORT OF INVESTIGATION
99-0530(U)

INVESTIGATION OF WHETHER A DELAY IN AWARDING A CONTRACT RESULTED IN THE LOSS OF FEDERAL FUNDS

**TITLE:** Office of the Chief Financial Officer; **UNSUBSTANTIATED.**

**LOCATION OF OCCURRENCE:** 441 4th Street, N.W., Washington, D.C.

**INVESTIGATED BY:** Special Agent Donald L. Price.

**STATUTE VIOLATED:** None.

**ACTION TAKEN:** None.

## INVESTIGATIVE SYNOPSIS

**1.0   PREDICATION:**

On July 7, 1999, *The Washington Post* reported that the District of Columbia (D.C.) recently lost the opportunity to recover tens of millions of dollars from the Federal Government because of a lengthy delay in hiring a firm that specializes in recovering funds owed to state and local governments. Reportedly, it took the District more than 15 months to hire Maximus, Incorporated (MAXIMUS) to recover Federal money available to D.C. for a range of programs.

Based on the information received, the Office of the Inspector General accepted the following issue for investigation:

- Whether the alleged delay in awarding a contract for recovering money caused the District to lose tens of millions of Federal funds that could have been recovered?

**2.0   SUMMARY OF INVESTIGATIVE FINDINGS:**

The Federal Government allocates grants to states and D.C. for various programs such as medicaid, education, housing and recreation. Identifying the availability of funds requires highly qualified accounting technicians with a thorough knowledge of grant funding. For this reason, many states have hired contractors who specialize in recovering

monetary entitlements authorized under Federal regulations. Unclaimed money is returned to the Federal coffer. For this reason, D.C. entered into a contract with MAXIMUS to recover Federal funds on behalf of D.C. There was no set amount for the contract, however, a top end estimate according to Paul WOOTEN, Office of the Chief Financial Officer (OCFO), is $200 million dollars, which is based on MAXIMUS receiving a ten percent commission on all funds recovered.

The investigation disclosed that the revenue recovery contracting process began in July 1997. The proponent of the contract, Office of Grants Management and Development (OGMD), did not have the expertise to write a Statement of Work (SOW) for such a large contract. Six months later, in January 1998, Sandra MANNING, former Director of OGMD, asked the University of the District of Columbia (UDC), which has contracting authority, to write and negotiate the contract. MANNING has since left government service and no one presently at OGMD can explain why she asked UDC instead of the Office of Contracting and Procurement to process the contract. UDC accepted the responsibility for awarding the contract, but asked the OCFO for technical assistance. In June 1998, the OCFO, which had served in an advisory role for the contract since July 1997, took total control of the contract due to the complex issues and the number of D.C. agencies involved as potential customers. The OCFO maintained a chronology of all pre-award actions performed on the contract right up to the award date.

During the pre-award phase, letters were sent to several states to assess prior job performance by MAXIMUS. MAXIMUS was selected as the contractor because the company had an outstanding job performance reputation doing revenue recovery for other states. After the selection of MAXIMUS, the contract was reviewed by UDC, the City Council and the Financial Control Board (FCB) prior to the actual award. The City Council would not approve the contract until they verified that a Maryland company named MAXIMA, which had filed for bankruptcy, was not affiliated with MAXIMUS. This process took about four weeks in the summer of 1998. The FCB received the contract on September 18, 1998, but would not approve it because of concerns about a possible Anti-Deficiency Act violation. The FCB requested additional documentation and returned the contract to the OCFO on December 28, 1998, to have funds obligated. Even though this was a progress payment contract based on commission, funds still had to be obligated in advance of the award. Funds were obligated and the contract was returned to the FCB on January 21, 1999. The FCB then approved and awarded the contract to MAXIMUS on February 4, 1999. The OCFO awarded the contract to MAXIMUS on March 1, 1999; some 19 months after the contracting process began.

Shirlin TAYLOR, Director, OGMD, advised that Federal funds must be claimed within two years or the funds are lost. MAXIMUS and the OCFO have stated that there is no way to determine if the District lost any recoverable funds because there are many D.C. agencies entitled to Federal funds and this contract is the first of its kind. The contract was awarded to MAXIMUS in March 1999 and by July 1999, MAXIMUS had identified $23 million dollars that could possibly be recovered.

## 3.0 CONCLUSIONS:

The investigation revealed that the revenue recovery contracting process took one year and seven months because five D.C. agencies - OGMD, UDC, City Council, OCFO and the FCB, were involved in drafting, reviewing, approving and funding the contract at some point. There is no evidence that supports *The Washington Post* claim that D.C. lost tens of millions of Federal funds due to a delay in awarding the contract.

## 4.0 RECOMMENDATIONS:

It is recommended that this investigation be **CLOSED** with no recommendations.

Report Approved by:

David M. Bowie
Assistant Inspector General
 for Investigations

DIG Initials

Date of Approval: 1/14/2000