UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVIS & ASSOCIATES, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil 1:06-cv-00972-GK |
| | ) | |
| DISTRICT OF COLUMBIA, et al. | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION TO ALTER OR AMEND JUDGMENT
AND/OR FOR RECONSIDERATION**

Plaintiff Davis & Associates, Inc. by and through counsel submits its reply to the

Defendants' Opposition to Motion to Alter or Amend Judgment and/or for

Reconsideration.

I.
**The 42 U.S.C. §1981 claim**

While the complaint focuses on the two signed documents which plaintiff

continues to regard as valid contracts, "*[s]ection 1981* offers relief when racial

discrimination blocks the creation of a contractual relationship, as well as when racial

discrimination impairs an existing contractual relationship, so long as the plaintiff has or

would have rights under the existing or proposed contractual relationship." *Domino's

Pizza v. McDonald,* 546 U.S. 470, 483, 126 S. Ct. 1246, 1250, 163 L. Ed. 2d 1069, 1076

(2006)  The Court focuses on the validity of the contracts only and neglects to consider

the "prospective" contractual relationship between the District and Davis.  The

documents signed by the respective parties (which plaintiff maintains are valid contracts)

that prompted Davis to perform work for the District through the expenditure of human

and financial resources and which prompted the District of Columbia to deliver over a million records[1] protected by the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 (HIPAA) to Davis & Associates, Inc., gives plaintiff substantial interest to launch a claim under §1981. The Court must be mindful that the holding in *Domino's Pizza*, which interprets the meaning of §1981, does not stand for the proposition that relief under §1981 is dependent on the existence of a valid contract.

Therefore, even if the Court's conclusion is accurate that the Davis contracts were void *ab initio*, Davis can support its right to sue under 42 U.S.C. §1981 by relying on the prospective contractual relationship under which Davis provided meaningful services to the District for which no compensation or *quantum meruit* payments have been received. Significantly, the revelation during discovery following the filing of the complaint that the District "cured" the alleged Anti-Deficiency Act problems for Maximus and indeed paid Maximus for the same or similar type of revenue maximization recovery services, is prima facie evidence of unlawful racial animus against Davis & Associates, Inc. in the creation of a contractual relationship. Had the same alleged "cure" been initiated for the Davis contracts or had plaintiff been paid, as was Maximus, for the work that was performed, plaintiff would have been able to enjoy the benefits of the proposed contractual relationship as did Maximus and would have received the benefits of its labor from generating the various cost reports and other submissions which the District requested.

---

[1]     The records maintained by Davis & Associates, Inc. are records that belong to Davis & Associates, Inc. Davis & Associates, Inc. prepared a form for District personnel to enter data and a copy of that form was returned to Davis & Associates, Inc. Upon information and belief, the District of Columbia maintains a completed form for its records.

## II.
## Anti-Deficiency Act

The District defendants offer arguments that are illogical and which seek to confuse the Court rather than clarify the outstanding issues.  The District's argument on page 2 of the opposition that the proposed expenditures in excess of the annual appropriations have been deemed a violation of the Anti-Deficiency Act by the Comptroller General and the District's reliance on the *Matter of Garland Pinkston, Jr.,* B-262069, point the Court in a direction that has no bearing on the issues in this case.

The *Matter of Garland Pinkston, Jr.* involves the District's prospective request for advice on whether the District could incur obligations and make expenditures that exceeded the amount of funds appropriated in the District's budget under the category entitled "Human Support Services."  The opinion does not involve the recovery of funds previously appropriated and previously spent in the delivery of services.  In the *Matter of Garland Pinkston, Jr.,* the District desired to expend more money than had been appropriated for Aid to Families with Dependent Children (AFDC) and Medicaid programs.  In articulating how the District could use more funds toward service delivery than had been appropriated for AFDC and Medicaid programs, the Comptroller General emphasized three (3) options (at page 5 of the opinion): (1) "reprogram within its Human Support Services appropriation in order to use the appropriation [for] Medicaid and AFDC rather than for other purposes"; (2) "seek legislation transferring amounts appropriated for other expense categories to the Human Support Services category"; and (3) "seek legislation increasing the Human Support Services appropriation."

The underlying issues in the instant case involve contracts for the recovery of funds previously appropriated and previously spent.  This is not a situation where the

revenue maximization contractors seek compensation by obligating future appropriations designed for the delivery of Medicare and Medicaid related services to eligible citizens of the District of Columbia for a new fiscal year. A retroactive contingency fee contract obligates previously appropriated funds if it is determined by the federal and state Medicaid program that funds were owed, but not paid to a Medicaid provider of record. See 42 CFR §§433, 447, and 457 and *42 U.S.C. 1396b, Sec. 1903*. Stated differently, the revenue maximization contractors seek compensation from the reprogramming of recovered money that has been previously appropriated and spent in a previous year. Both the HHC/PBC District of Columbia General Hospital and the Government of the District of Columbia had and continue to have the authority to obligate retroactively appropriated funds (should such funds become available), which is a practice condoned by the Federal Centers for Medicare and Medicaid Programs[2]. A prime example of how the reprogramming works is the third party liability program. The Federal Centers for Medicare and Medicaid Services[3] (CMS), Department of Health and Human Services require states to recover any funds available from third parties (after Medicare/Medicaid payments have been made) to reimburse the State/Federal Medicare/Medicaid Accounts. Once reimbursements are collected by what is termed a "third party liability contractor, the Federal Centers for Medicare and Medicaid Services allow the contractor to deduct its fees and costs from the recovered reimbursed funds. See 42 C.F.R. §433 et seq.; D.C. Code §4-601 et seq.

---

[2] In the decision, *Matter of Garland Pinkston, Jr.*, the Comptroller General confirms that a permissible way of using more funds in excess of those that were included in the budget and not violating the Anti-Deficiency Act is to "reprogram within [an] appropriation". In the instant case, plaintiff is seeking to do the same: receive a share of reprogrammed funds.

[3] The Centers for Medicare and Medicaid Services (CMS) was formerly known as the Health Care Financing Administration or HCFA. 66 Fed. Reg. 35437.

The Court must take note that while the District continues to argue that the Davis contracts violate the Anti-Deficiency Act, at no time has the District notified the Comptroller General of such a violation, nor has the District notified the President of the United States or Congress of any violations as the law requires[4]. Once it is determined that there has been a violation of 31 USC §1341(a) and 1342, the agency head shall report immediately to the President and Congress all relevant facts and a statement of actions taken." 31 USC §1351. The reports are to be signed by the agency head. The report to the President is to be forwarded through the Director of OMB. In addition, the heads of executive branch agencies and the Mayor of the District of Columbia shall also transmit "[a] copy of each report * * * to the Comptroller General on the same date the report is transmitted to the President and Congress." 31 USC §1351 as amended by the Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, div. G, title II §1401, 118 Stat. 2809, 3192 (Dec. 8, 2004).

The District has undertaken no action consistent with the above-cited statutory requirements to report the alleged violations of the Anti-Deficiency Act. No inquiry has been made of the Comptroller General about the Davis contracts and no report has been filed with the President or Congress declaring that the officials who approved the contracts violated the Anti-Deficiency Act. The Court should be aware that the Federal Bureau of Investigation, the Department of Justice, the Department of Health and Human Services, and other federal agencies have reviewed the Davis contracts with an eye

---

[4]     Violations of the Anti-Deficiency Act are subject to sanctions of two types: administrative and penal. An officer or employee who violates 31 U.S.C. §1341(a) (obligate/expend in excess or advance of appropriation), §1342 (voluntary services prohibition) shall be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office. 31 U.S.C. §1349(a). If an officer or employee of the District of Columbia government who "knowingly and willfully" violates any of the two provisions cited above, he or she "shall be fined not more than $5,000.00, imprisoned for not more than 2 years, or both." 31 U.S.C. §1350.

toward assessing their legal sufficiency.  No issue has surfaced that the Davis contracts were void or in violation of federal or state law.

Therefore, the Court should reverse its ruling that the Davis contracts violate the Anti-Deficiency Act and the District should abandon the argument that the Davis contracts are void *ab initio* because of an application of the Anti-Deficiency Act. Counsel for the defendants stands alone when advancing this argument.  No District officials have embraced the notion that a violation of the Act has occurred.

### III.
### Alleged Cure of the Maximus Contract

The second argument that the District advances to confuse the Court is that with respect to the Maximus contract a cure from the effects of the Anti-Deficiency Act was achieved before the Maximus contract was executed.  Under this argument, the District chooses its words carefully by remarking that Maximus *may have been paid*, but with an explicit cure of any potential Anti-Deficiency Act violation.  (emphasis added)  Again, this is a misleading statement.

Unlike the Davis contracts, the Maximus contract included provisions for more services than revenue maximization recovery services.  See Exhibit "E" attached to original motion.  The Maximus contract contains clauses commonly associated with a time and materials contract.  On page 10, the following language appears:

> The Contractor may, as required, and with the specific authorization and approval by the Chief Financial Officer, provide general consulting services to the District on a on a [sic] fix unit price basis that are essential for an optimal revenue recovery effort.  Such services may include, but not be limited to:
>
> (a)     legislative drafting not related to state plan drafting nor to a specific revenue maximization initiative;

      (b)      training beyond that normally provided and referenced in Request for Proposal No. 98104 and at section 2.2.4.6. and in phase IV of this Agreement.  Such training shall be called "non-embedded training";

      (c)      assisting in resolving licensure issues; and

      (d)      information technology services not specifically required as part of an approved revenue maximization initiative

Clearly, the quoted language pertains to more than revenue maximization recovery services.  Also, on pages 10, 11 and 12 of the Maximus contract, the focus centers on consulting services and a fixed price ceiling.  Such language is a deviation from language associated with a strict contingency fee contract for revenue maximization recovery services.

The District's argument that Maximus cured any Anti-Deficiency concerns by relying on the opinion of the District's Inspector General as is reflected in the "Investigation of whether a delay in awarding a contract resulted in the loss of federal funds, 99-0530(U)", is not fully developed.  The District fails to disclose the specific measures that were undertaken to cure the asserted Anti-Deficiency Act concern by the Financial Control Board.  (It should be reemphasized that the same Financial Control Board that expressed concern with the Maximus contract, had no problem with the Davis contracts and indeed approved the Davis contracts.)  In the subheading on page 3 of the Opposition, the District indicates: "the Maximus Contract was pre-funded."  Later, on page 4, the District quotes from the report of Investigation that "funds still had to be obligated in advance of the award."

Plaintiff continues to assert that the District's argument is disingenuous.  In none of the approved budgets for the District of Columbia from 1999 through 2002, was there any appropriation to cover the revenue maximization recovery portion of the Maximus contract.  See Human Support Services section of the District Appropriations Acts in

H.R. 3064--106th Congress (1999): District of Columbia Appropriations Act, 2000;

Public Law No: 107-96.

In discovery, plaintiff asked the District specifically for information to elaborate

on its conclusory statement that Maximus was paid from "prior allocated appropriations."

The specific interrogatory propounded was:

> 3.    When and in what amounts were the "prior allocated appropriations" made for the contract(s) between the District of Columbia and Maximus, Inc. or between the District of Columbia and any other contractor which provided revenue maximization services to the District of Columbia and/or its agencies?

The answer was:

> The District of Columbia Office of the Chief Financial Officer is currently reviewing documents from its procurement branch which may or may not produce information responsive to the request.  It is unknown whether the payments listed in the documents below were or were not made from "prior allocated appropriations."  Non-Privileged documents potentially responsive to this request are listed below.
>
> Bates # 1053 - 1081 – Schedule of Payments Made FY 2003 (10/01/02-09/30/03) YTD (10/01/02 – 03/31/03).  09/08/03.
> 1418 - 1419 – Fax of Check from the District of Columbia to Health Management Systems Inc. 05/12/99.
> 1597 - 1599 -  Investigative Synopsis
>
> Privileged Documents responsive to this request are located in the privilege log at Bates numbers.
>
> Bates # 984 – 985[5]
> 1600 – 1631[6]

Unlike the arguments advanced in the motion, the discovery responses are not a

model of clarity and are inconsistent with the positions that the District now advocates.

---

[5]    The Privileged Log, Bates 0984-0985 is a document dated 11//7/03 from Sophia Atkinson Jarrell to Willadene Tolmachoff described as "Fax – Public provider expenditures."

[6]    Privileged Log Bates, 1600-1631 is the Final Report of Investigation DC hiring Maximus dated 7/9/99.

The District equivocates whether the payments to Maximus came from prior allocated appropriations. Had further discovery been allowed, plaintiff would have shown through admissions from the Chief Financial Officer that Maximus was paid revenue maximization recovery services from funds that had not been allocated prior to the signing of the contract.

The report of the Inspector General attached to the District's opposition is a 3-paged document, entitled "Investigative Synopsis." Based on the Privileged Log, the actual report is 32 pages. Defendants have asserted a privilege against the production of the full report. As a result, plaintiff cannot discern from the 3-paged synopsis what specific aspect of the Maximus contract the Inspector General focused his attention. However, it plainly appears that the Inspector General was not referring to the section of the contract which deals with the payment of a contingency fee. The statement in the Inspector General's opinion that the Maximus contract was "the first of its kind" (see page 2 of the Investigative synopsis), necessarily refers to the time and materials section of the Maximus contract rather than the revenue maximization section. Contracts for revenue maximization services were not foreign to the District before the Maximus contract. A number of revenue maximization contracts, including the Davis contracts, predated the Maximus contract. (See the last paragraph of the Investigative synopsis.)

Secondly, it is impossible to quantify the amount of money needed to compensate the contractor for its services based on a contingency fee, since there is no way of determining a ceiling for the contractor's fees until a recovery had been achieved. The text of the contract has no set amount for the contract and no specific language containing a ceiling.

The Court cannot lose sight of certain critical facts. The Davis contracts passed through four levels of scrutiny to determine their legal sufficiency before signing: the office of the Chief Financial Officer, the Contracting Officer, the Financial Control Board, and the Office of the Corporation Counsel predecessor to the Office of the Attorney General. While the District maintains in its possession the actual memoranda documenting the written approval of each contract, at none of the four (4) levels of review was a concern voiced that the Davis contracts would violate the Anti-Deficiency Act. Additionally, there have been no referrals to the Inspector General, the President of the United States or Congress that an official of the District government violated or is suspected of having violated the Anti-Deficiency Act by signing the contracts. No District official including the Mayor, former Mayor, or prior Corporation Counsels has concluded that the Davis contracts violated the Anti-Deficiency Act. Making such an argument in these court proceedings has to have been preceded by some affirmative step on the part of government officials to alert the President and Congress of the violations or perceived violations.

The Court's statement on page 6 of the Memorandum opinion that "[i]t is undisputed that the two contracts in the present case provide for the payment of money that had not been previously authorized and appropriated is in fact disputed. The contract by its very nature seeks the recovery of funds that have been authorized to be spent and which were previously appropriated. There can be no requirement that the revenue maximization recovery contract requires that the prospective contingency fee be identified in an appropriation for a future fiscal year's appropriation.

The District and the Court indicate that the plaintiff is seeking an exception to the Anti-Deficiency Act for contingency fee contracts. That is not an accurate statement. The inapplicability of the Anti-Deficiency Act lies in the nature of the transaction. The revenue maximization contract is not a contract that yields an obligation on the part of the government to pay any money to the contractor. The obligation is triggered only when the District of Columbia recovers Medicaid funds.

Here, the District has certified to the federal Medicaid Program (CMS) that Medicaid funds recovered for DCPS and the District of Columbia General Hospital as a result of work performed and documentation of Medicaid services provided to eligible District residents are in the possession of Davis & Associates, Inc. and that the District's claim for reimbursement is based on that documentation. It therefore follows that if Davis & Associates, Inc. is still in possession of HIPAA protected medical, health and health related records (approximately 1 million), related to services provided by D.C. General Hospital and D.C. Public Schools, and the District of Columbia Government is requiring Davis & Associates, Inc. to maintain the safety and security of the records for audit purposes, they cannot at the same time assert that the very contract that requires Davis & Associates to maintain the records is an illegal contract.

If the Court were to allow discovery to continue, Davis would prove that during the past six years District Officials through many communications with Members of Congress, have never denied the validity of the Davis contracts due to a District of Columbia Government violation of the Anti-Deficiency Act.

The use of a contract or claim to defraud the federal Medicaid program or any federally supported health care facility violates several Federal fraud laws. An entity

submitting health care claims to the Federal Medicaid program, using an illegal contract is itself committing fraud against the Government of the United States.

## IV.
## Medicaid is indeed a Reimbursement Program.

Contrary to the conclusion reached by the District, the United States Code is replete with references to a component of the Medicaid program as being a reimbursement program. See 25 USC §1645; Georgia by Dep't of Medical Assistance v. Heckler, 768 F.2d 1293 (11th Cir.1985) cert den 474 US 1059, 106 S.Ct. 803, 88 L.Ed.2d 779, (1986). The District can reprogram money previously appropriated in the Human Support Services portion of the budget.

## V.
## The 42 U.S.C. §1983 Claim

Defendants overstate the ruling of the Court. The Court did not conclude that plaintiff had an adequate remedy at law through the Contract Appeals Board on both claims advanced in the complaint. The Court's ruling was limited to the claim brought under 42 U.S.C. §1983. The Court followed the argument that the District advanced. Relying on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d (1981), the Court concluded that the post-deprivation procedure through the District's Contract Appeals Board was adequate procedural process for plaintiff under state law. The Court's ruling did not extend to the claim brought under 42 U.S.C. §1981, a claim which does not involve the due process clause.

First, both defendant and the Court are in error about the existence of a property interest in favor of plaintiff. In performing work under what it perceived as being valid contracts, plaintiff expended human resources and money for the benefit of the District of

Columbia. Certainly under the laws of the District of Columbia, plaintiff has a right to be compensated for work it has done even if on a *quantum meruit* basis.

Secondly, if the contracts are valid, the procedures accorded plaintiff before the Contract Appeals Board are not a sufficient and meaningful post-deprivation remedy which satisfy the due process clause of the Fifth Amendment to the United States Constitution. In advancing this argument, plaintiff does not abandon its previous argument that pursuant to Public Law 104-8, this Court is required to exercise jurisdiction over all claims including the §1983 claim. However, in this instance, plaintiff further asserts that this Court must exercise jurisdiction over the §1983 claims because the remedies available at the Contract Appeals Board do not allow for consideration of the damages that plaintiff has suffered. The Court cannot overlook that fact that in this case the District of Columbia argues that there was no contract between the District and plaintiff even though plaintiff expended human and financial resources to enhance the District's profitability.

Without the existence of a contract, the Contract Appeals Board has no jurisdiction to entertain the facts and issues presented under the plaintiff's §1983 claim. The Contract Appeals Board only deals with situations "under" a contract or that "relate" to a contract. D.C. Code § 2-309.03(a) entitled *Jurisdiction of Board* [Formerly § 1-1189.3] provides that:

> (a)    The Board shall be the exclusive hearing tribunal for, and shall have jurisdiction to review and determine de novo:
> (1)    Any protest of a solicitation or award of a contract addressed to the Board by any actual or prospective bidder or offeror, or a contractor who is aggrieved in connection with the solicitation or award of a contract;

(2)    Any appeal by a contractor from a final decision by the contracting officer on a claim by a contractor, when such claim arises under or relates to a contract; and

(3)    Any claim by the District against a contractor, when such claim arises under or relates to a contract.

The Contract Appeals Board is not a tribunal of general jurisdiction. The jurisdiction of the Contract Appeals Board, as the explicit language indicates, is limited to dealing with issues under contracts or issues which are related to contracts. In that regard, the issues presented by this case, if the District's argument is to prevail, do not involve a valid contract. It necessarily follows that the Contract Appeals Board has no jurisdiction over matters that do not fall under or relate to a contract.

Under the Fifth Amendment to the United States Constitution, the Plaintiff has the guaranteed right to assert in an evidentiary hearing both before and after the deprivation of property that its contract with the District is valid and enforceable. See generally, *Goldberg v. Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). Plaintiff should also have the right to seek the full panoply of damages available to it whether a contract exists or not. A party in the position of plaintiff that believed that it had a valid contract before the District asserted that the contract was void, should not be foreclosed from seeking a meaningful remedy before having expended significant resources to enhance the position of the District of Columbia. Certainly, Davis, in adhering to the terms of the alleged contract, should be allowed to seek meaningful redress against the District after the District deprived Davis of a property interest.

Additionally, plaintiff is entitled to a trial by jury under the Seventh Amendment to the United States Constitution. See generally, *Hetzel v. Prince William County,*

*Virginia,* 523 U.S. 208; 118 S.Ct. 1210; 140 L.Ed.2d 336 (1998).  The Contract Appeals Board is not authorized to conduct a jury trial.

In conclusion, the Court should reinstate both claims and allow plaintiff to further develop the facts for trial.

Respectfully submitted,
HOUSTON & HOWARD


___/s/ Johnny M. Howard___
Johnny M. Howard, #264218
1001 Connecticut Avenue, NW
Suite 402
Washington, DC  20036
(202) 628-7058
Email:  houhow@erols.com

## CERTIFICATE OF SERVICE

This case was filed under the United States District Court for the District of Columbia's ECF electronic file and serve system.  This Reply to the Opposition to Motion to Alter or Amend Judgment and/or For Reconsideration has been filed with such Court and served on all parties herein electronically through such ECF electronic file and serve system on November 20, 2007.


___/s/ Johnny M. Howard___
Johnny M. Howard